CASE NO. 22-30556

---

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

SHANE M. WILKINSON,
**Plaintiff – Appellant**

v.

**PINNACLE LODGING, L.L.C; MY HOSPITALITY SERVICES,
L.L.C.; LAURA ROSA; RUSSELL BLOCK; YOGESH PATEL,**
Defendants – Appellees

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
(USDC NO. 2:20-CV-3427)

---

ORIGINAL BRIEF OF APPELLANT SHANE M. WILKINSON

---

Respectfully submitted:

THE LAW OFFICE OF
KEVIN S. VOGELTANZ, LLC
Kevin S. Vogeltanz (Bar #32746)
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff / Appellant*
*Shane M. Wilkinson*

# I.    CERTIFICATE OF INTERESTED PERSONS

(1)    No. 22-30556, *Wilkinson v. Pinnacle Lodging*
       USDC No. 3:20-CV-3427

(2)    The undersigned counsel of record certifies that the following listed
       persons and entities as described in the fourth sentence of Rule
       28.2.1 have an interest in the outcome of this case. These
       representations are made in order that the judges of this court may
       evaluate possible disqualification or recusal.

     1.     Shane M. Wilkinson, plaintiff/appellant

     2.     Pinnacle Lodging, LLC, defendant/appellee

     3.     My Hospitality Services, LLC, defendant/appellee

     4.     Laura Rosa, defendant/appellee

     5.     Russell Block, defendant/appellee

     6.     Yogesh "Chris" Patel, defendant/appellee

     7.     Kevin S. Vogeltanz, Esq.
              Law Office of Kevin S. Vogeltanz, LLC
              Attorney for Plaintiff/Appellant Shane M. Wilkinson

     8.     Sidney W. Degan, III, Esq.
              Renee Faye Smith Auld, Esq.
              Travis Louis Bourgeois, Esq.
              Degan, Blanchard & Nash, APLC
              Attorneys for Defendant/Appellees

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Plaintiff / Appellant*
*Shane M. Wilkinson*

## II.   REQUEST FOR ORAL ARGUMENT

Appellant Shane M. Wilkinson requests oral argument.  The district court below granted defendants' motion for summary judgment and dismissed plaintiff's case with prejudice, notwithstanding the district court admittedly found plaintiff proffered direct evidence of race, sex, and national-origin discrimination and likewise established a *prima facie* case for prohibited retaliation.  This case thus turns on the correctness of the district court's ultimate finding that "Wilkinson cannot maintain his claims for discrimination because . . . Defendants establish by a preponderance of the evidence that Wilkinson's termination would have happened regardless of his protected characteristics."

Oral argument thus seems particularly appropriate to discuss the application of the detailed factual record to the law.

# III.  TABLE OF CONTENTS

I.      CERTIFICATE OF INTERESTED PERSONS ......................i

II.     REQUEST FOR ORAL ARGUMENT ................................. iii

III.    TABLE OF CONTENTS............................................iv

IV.     TABLE OF AUTHORITIES........................................ v

V.      JURISDICTIONAL STATEMENT ......................... 1

VI.     STATEMENT OF ISSUES ...................................... 3

VII.    STATEMENT OF THE CASE ............................... 4

VIII.   SUMMARY OF THE ARGUMENT.................................. 39

IX.     ARGUMENT........................................................ 44

        A.    This Court Reviews the District Court's Order and
              Reasons de Novo under the Identical Rule 50 and Rule 56
              Standard ................................................. 44

        B.    Direct Evidence of Race, Sex, and National-Origin
              Discrimination plus Defendants' Inconsistent Explanation
              for Termination Creates Evidence of Pretext.................... 46

        C.    Temporal Proximity Between Protected Complaint and
              Termination, Plus Defendants' Disputed Explanation for
              Termination, Plus at Least One Verbal Threat after
              Complaining, Creates Evidence of Pretext........................ 54

        D.    Clear Evidence of State Law Whistleblower Retaliation,
              Plus Defendants' Inconsistent Explanation for
              Termination, Creates Evidence of Pretext ........................ 59

        E.    Laura Rosa's Routine Harassment Was Severe, Pervasive,
              and Destructive................................................ 64

X.      CONCLUSION ..................................................... 66

CERTIFICATE OF SERVICE...................................... 68

CERTIFICATE OF COMPLIANCE ............................. 69

# IV.   TABLE OF AUTHORITIES

## CASES

*Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762 (S.D.N.Y. 2002) .................. 49

*Bazile v. Bisso Marine Co., Inc.*, 606 F.2d 101 (5th Cir. 1979).............. 46

*Bean v. Sprint/United Mgmt. Co.,* No. 1:18-CV-413, 2021 WL 5451493 (W.D. Mich. Mar. 31, 2021) ................................................................ 49

*Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326 (5th Cir.2008) ............. 27

*Boutros v. Avis Rent A Car Sys., LLC*, No. 10 C 8196, 2013 WL 3834405 (N.D. Ill. July 24, 2013) ............................................................... 49

*Brewer v. New Era, Inc.*, 564 F. App'x 834 (6th Cir. 2014) ................... 49

*Brown v. ICF Int'l*, 07-931, 2011 WL 5548962 (M.D. La. Nov. 15, 2011) ............................................................................................................... 61

*Brown v. J. Kaz, Inc.*, 581 F.3d 175 (3d Cir. 2009) ................................ 49

*Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020).......... 45

*Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512 (11th Cir. 1990) ... 49

*Campbell v. Fasco Indus., Inc.,* 67 F.3d 301 (7th Cir. 1995) ............ 41, 50

*Collins v. State*, 118 So.3d 43 (La. App. 2013) ....................................... 61

*Demshick v. Delaware Valley Convalescent Homes, Inc.*, 2007 WL 1244440 (E.D. Pa. Apr. 26, 2007) ........................................................ 49

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005) ................................................................................................... 49

*Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022) (unpublished) ............................................................................. passim

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473 (5th Cir. 2015) ......................................................................... passim

*Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) ........................ 64

*Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) ........................................ 55

*Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003)..................................... 10

*Haynes v. W.C. Caye & Co.*, 52 F.3d 928 (11th Cir. 1995)..................... 49

*Jordan v. Mathews Nissan, Inc.,* 539 F. Supp. 3d 848 (M.D. Tenn. 2021) ................................................................................................ 49

*Lawson v. Hinds Cnty. Sch. Dist.,* No. 3:12CV698-DPJ-FKB, 2014 WL 373199 (S.D. Miss. Feb. 3, 2014) ......................................... 49

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003)........................ 42, 47, 57

*Little Tchefuncte River Ass'n v. Artesian Util. Co., Inc.*, 155 F.Supp.3d 637 (E.D. La. 2015) ............................................................. 27

*Martin v. Helena Chem. Co.,* No. 2:13-CV-251-J, 2014 WL 12576293 (N.D. Tex. Sept. 3, 2014)..................................................... 49

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............. passim

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997) ............... 49

*Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985) ........................... 49

*Montemayor v. City of San Antonio*, 276 F.3d 687 (5th Cir. 2001) ........ 46

*Moody v. Intown Suites Mgmt., Inc.,* No. CIV.A.1:04-CV-1198-TWT, 2006 WL 870388 (N.D. Ga. Mar. 31, 2006)........................................ 49

*Moody v. InTown Suites*, No. 1:04-CV-1198-TWT-AJB, 2006 WL 8431638 (N.D. Ga. Feb. 1, 2006) ......................................... 49

*Moore v. Alabama State Univ.*, 980 F. Supp. 426 (M.D. Ala. 1997)....... 49

*Mora v. Jackson Mem'l Found., Inc.,* 597 F.3d 1201 (11th Cir. 2010)... 49

*Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38 (5th Cir. 1996) 47, 56

*Peterkin v. Taco Bell*, No. 3:95-CV-694RM, 1996 WL 939573 (N.D. Ind. Nov. 20, 1996)................................................................. 49

*Polkow v. CSX Transportation, Inc.,* No. 1:02 CV 72, 2003 WL 23784462 (N.D. Ohio Oct. 1, 2003).................................................. 49

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ................................................................................................ passim

*Richard v. Cingular Wireless LLC*, 233 Fed. Appx. 334 (5th Cir. 2007) 64

*Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022) ........................................................................... 31

*Silver v. N. Shore Univ. Hosp.,* 490 F. Supp. 2d 354 (S.D.N.Y. 2007) ... 49

*Simmons v. Pac. Bells, L.L.C.*, 787 Fed.Appx. 837 (5th Cir. 2019). 25, 43, 59

*Underwood v. Monroe Mfg., L.L.C.*, 434 F. Supp. 2d 680 (S.D. Iowa 2006) ............................................................................. 49

*Walton v. Neptune Tech. Grp., Inc.*, No. 2:08-CV-5-MEF, 2009 WL 3379912 (M.D. Ala. Oct. 20, 2009) ...................................... 49

*Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958 (5th Cir. 2019) ................................................................. 45

*Wiggins v. The City of Montgomery, Alabama,* No. 2:17-CV-425-KFP, 2022 WL 625075 (M.D. Ala. Mar. 3, 2022) ........................................ 49

*Williams v. Valentec Kisco, Inc.*, 964 F.2d 723 (8th Cir. 1992) .............. 49

## STATUTES

28 U.S.C. § 1291 ................................................................. 2
42 U.S.C. § 1981 ................................................... 1, 7, 38, 40
42 U.S.C. § 2000e-2 (Title VII).................................... 7, 38, 40
La. Admin. Code tit. 51 § 123 ............................................. 62
La. Rev. Stat. Ann. § 23:13 ............................................... 61
La. Rev. Stat. Ann. § 23:332 (Louisiana Employment Discrimination Law) ............................................................. 7, 38
La. Rev. Stat. Ann. § 23:967 (Louisiana Whistleblower Act) ....... 7, 34, 60
La. Rev. Stat. Ann. § 30:2027 (Louisiana Environmental Whistleblower Act) ........................................................ 7, 34, 60

## RULES

Fed. R. Civ. P. 15 ............................................................. 2
Fed. R. Civ. P. 50 ........................................................... 46
Fed. R. Civ. P. 56 ..................................................... 33, 45

## OTHER AUTHORITIES

*Black's Law Dictionary* (11th ed. 2019) ........................... 25, 43

## V.    JURISDICTIONAL STATEMENT

This is an employment discrimination and retaliation case arising under federal and Louisiana state law.  Plaintiff / appellant Shane M. Wilkinson was jointly employed by two related hotel entities, "Pinnacle Lodging, LLC" (the hotel property owner) and "My Hospitality Services, LLC" (the hotel property manager).  His employers, and their managers, fired Mr. Wilkinson on December 19, 2021 for allegedly poor work performance.  Mr. Wilkinson alleges management's reason was mere pretext to cover up for illegal status-based discrimination and prohibited retaliation under federal and Louisiana state law.

After his termination, Mr. Wilkinson timely filed a Charge of Discrimination with the EEOC (Charge No. 461-2020-00550) asserting discrimination and retaliation based on race, sex, color, and national origin.  The EEOC subsequently issued Mr. Wilkinson his right to sue letter.

Mr. Wilkinson timely filed a verified federal complaint against all defendants in the U.S. District Court for the Eastern District of Louisiana, asserting claims under Title VII, 42 U.S.C. § 1981, and Louisiana state law.  He then amended his verified complaint as a

matter of course under Federal Rule 15.  At all times, the district court had federal-question jurisdiction over plaintiff's federal-law claims, and supplemental jurisdiction over his related state-law claims.  All defendants answered the complaint.  No defendant challenged personal jurisdiction.

The parties completed discovery.  Defendants then filed a joint motion for summary judgment on liability, and plaintiff timely opposed. Defendants filed a reply brief.  The district court granted defendants' motion and entered final judgment dismissing all of Mr. Wilkinson's claims on August 3, 2022.

On August 31, 2022, Mr. Wilkinson timely filed his notice of appeal challenging dismissal of each of his claims.

Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court's judgment is a final judgment of the United States District Court.

# VI.   STATEMENT OF ISSUES

1.    Concerning discrimination:  whether the district court erred by determining no jury could disbelieve defendants' inconsistent and self-interested explanation for firing Mr. Wilkinson, despite direct evidence of race, sex, and national-origin based animus to the contrary.

2.    Concerning retaliation:  whether the district court erred by determining plaintiff failed to produce evidence of management's pretext on his federal and state law retaliation claims, despite establishing temporal proximity between his protected complaint and termination; management's inconsistent and self-interested explanation for termination; and at least one threat made to plaintiff after he complained.

3.    Whether the district court erred by determining management's overt and repeated race, sex, and national-origin based harassment leading up to plaintiff's termination was insufficient as a matter of law to constitute a hostile work environment.

# VII.  STATEMENT OF THE CASE

This appeal asks the question how much evidence of workplace racism, sexism, retaliation, and overall pretext must a terminated employee muster to avoid summary judgment and have his day before the jury?

Surely the answer is nothing greater than what the district court *itself* correctly determined plaintiff/appellant Shane Wilkinson brought to the evidence table during defendants' motion for summary judgment – which was, among other things, *direct-evidence* of race, sex, and national origin discrimination, along with close temporal proximity between plaintiff's protected complaints and his termination, combined with management's objectively inconsistent, uncorroborated, and self-interested reasons for termination (*see* Order and Reasons at ROA.1098-1101).

Nevertheless, despite these facts and findings, the district court did grant summary judgment for defendants, determining that although direct evidence of race, sex, and national-origin discrimination pervaded the record, and despite assuming (correctly) that plaintiff established a *prima face* case of retaliation, "any jury" would be

compelled to believe defendants' proffered explanation that they really fired Mr. Wilkinson because he was just a bad manager (ROA.1102-1105).

Based on this Court's longstanding decisional law, such facts and findings virtually guarantee denial of summary judgment, and the district court erred by granting defendants' motion. *Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, 19-20656, 2022 WL 4494148 (**5th Cir. Sept. 27, 2022**) (unpublished) (reversing summary judgment in direct-evidence discrimination case). Based on the record and law that follows, this Court should reverse the district court's grant of summary judgment and remand for jury trial.

\* \* \*

Defendant/appellant Yogesh "Chris" Patel is in the hotel industry (ROA.703). He owns two related companies, "Pinnacle Lodging, LLC" and "My Hospitality Services, LLC," both defendants in this case (ROA.703). Patel's companies in turn own and manage dozens of franchised hotels throughout Louisiana, Alabama, Mississippi, and Florida (ROA.702). One of those hotels is the Hilton-franchised, Hampton Inn located in Covington, Louisiana (ROA.702).

Patel's chief executive overseeing his hotel conglomerate is his "Director of Operations," defendant/appellant Russell Block (ROA.703). Block, in turn, relies on his "Regional Manager" – the final defendant/appellant in the case, Laura Rosa – to oversee each of Yogesh's hotels in Louisiana, including the Hampton Inn (ROA.703).

Enter the plaintiff/appellant, Shane Wilkinson. Mr. Wilkinson is a non-Hispanic, white man from Louisiana (ROA.703). Mr. Wilkinson was hired as a front-desk clerk at the Hampton Inn in 2017 (ROA.704). The general manager of the Hampton Inn at the time, a woman named Alaina Blett, hired him (ROA.704). His joint, corporate employers for Title VII and state law purposes were Pinnacle Lodging and My Hospitality Services (ROA.702). Ms. Blett left the companies shortly thereafter, and Russell Block promoted Wilkinson to be the Hampton Inn's new general manager in 2018 (ROA.704). Block gave Mr. Wilkinson a significant pay raise to $50,000 per year (ROA.704).

Mr. Wilkinson received no complaints from Block or anyone else in upper management until August 2019 (ROA.704). That month, Block promoted a general manager of another Covington hotel – Laura Rosa – to become the hotel conglomerate's new Regional Manager for

6

Louisiana, and Rosa began directly supervising Mr. Wilkinson (ROA.704). Rosa and Block (with permission from Patel) would go on to fire Mr. Wilkinson just four months later, on December 19, 2019 (ROA.704). Rosa and Block both admit they never disciplined Mr. Wilkinson before firing him despite the existence of a progressive disciplinary policy (ROA.704). On summary judgment below, plaintiff argued the real reason he was fired was because of Rosa's race, sex, and national-origin based animus against him, combined with all Block, Rosa, and Patel's retaliatory animus against Wilkinson after he complained about Rosa's harassment, along with still more retaliatory animus because Wilkinson repeatedly complained about a serious mold-infestation that had spread throughout the Hampton Inn and which management refused to remediate (ROA.701-725).

Based on these facts, plaintiff asserted in his first amended complaint multiple claims against the corporate and individual defendants under Title VII, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law ("LEDL"), the Louisiana Environmental Whistleblower Act ("LEWA"), and the Louisiana Whistleblower Act ("LWA") (ROA.89-102).

After discovery, defendants moved for summary judgment, and plaintiff opposed dismissal of the following claims:

(a)    Race, sex, and national-origin discrimination and hostile work environment under Title VII, Section 1981, and the LEDL against Pinnacle Lodging and My Hospitality Services;

(b)    Retaliation under Title VII, Section 1981, and the LEDL against Pinnacle Lodging and My Hospitality Services;

(c)    Whistleblower retaliation under the LEWA and LWA against Pinnacle Lodging and My Hospitality Services;

(d)    Race discrimination, hostile work environment, and retaliation under Section 1981 against Laura Rosa; and

(e)    Retaliation under Section 1981 against Yogesh Patel and Russell Block (*see* ROA.701).[1]

Although the district court correctly found plaintiff proffered ample direct evidence of Rosa's race, sex, and national-origin discrimination at work, and that plaintiff otherwise proved up his *prima facie* cases for retaliation, the district court nevertheless fully credited Block, Rosa, and Patel's inconsistent, uncorroborated, and self-interested explanations that they fired Mr. Wilkinson not for any

---

[1] Plaintiff did not oppose summary judgment on his claim for race-discrimination under Section 1981 against Block and Patel, instead pressing only his related Section 1981-retaliation claim against them instead.  In essence, the evidence was that Laura Rosa harbored race and sex-based animus against Mr. Wilkinson, while Block and Patel were motivated by retaliatory animus.

prohibited reason, but merely because they thought he wasn't a very good manager. The district court thus granted defendants summary judgment on all of plaintiff's claims and entered final judgment against him (ROA.1089-1135).

\* \* \*

Laura Rosa identifies herself as white. Nevertheless, in the four short months she supervised Mr. Wilkinson before firing him, the district court correctly noted Rosa made multiple comments that directly revealed her animus against men generally, and specifically non-Hispanic, white men like Mr. Wilkinson (ROA.1098-1101).

During their first meeting after her promotion in August 2019, Rosa told Mr. Wilkinson she was going to replace him and his staff with "Hispanics" because they work "cheaper and faster" (ROA.704). Rosa said this in front of one of Mr. Wilkinson's subordinates, a woman named Chasity Anthony, who was the Hampton Inn Head of Housekeeping (ROA.704). Ms. Anthony gave a sworn declaration corroborating Rosa "pretty regularly" said she was going to replace the Hampton Inn staff with "Mexicans" because "Mexicans work better." (ROA.704-705).

During Mr. Wilkinson's second meeting with Rosa after her promotion, she told him "male GMs don't make good general managers, and as far as [Rosa] was concerned, [Mr. Wilkinson] shouldn't be here." (ROA.705). This was also corroborated by Anthony, who was present during the meeting (ROA.705). Anthony likewise testified Rosa "frequently" made those sorts of comments to the Hampton Inn staff (ROA.705).

Another witness, Paul Lanclos, a Hispanic man who worked as one of the hotel's mechanics, testified Rosa told him in the first "10 minutes" of meeting her that she thought "Hispanic workers are better workers" and get "more accomplished" than non-Hispanics." (ROA.705). Lanclos testified Rosa directly told him she preferred Hispanic workers to anyone else (ROA.705). Lanclos also testified that while riding an elevator with Rosa and Wilkinson, Rosa said Wilkinson was a "pioneer" in the hotel industry because "females are more capable" than men (ROA.705-706).

Mr. Wilkinson testified to these sorts of facts as well – first in his verified, amended complaint, *see Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("[o]n summary judgment, factual allegations set forth in

a verified complaint may be treated the same as when they are contained in an affidavit"), then during his deposition testimony.  Mr. Wilkinson testified Rosa told him "you men aren't detailed oriented and shouldn't even be GMs [general managers]" (ROA.79); that Rosa's "Mexican" employees "work harder, faster, and cheaper" than Mr. Wilkinson (ROA.79); that Rosa told Mr. Wilkinson to "get rid of everybody" so Rosa could hire "Hispanics" instead (ROA.513); and that Rosa said she was going to replace Wilkinson because he wasn't "Hispanic" (ROA.523).

Mr. Wilkinson, Anthony, and Lanclos each testified Rosa made these comments routinely over the four months or so she supervised Mr. Wilkinson, from August 2019 through Wilkinson's termination in December 2019 (ROA.704-707).

Because the Hampton Inn is a Hilton franchise, Hilton inspectors periodically inspect the property to assess compliance with Hilton's corporate standards (ROA.80).  Hilton inspected the Hampton Inn in November 2019, just three months after Rosa began her stint as regional manager (ROA.80).  Mr. Wilkinson told Rosa he learned in advance the identity of the inspector, who happened to be a man

(ROA.80).  Rosa told Wilkinson that was disappointing, because if the inspector had been a woman Wilkinson could have worn "tight pants" to distract her and score higher points (ROA.80, ROA.1038-39). Apparently not joking, Rosa told Wilkinson she would summon a female general manager with "big boobs" from another Patel-owned hotel nearby so she could distract the male inspector (ROA.80, ROA.1038-39). And that's exactly what Rosa did, according to both Wilkinson and Chasity Anthony (ROA.706).  Anthony testified in her declaration the other manager, a woman named Megan Mahendra, arrived for the inspection and was dressed "very sexually," akin to what a "hooker" might look like (ROA.706).

During her deposition, Rosa denied making any of these comments or forcing Mahendra to wear revealing clothing to the November inspection (ROA.980).  But, on summary judgment, the district court correctly assumed for motion purposes that Rosa did say and do these awful things (ROA.1089-1134).

Finally, Rosa admittedly testified during her deposition that from the time she began serving as Regional Manager in August 2019, she wanted to replace Mr. Wilkinson as general manager, but could not

explain why (ROA.957).  At the time there would have been no reason to want to terminate Mr. Wilkinson – there was no allegation Mr. Wilkinson was a poor performer before Rosa began supervising him. Indeed, Russell Block had just recently given Mr. Wilkinson a pay raise to $50,000 per year nine months earlier in November 2018 (ROA.754).

In its order and reasons granting summary judgment, the district court correctly noted whether a manager's biased comments cross the line from disreputable "stray remarks" to "direct evidence" of discrimination depends on four factors (ROA.1099).  *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015).  The district court correctly determined Rosa's comments were direct evidence of sex, race, and national-origin discrimination because the comments were made (1) about Mr. Wilkinson's race, sex, and national origin, (2) within a few months at most before he was fired, (3) by the manager who actually fired him, and (4) directly described Rosa's "animus and intention to terminate Mr. Wilkinson from the general manager position" (ROA.1099-1101).

Because the district court found plaintiff proffered direct evidence of discrimination, the court correctly noted the familiar *McDonnell*

13

*Douglas* burden-shifting framework used in circumstantial-evidence cases did not apply (ROA.1099). Instead, to prevail on summary judgment, the "burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Etienne*, 778 F.3d at 475.

Up to this point, the district court had aptly framed the analytical issues. But the court erred by finding, as a matter of law, that defendants' proffered reason for terminating Mr. Wilkinson was so beyond dispute that "any reasonable jury would conclude [defendants] would have made the same decision absent the discrimination" (ROA.1099) (citing *Etienne*, 778 F.3d at 477).

What was this reason for terminating Mr. Wilkinson just four months after Laura Rosa became his immediate supervisor? It depends on who you ask. If you ask defendants as *litigants* in the case, there's no way to know. Under the Eastern District of Louisiana's Local Rule 56.1, defendants were required to submit a "separate and concise statement of the material facts which the opponent contends present a genuine issue" along with their motion for summary judgment. While defendants submitted a perfunctory statement, defendants failed to

14

provide *any* proffered justification for terminating Mr. Wilkinson (ROA.228-230). On brief, defendants argued a hodgepodge of reasons in their supporting memorandum (discussed *infra*), but without a concise reason given in their Local Rule 56.1 statement, plaintiff was left to guess which purported facts defendants deemed material. Plaintiff initially objected to this deficiency in his opposition briefing, but apparently to no avail (ROA.701).

On the other hand, perhaps defendants' failure to articulate their precise reason for firing Wilkinson was because the discovery record never yielded a precise answer to the question. Russell Block, Laura Rosa, and Chris Patel all gave different answers during their depositions for why they fired Mr. Wilkinson, and those answers were themselves inconsistent compared to each person's prior, written answers to interrogatories in the case (ROA.711-715).

The one thing that all the defendants agreed on, however, was that management used a progressive disciplinary policy at work consisting of written writeups leading to termination, and Mr. Wilkinson was never disciplined or written-up prior to his termination on December 19, 2019 (ROA.713-714). Otherwise, Block, Rosa, and

Patel's proffered reasons for firing Wilkinson were internally and extrinsically inconsistent, self-serving, essentially uncorroborated, and disputed by Mr. Wilkinson (ROA.711-715).

For instance, plaintiff propounded the following interrogatory to Patel, Block, and Rosa:

> Describe in reasonable detail your involvement in the decision to terminate Mr. Wilkinson's employment in December 2019. To the extent you recommended or decided to terminate Mr. Wilkinson, reasonably explain the basis for your decision.

(ROA.712).

Block and Rosa both testified they jointly decided to fire Mr. Wilkinson, and Patel approved the decision based on their recommendation (ROA.711).

Regarding *why* he decided to fire Mr. Wilkinson, Block gave the following answer (which is quoted at length below for argumentative purposes):

> Wilkinson, an at will employee, was terminated for his poor job performance as the General Manager of the Hampton Inn because the Hampton Inn failed to pass an inspection performed by the Hilton Hotel, its franchise, in November of 2019.

Wilkinson also failed to renovate rooms and remediate the mold in several of the hotel rooms and conference rooms timely. The Hampton Inn, Pinnacle Lodging and My Hospitality were well aware of the mold issues at the hotel before Wilkinson reported it.

Additionally, Wilkinson had an unusually high number of absences while he was employed to attend dog shows, baseball tournaments, and due to illnesses.

Wilkinson also stated that he quit his position as General Manager before he was terminated.

(ROA.712) (return-spacing added for readability).

Summed up, the gist of Block's reasons were (1) the Hampton Inn failed its corporate inspection in November 2019; (2) Wilkinson failed to remediate mold in the hotel's rooms; (3) Wilkinson missed too many days at work; and (4) Wilkinson said he was going to quit.

First, plaintiff proffered evidence rebutting each of these reasons (ROA.711-714). Rosa and the Hampton Inn's assistant general manager at the time, a woman named Ashley Vanderhoff, revealed the Hampton Inn had *never* passed its corporate inspection because the hotel lacked the Internet infrastructure required to pass (ROA.712). In fact, Wilkinson's predecessor (Alaina Blett) failed the inspection and was not fired (ROA.715). Wilkinson's purported successor after he was fired – a man named Robert Dansbury – failed the same inspection

17

multiple times for the same reason (ROA.715).  Dansbury was not fired
either (ROA.715).  Block and Rosa also admitted another of their
Louisiana hotels had failed that same corporate inspection, and that
hotel's manager – Megan Mahendra (whom Rosa summoned to attend
the Hampton Inn inspection in November 2019) – was not fired for the
issue (ROA.713).

Block also testified he approved Mr. Wilkinson's absences and he
was not fired because of it (ROA.713).

Finally, Block testified he did not fire Mr. Wilkinson because he
threatened to quit (ROA.713).  However, it is *is* true Mr. Wilkinson
threatened to quit (ROA.713).  But, as Wilkinson testified in his
verified, amended complaint he only made those threats to Block after
he refused to stop Rosa's "discrimination and harassment" (ROA.81).

Further muddying his own reasons, Block testified during his
deposition to a hodgepodge of purported dissatisfactions with Mr.
Wilkinson's performance: (again quoted in full for argumentative
purposes):

> I don't recall every single reason, but I know the top one,
> example, um, rate management. Um, revenue management,
> he had no involvement with. That's a responsibility.

Documenting employees, that's a responsibility. Any responsibility that falls under the GM, he was basically incapable of or refused to do it. Even when instructed how to do it, he'd come up with some excuse as to why he couldn't do it.

So I don't remember every reason, but going from the personnel aspect that he didn't handle, the administration aspect which he didn't handle, financial aspect which he didn't handle, sales and marketing, absolutely nothing. So all those aspects of operating a hotel, he just did not fulfill his obligation to the company.

(ROA.327) (return-spacing added for readability).

Block concluded "Wilkinson did not develop into the GM that we needed to operate a hotel . . . [t]he hotel was not doing well, and he made no efforts to improve." (ROA.327).

But even on these "soft" critiques, Block (and Rosa) again admit they never issued Mr. Wilkinson any discipline for the items consistent with their progressive disciplinary policy (ROA.713-714). No contemporaneous paperwork appears to exist in the case corroborating these alleged deficiencies. And on the specific critique Block offered – "rate management" – Mr. Wilkinson testified Block always took responsibility for setting the hotel rates himself (ROA.714).

Finally, Block and Rosa did issue Mr. Wilkinson a termination letter on the day they fired him, December 19, 2019 (ROA.724). Block

and Rosa testified they collaborated on the letter together (ROA.471). The letter stated "[o]ver several months we have evaluated your performance as general manager for Hampton Inn, and during this evaluation we have found several failures as general manager." (ROA.376). The letter faulted Mr. Wilkinson for the Hampton Inn purportedly failing various "QA" items (quality assurance items) by failing to fill out or complete various Hilton-required paperwork (ROA.376). But during her deposition, the assistant general manager, Vanderhoff, testified that all the Hampton Inn's paperwork was in order for the Hilton inspection in November 2019 (ROA.714). The letter also faulted Mr. Wilkinson (again) for threatening to quit, but then contradictorily indicates Block encouraged Wilkinson "to hold off till after the QA inspection." (ROA.376). And, again, Mr. Wilkinson was never disciplined for these alleged deficiencies before his termination.

The net result is that Block's proffered reason for terminating Mr. Wilkinson, at most, amounts to self-interested, *post hoc* purported dissatisfaction with Wilkinson's work. But, in terms of the discovery record, Block's reasons were inconsistent and shifted over the course of the case; Block admits he never actually disciplined Mr. Wilkinson for

any of these alleged deficiencies (ROA.713); and no paperwork appears to exist corroborating any of Block's claims whatsoever except for a letter he and Rosa wrote and gave to Mr. Wilkinson the day he was fired, *after* Rosa made multiple racist and sexist comments to Wilkinson about replacing him, and *after* Wilkinson complained to Block about the matter (ROA.724). Even so, Block himself wrote in the termination letter than when Wilkinson initially threatened to quit, Block told Wilkinson to "hold off." (ROA.376).

Rosa's purported reasons for firing Mr. Wilkinson were even less convincing. Rosa's answer to plaintiff's interrogatory was the same as Block's, except Rosa added "Moreover, Wilkinson did not show the type of leadership expected of a General Manager and was not proactive. In his position of General Manager, Wilkinson did not act to boost the morale of Hampton Inn employees." (ROA.714). Rosa admitted, however, that she never disciplined, wrote-up, or even warned Mr. Wilkinson about any of these alleged failings, or that his job was in jeopardy (ROA.714).

On the issue of morale, Chasity Anthony – who directly reported to Wilkinson – testified he "was a very good general manager" and she

had no complaints about him (ROA.846). Another employee deposed in the case was a maintenance worker named Demille Topps. Topps testified Wilkinson "did a great job with what he had to work with. I think he did a good job. He tried to keep his people working and – and when they tried to quit, he tried to talk them out of it." (ROA.592).

Perhaps most strikingly, Rosa admitted during her deposition that Wilkinson **was not** fired because the Hampton Inn failed its corporate-franchise inspection in November 2019 (ROA.714, ROA.973).[2] This directly contradicted Rosa's written discovery answers and the gist of the termination letter Rosa and Block gave Wilkinson (ROA.376, ROA.714). Instead, Rosa testified she fired Mr. Wilkinson "just based off of his overall knowledge and his performance as a GM, and that would make a decision to terminate him." (ROA.714). But, like Block's purported reasons, Rosa's explanation is, at best, inconsistent, self-interested, and uncorroborated except by her fellow co-defendants.

Finally, there is the testimony of the owner of the hotel conglomerate, Yogesh Patel. Patel's answer to plaintiff's interrogatory

---

[2] Rosa was asked during deposition: "Do you consider in your mind that one of the reasons why Mr. Wilkinson was fired in this case was because he failed the inspection, or, no, you don't think that that had anything to do with it?" Rosa's answer: "No, I really don't think it had anything to do with it." ROA.973.

was functionally identical to Rosa's (ROA.714).  But Patel's deposition testimony is wholly inconsistent with both his written response and the reasons testified to by Block and Rosa (ROA.714).  During his deposition, Mr. Patel testified he agreed with the recommendation to terminate Mr. Wilkinson because of his "overall lack of performance." (ROA.714-715).  But when pressed, Patel clarified Mr. Wilkinson's biggest "performance issue" was the number of days he requested off from work.  (ROA.715). However, Block's testimony contradicted Patel's reason, because Block testified he approved those days off, and Block testified Wilkinson wasn't fired for his approved absences anyway (ROA.715).

Patel also admitted most of his general managers across all his hotels – 15 out of 19 at the time in question – were women (ROA.740). Patel testified this was because women more often applied for positions in the hotel industry than men (ROA.740). When questioned why he believed that might be the case, he answered: "It's just a random selection" and "most of these women's husbands have better paying jobs." (ROA.740).  Patel added: "I don't know.  Whatever I say is going to be bullshit." (ROA.740).

The cumulative total of Block, Rosa, and Patel's purported reasons for terminating Mr. Wilkinson is, in short, they did not believe he was good at his job. But the defendants failed to point to any concrete or contemporaneous evidence of that dissatisfaction. Block, Rosa, and Patel are likewise the classical "interested witnesses" within the meaning of evidentiary term. *See Simmons v. Pac. Bells, L.L.C.*, 787 Fed.Appx. 837, 840 (5th Cir. 2019) (noting "interested witnesses" for summary judgment purposes are "those with a 'direct and private interest in the matter at issue'") (citing *Black's Law Dictionary* (11th ed. 2019)).

Nevertheless, the district court fully credited these proffered reasons and held "any jury" would be compelled to find defendants fired Mr. Wilkinson for non-discriminatory reasons because plaintiff could not disprove each of Block, Rosa, and Patel's claims (ROA.1105).

First, the record suggests otherwise. Plaintiff's opposition briefing on summary judgment highlighted these inconsistencies.

Second, on summary judgment, the district court erred by making a classic credibility determination – deciding to fully credit the defendants' self-interested explanation for firing Wilkinson while

24

ignoring the Supreme Court's admonishment to refrain from doing exactly that. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (citations omitted) (a district court "must disregard all evidence favorable to the moving party that the jury is not required to believe . . . giv[ing] credence [only] to . . . evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses").

Had the district court not fully credited the self-interested explanations proffered by the co-defendants in the case, there is little to no evidence in the record of Mr. Wilkinson's purported poor performance or defendants' non-discriminatory or retaliatory reasons for firing him.

In his opposition brief below, plaintiff summed up the crux of the matter: "Defendants claim legitimate reasons to fire Mr. Wilkinson, but their reasons are inconsistent and unsupported. Accordingly, defendants' motion for summary judgment must be denied so that a jury can resolve these credibility determinations and factual disputes." (ROA.717).

Defendants filed a short reply memorandum (ROA.1069-1074). Surprisingly, and as the district court noted in its order and reasons, defendants never briefed the impact of plaintiff's direct evidence of discrimination on the case (ROA.1100).  Instead, defendants (incorrectly) presumed throughout their motion that plaintiff's race, sex, and national-origin discrimination claims resolved under the circumstantial-evidence standards of *McDonnell Douglas* (ROA.1069-1074).

Otherwise, defendants acknowledged they did not originally identify a precise reason for firing Mr. Wilkinson in their Local Rule 56.1 statement of uncontested facts.  But on reply, defendants crystalized Wilkinson was fired "due to his poor work performance, lack of leadership, frequent absences, and threats to quit." (ROA.1080). Defendants' reasoning for not stating these reasons earlier was dubious: "These nondiscriminatory reasons were not included in the Defendants' uncontested statement of facts because, if the Defendants included them, the Plaintiff would now be asserting that the aforesaid reasons

for Wilkinson termination are instead *contested* issues of fact."
(ROA.1080) (emphasis in original).[3]

* * *

As a final, factual matter, one-month before Mr. Wilkinson was
fired, Laura Rosa had heard a rumor from a mutual acquaintance that
Wilkinson had filed an EEOC charge of discrimination against his last
employer before joining the Hampton Inn (ROA.716) (that claim is
untrue). Then, during his December 19, 2019 termination meeting with
Block and Rosa, Wilkinson complained again about Rosa's sex
harassment. Then, just ten days after that, Block and Patel
purportedly hired a white man named Robert Dansbury as the new
general manager of the Hampton Inn (ROA.716).

For her part, Rosa testified she had nothing to do with Dansbury's
hire (ROA.716). But Chasity Anthony testified it appeared to her
Dansbury was nothing more than a new front desk clerk at the hotel,

---

[3] On reply, defendants also submitted a sworn declaration from another hotel
employee named Kim Schexnaydre in attempt to bolster management's argument
that Mr. Wilkinson was a poor manager (ROA.1085-1087). But, correctly, it does
not appear the district court considered the untimely submitted material raised
for the first time on reply. *Little Tchefuncte River Ass'n v. Artesian Util. Co., Inc.*,
155 F.Supp.3d 637, 657 (E.D. La. 2015) (citing *Benefit Recovery, Inc. v. Donelon*,
521 F.3d 326, 329 (5th Cir.2008) ("arguments cannot be raised for the first time in
a reply brief").

and Ashley Vanderhoff (the titular assistant general manager) had become the *de facto* general manager (ROA.715-16). Anthony testified she assumed management had hired a white man to replace Mr. Wilkinson because he had previously complained about Rosa's race and sex discrimination (ROA. 715-16).

* * *

As described *supra*, the district court dismissed plaintiff's discrimination claims holding that "any jury" would be compelled to believe defendants' proffered reasons for firing Mr. Wilkinson despite the direct evidence of animus to the contrary (ROA.1105). For essentially the same reasons, the district also dismissed plaintiff's retaliation claims under Title VII, Section 1981, the LEWA, and the LWA, finding plaintiff did produce evidence of pretext (ROA.1105-1134).

At the outset, plaintiff concedes each of his retaliation claims were based on circumstantial evidence – not direct evidence – and the district court correctly analyzed them under the *McDonnell Douglas* framework (ROA.1113-1124). Plaintiff briefed his claims in that context in his opposition for summary judgment (ROA.701-725).

Regarding plaintiff's Title VII and Section 1981 retaliation claims, Mr. Wilkinson testified in his deposition that he complained to Block about Rosa's racist and sexist comments before his termination (ROA.721). In his verified, amended complaint, Mr. Wilkinson also testified he "consistently complained" to Block from August 2019 through the Hilton-franchise inspection in November 2019 (ROA.81). Mr. Wilkinson testified during his deposition that Block said he would deal with the matter, but Mr. Wilkinson never saw evidence he did (ROA.513). Chasity Anthony testified she was present during a meeting in October or November 2019 when Mr. Wilkinson complained to Block about Rosa's treatment, and Block laughed about it:

> I remember Mr. Wilkinson specifically complained about Ms. Rosa telling him she was going to replace him and the Hampton Inn staff with "Mexicans," and that women make better general managers. I remember Mr. Block just laughed and changed the subject.

(ROA.847).

Block admitted that Mr. Wilkinson complained about Rosa, but Block testified Mr. Wilkinson complained about Rosa generally, not about race or sex discrimination (ROA.812).

The Hampton Inn's assistant general manager, Vanderhoff, admitted Mr. Wilkinson lamented to her that Rosa was "targeting" him at work because of his race and sex (ROA.871-875). Vanderhoff testified Mr. Wilkinson told her he had complained about Rosa to Block in September or October 2019 (ROA.875). That timeline generally tracks with Anthony's testimony that she saw Wilkinson complain to Block about Rosa's race and sex-discrimination "around October or November 2019" (ROA.847).

Finally, Mr. Wilkinson testified that, after he complained to Block, Rosa approached him and said "You're not getting rid of me. I'm going to be here." (ROA.1041-1042).

The district court correctly considered whether plaintiff produced evidence of (1) a protected activity, (2) an adverse action, and (3) causation. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022). The district court noted defendants did not challenge the first or second elements of plaintiff's retaliation claim on summary judgment, only that plaintiff could not prove causation "because [Wilkinson] was terminated for his poor as a

General Manager, not for any protected activity." (ROA.1114). The district court correctly held that defendants misapplied the relevant burden at the *prima facie* stage of the *McDonnell Douglas* inquiry because, at the moment, plaintiff needed only to show that his "protected activity and the adverse employment action are not completely unrelated" (ROA.1119). The district court also held that, assuming Wilkinson did engage in a protected activity, then "it is likely that Wilkinson can . . . establish a *prima facie* case of retaliation." (ROA.1119).

That said, the district court's order and reasons are ambiguous regarding the first element of the plaintiff's *prima facie* case. The district court purported to find, *sua sponte*, that while Wilkinson "may have complained to his supervisor [Block] about Rosa's statements in general, nothing in the record supports the claim that he reported Rosa's behavior as discriminatory before Defendants made the decision to fire him." (ROA.1118) (cleaned up).

First, given the district court's further analysis, it's not clear whether this finding contributed to the court's dismissal of plaintiff's retaliation claims. Later in its order and reasons, the district court

wrote "the Court assumes that Wilkinson can establish a *prima facie* case of retaliation under Title VII, but dismissal is nevertheless warranted for his failure to show a genuine issue of fact regarding pretext." (ROA.1120).

Out of an abundance of caution, to the extent the district court ruled against plaintiff based on any purported failure to prove a protected complaint as part of his *prima facie* case, plaintiff notes, as described *supra*, the ample record evidence of his complaints to Block before he was fired about Rosa's "discrimination and harassment" (ROA.81); that "Rosa had engaged in a pattern of harassment specifically based on Mr. Wilkinson's race, ethnicity, and sex" (ROA.81); that Wilkinson threatened to quit to escape the hostile work environment and harassment (ROA.81); and that Wilkinson repeated most of these complaints to Block during a meeting during which Chasity Anthony was present and has since corroborated (ROA.847).

Second, as the district court pointed out, the defendants never briefed this issue on summary judgment, and the district court gave plaintiff no notice under Fed. R. Civ. P. 56(f) that it might dismiss his

claims on summary judgment because of this purportedly lacking evidence on the first prong of plaintiff's *prima facie* case.

Finally, Rosa must have understood Mr. Wilkinson had complained about her, because she approached him afterwards and threated "you're not getting rid of me." (ROA.1041-1042).

All that said, the district court did appear to ultimately ground its dismissal of plaintiff's retaliation claims in a purported failure to demonstrate pretext versus failing to make a *prima facie* case (ROA.1120-1124).  The district court appeared to use its finding that defendants' proffered reasons for termination which trumped plaintiff's direct-evidence case necessarily scuttled his retaliation claim, too: "There is no evidence that Wilkinson would have been terminated solely because – or but for – his protected characteristics.  Therefore . . . his retaliation claims must be dismissed." (ROA.1124).

* * *

Plaintiff also brought state-law retaliation claims under the Louisiana Environmental Whistleblower Act and the more generalized Louisiana Whistleblower Act (ROA.1132).

The district court dismissed these claims too, assuming without deciding that even if plaintiff could make out a *prima facie case* under either statute, the "claims fail because [Wilkinson] cannot show that a genuine issue of fact regarding pretext exists." (ROA.1133-1134).

But the circumstantial evidence supporting whistleblower pretext was arguably even greater than plaintiff's evidence of status-based retaliation. All parties admit the Hampton Inn was infested with mold throughout Patel's ownership (ROA.708-725). When Mr. Wilkinson began as general manager in 2018, there were as many as 30 guest rooms at the Hampton Inn which were marked "out of order" (or "OOO"), and many of these rooms were "OOO" because of mold (ROA.708). Meaning, these rooms could not be rented to guests until the mold was removed, and this was ultimately impacting the Hampton Inn's profitability (ROA.708).

In an email dated August 23, 2019, a copy of which was submitted with plaintiff's summary judgment briefing, one of Laura Rosa's first instructions to Mr. Wilkinson as regional manager was to scrub down all the moldy rooms with bleach and water, and then to paint over them, so the rooms could be rented out to guests (ROA.981-984). Rosa

wrote that Mr. Wilkinson needed to "start focusing on sales and getting rooms back in OOO." (ROA.981).

This caused significant consternation for Mr. Wilkinson and his maintenance and house cleaning staff. Wilkinson emailed back Rosa, Block, Patel, and another manager that same day, informing them that scrubbing down the walls with bleach and water was ineffective, and the mold simply returned (ROA.982-984). This additional manager – a man named Al Schof – privately emailed Rosa afterwards and corroborated Mr. Wilkinson's assessment (ROA.983-984).

Wilkinson complained his staff was not equipped to remediate the mold, and that attempting to do the work was unsafe (ROA.709). Everyone in the case admits no one on staff at the time was a licensed mold remediator (ROA.709). Meanwhile, two Hampton Inn maintenance workers – Paul Lanclos and Demille Topps – complained to Mr. Wilkinson they felt unsafe working around the mold without better protective equipment (ROA.710). Mr. Wilkinson testified he asked Patel, Block, and Rosa for the necessary protective equipment to safely work around the mold, but he was never authorized to purchase it (ROA.710). Mr. Wilkinson believed management's refusal to

remediate the mold surely violated some Louisiana law or health ordinance, and Wilkinson likewise believed his managers were creating an unsafe working environment by failing to remediate the mold and provide his staff with proper protective equipment (ROA.709).

Chasity Anthony corroborates this. Anthony testified she witnessed Mr. Wilkinson personally tell Patel one day at the Hampton Inn during the summer of 2019 that their efforts to remove the mold were not working, and Mr. Wilkinson could not force his staff to work around the mold unsafely (ROA.710). Anthony heard Patel say he would talk to Ms. Rosa about the matter, but Anthony and Wilkinson confirmed management never hired professional contractors to remediate the hotel while they were employed there, and Ashley Vanderhoff confirmed remediators were only eventually hired *after* Wilkinson was fired (ROA.710).

Nevertheless, Rosa ordered Mr. Wilkinson to continue the work (ROA.709). This is particularly probative because Rosa and Patel both admitted during their depositions that their understanding of Louisiana regulations (whether accurate or not) prohibited renting out mold-infested rooms to guests (ROA.709-710). Patel went even further in his

deposition, admitting no one at the Hampton Inn should have attmpeted to remediate mold with bleach and water, that it was inappropriate for Rosa and Block to instruct Mr. Wilkinson and his staff to try and do so, and ultimately that it was "possible" Rosa and Block terminated Mr. Wilkinson to keep him quiet about their inappropriate and ineffective mold remediation work (ROA.711).

Finally, in their written answers to plaintiff's interrogatories, Block, Rosa, and Patel each stated one of the reasons they fired Mr. Wilkinson was because "[he]also failed to renovate rooms and remediate the mold in several of the hotel rooms and conference rooms timely." (ROA.711-715).  But the entire gist of plaintiff's summary judgment evidence is that, in reality, those rooms were not "timely remediated" because of any failing on his part, but because management refused to either hire remediators or provide the necessary equipment and cleaning materials despite Wilkinson's repeated complaints (ROA.708-711).

* * *

Finally, plaintiff brought related claims for hostile work environment based on race and sex-discrimination under Title VII,

Section 1981, and the LEDL (ROA.89-97). The district court determined Rosa's repeated, derogatory comments "while offensive, do not equate to the reprehensible, offense-laden racial epithets the Fifth Circuit has found sufficient to state a claim for hostile work environment[,]" and that "a reasonable person would conclude that Rosa's statements did not objectively create a hostile work environment." (ROA.1129-1130). The district also faulted plaintiff for purportedly failing to show how Rosa's harassment "destroyed [his] opportunity to succeed or interfered with his performance." (ROA.1124-1131). The district court specifically noted that Wilkinson testified during his deposition, in response to a question about one of Rosa's harassing comments, that he "laughed at it and moved on." (ROA.1131). The district court apparently did not credit plaintiff with the fact Rosa's comments were made in front of both Wilkinson and his subordinate staff, threatened that they would be fired because of their sex and race, that Wilkinson felt bothered enough that he threatened to quit if the harassment did not stop, and both Block and Rosa claim at least one of the reasons they fired Wilkinson was because of this complaint.

This appeal timely followed.

## VIII. SUMMARY OF THE ARGUMENT

The defendants say they fired Mr. Wilkinson because he was a poor performer.  Mr. Wilkinson says that's not true, and the real reason he was fired is, first, because of Laura Rosa's overt dislike of men generally, and non-Hispanic white men specifically; and, second, because Mr. Wilkinson complained about Rosa harassment and management's refusal to properly remediate the Hampton Inn's mold infestation.

What makes this case different than most is the district court's correct finding that plaintiff did, in fact, proffer direct evidence of race, sex, and national-origin discrimination.  *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015).  This Court has described such cases as "rare."  *Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, 19-20656, 2022 WL 4494148, at *3 (5th Cir. Sept. 27, 2022).  Direct evidence of discrimination has powerful evidentiary implications leading up to trial. Once proffered, a defendant-employer can only prevail on summary judgment by proving "by a preponderance of the evidence that the same

decision would have been made regardless of the forbidden factor."
*Etienne*, 778 F.3d at 475.

If direct-evidence cases are rare, then cases dismissing those claims on summary judgment appear to be practically non-existent in the federal case law. Plaintiff could only find one such case, a Seventh Circuit decision from 1995 called *Campbell v. Fasco Indus., Inc.,* 67 F.3d 301 (7th Cir. 1995). There, the Seventh Circuit granted summary judgment against the plaintiff but only upon what it described as "overwhelming" evidence that management would have fired the plaintiff anyway during a round of financial layoffs. Plaintiff could find no decisions from this Court affirming summary judgment in a direct-evidence case under Title VII or Section 1981.

In sharp contrast, this Court just reversed summary judgment in a direct-evidence case in September 2022. *See Ryan's Pointe Houston*, *supra*. The facts of *Ryan's Pointe Houston* and this case are very similar. The result should be the same.

Here, the crux of the matter – which the district court noted at length and which appellant agrees with – is pretext. Defendants' proffered evidence for why they fired Mr. Wilkinson amounts to little

more than their testimony he just wasn't a very good manager. But the
reasons *why* defendants supposedly believe that have shifted over the
life of the case, appear inconsistent, are challenged by Wilkinson, and
are essentially uncorroborated by sources other than the co-defendants
themselves.

Evidence of pretext is evidence that a reasonable jury could rely
upon to "to disbelieve [an employer's] proffered reason was its true
motivation" to fire the plaintiff. *Laxton v. Gap Inc.*, 333 F.3d 572, 579–
80 (5th Cir. 2003). The hallmark of pretext is evidence that paints
defendant's justification for termination as "false" or "unworthy of
credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,
143 (2000). And while individual defendants may testify to their
supposed, legitimate reasons for terminating a plaintiff, in the absence
of some corroborating evidence, a jury is not *required* to believe the self-
serving testimony of an interested witness, and a district court cannot
grant summary judgment based on what really amounts to a credibility
determination in favor of the defendant. *Reeves*, 530 U.S. at 151.
Relevant here, an "interested witness" is one who, like the co-
defendants in this case, has a "direct and private interest in the matter

at issue." *Simmons v. Pac. Bells, L.L.C.*, 787 Fed.Appx. 837, 840 (5th Cir. 2019) (quoting *Black's Law Dictionary* (11th ed. 2019)).

Ultimately, given the disputed factual record in this case, the district court erred by finding "any jury" as a matter of law would be compelled to believe defendants fired Mr. Wilkinson despite the direct-evidence of race, sex, and national-origin animus to the contrary.

The district court likewise granted summary judgment on plaintiff's retaliation claims under Title VII, Section 1981, and Louisiana state law. The district court correctly determined (or at least correctly assumed for purposes of its decision) that plaintiff satisfied his *prima facie* cases of retaliation. But the court's reasoning for dismissal remained essentially the same. To the extent Mr. Wilkinson's proffered evidence of pretext wasn't sufficient to preclude summary judgment despite direct evidence of discrimination to the contrary, it was more or less a foregone conclusion that plaintiff's circumstantial evidence claims of retaliation under the *McDonnell Douglas* standard would likewise be dismissed.

As noted earlier in this brief, this case is really about credibility determinations. Defendants have put forward reasons for terminating

Mr. Wilkinson, but the inconsistent, self-interested, and uncorroborated nature of those reasons cannot trump on summary judgment plaintiff's direct evidence of race, sex, and national-origin animus; temporal proximity between his protected complaints and his termination; at least one threat by Laura Rosa after Wilkinson made those complaints and ample, material evidence of pretext.

Appellant respectfully asks this Court to reverse the district court's grant of summary judgment and dismissal of Mr. Wilkinson's case.

# IX.   ARGUMENT

A.   *This Court Reviews the District Court's Order and Reasons de Novo under the Identical Rule 50 and Rule 56 Standard*

The district court granted defendants' motion for summary judgment under Federal Rule 56 and dismissed all of plaintiff's claims with prejudice.  On appeal, this Court reviews the "grant of summary judgment de novo, applying the same legal standards as the district court." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576 (5th Cir. 2020), as revised (Aug. 14, 2020).

Hornbook law is that summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "All evidence is viewed in the light most favorable to the nonmoving party." *Brown*, 969 F.3d at 576.  The court must not make credibility determinations. *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019).

In the specific context of employment cases, the Supreme Court in *Reeves* probably best summed up the applicable standard of review:

> Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  That is, the court should give credence to the evidence favoring the

44

> nonmovant as well as that evidence supporting the moving
> party that is uncontradicted and unimpeached, at least to
> the extent that that evidence comes from disinterested
> witnesses.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51

(2000); *cf Montemayor v. City of San Antonio*, 276 F.3d 687, 691 (5th

Cir. 2001) ("the jury is required to believe evidence supporting the

moving party that is uncontradicted and unimpeached, at least to the

extent that that evidence comes from disinterested witnesses").

The *Reeves* Court also held the summary judgment standard

under Rule 56 "mirrors" the conventionally onerous standard under

Federal Rule 50 required to win a motion for judgment notwithstanding

a jury verdict. *Id.* at 150 ("the standard for granting summary

judgment 'mirrors' the standard for judgment as a matter of law, such

that 'inquiry under each is the same'"). The Rule 50 standard requires

the movant to prove "the facts and inferences point so strongly and

overwhelmingly in favor of one party that reasonable men could not

arrive at a contrary verdict[.]" *Bazile v. Bisso Marine Co., Inc.*, 606 F.2d

101, 104 (5th Cir. 1979).

In "pretext" cases like this, the legal question is whether plaintiff

puts forward "evidence permitting the jury to disbelieve [the

employer's] proffered reason was its true motivation." *Laxton v. Gap Inc.*, 333 F.3d 572, 579–80 (5th Cir. 2003) (reversing district court's grant of employer's Rule 50 motion after jury verdict in favor of employee).

Here, appellant's argument is straightforward enough: the district court erred by determining no jury could have disbelieved defendants' self-interested and inconsistent explanations for why they fired Mr. Wilkinson.

B.    *Direct Evidence of Race, Sex, and National-Origin Discrimination plus Defendants' Inconsistent Explanation for Termination Creates Evidence of Pretext*

A plaintiff can prove his employment discrimination case with either direct evidence, circumstantial evidence, or both. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). "Direct evidence" of discrimination is evidence "which, if believed, would prove the existence of [discrimination] without any inferences or presumptions." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 40-41 (5th Cir. 1996). So-called "direct evidence" cases are "rare." *Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, 19-20656, 2022 WL 4494148, at *3 (5th Cir. Sept. 27,

2022).  The Fifth Circuit determines whether proffered evidence is

"direct evidence" using a four-factor test:

> Whether the comments are (1) related to the plaintiff's
> protected characteristic; (2) proximate in time to the
> challenged employment decision; (3) made by an individual
> with authority over the challenged employment decision; and
> (4) related to the challenged employment decision.

*Etienne*, 778 F.3d at 476.

Here, the district court correctly concluded Rosa's multiple

comments to Mr. Wilkinson and his staff were of a quality that

constituted direct evidence of discrimination.  Once plaintiff comes

forward with such evidence, a defendant can only win summary

judgment by proving "by a preponderance of evidence that the same

decision would have been made regardless of the forbidden factor."  *Id.*

The district court decided as a matter of law defendants met this

onerous burden.  Before digging into the analysis, it's worth mentioning

that if "direct-evidence" discrimination cases are "rare," *Ryan's Pointe*

*Houston, L.L.C*, *supra*, cases that grant summary judgment against a

plaintiff who has proffered direct evidence are practically non-existent.

In preparation for this appeal, plaintiff surveyed the federal cases

to find any instances, nationwide, where a federal district or circuit

court found (1) plaintiff proved direct evidence of discrimination, but (2)

summary judgment was granted and ultimately sustained.  Plaintiff

found twenty-six cases in which a federal court determined plaintiff

proved direct evidence of discrimination.  In twenty-five of those cases,

summary judgment was ultimately denied either at the district court or

on appeal.[4]  Plaintiff could find only one case in which summary

---

[4] These cases are *Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.,* 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022) (unpublished); *Brown v. J. Kaz, Inc.,* 581 F.3d 175 (3d Cir. 2009); *Brewer v. New Era, Inc.,* 564 F. App'x 834 (6th Cir. 2014); *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723 (8th Cir. 1992); *Dominguez-Curry v. Nevada Transp. Dep't,* 424 F.3d 1027 (9th Cir. 2005); *Mora v. Jackson Mem'l Found., Inc.,* 597 F.3d 1201 (11th Cir. 2010); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181 (11th Cir. 1997); *Haynes v. W.C. Caye & Co.,* 52 F.3d 928 (11th Cir. 1995); *Burns v. Gadsden State Cmty. Coll.,* 908 F.2d 1512 (11th Cir. 1990); *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir. 1985); *Ames v. Cartier, Inc.,* 193 F. Supp. 2d 762 (S.D.N.Y. 2002); *Silver v. N. Shore Univ. Hosp.,* 490 F. Supp. 2d 354 (S.D.N.Y. 2007); *Underwood v. Monroe Mfg., L.L.C.,* 434 F. Supp. 2d 680 (S.D. Iowa 2006); *Wiggins v. The City of Montgomery, Alabama,* No. 2:17-CV-425-KFP, 2022 WL 625075 (M.D. Ala. Mar. 3, 2022); *Moore v. Alabama State Univ.,* 980 F. Supp. 426 (M.D. Ala. 1997); *Peterkin v. Taco Bell,* No. 3:95-CV-694RM, 1996 WL 939573 (N.D. Ind. Nov. 20, 1996); *Jordan v. Mathews Nissan, Inc.,* 539 F. Supp. 3d 848 (M.D. Tenn. 2021); *Moody v. InTown Suites,* No. 1:04-CV-1198-TWT-AJB, 2006 WL 8431638 (N.D. Ga. Feb. 1, 2006); *Moody v. Intown Suites Mgmt., Inc.,* No. CIV.A.1:04CV1198-TWT, 2006 WL 870388 (N.D. Ga. Mar. 31, 2006); *Bean v. Sprint/United Mgmt. Co.,* No. 1:18-CV-413, 2021 WL 5451493 (W.D. Mich. Mar. 31, 2021); *Lawson v. Hinds Cnty. Sch. Dist.,* No. 3:12CV698-DPJ-FKB, 2014 WL 373199 (S.D. Miss. Feb. 3, 2014); *Martin v. Helena Chem. Co.,* No. 2:13-CV-251-J, 2014 WL 12576293 (N.D. Tex. Sept. 3, 2014); *Polkow v. CSX Transportation, Inc.,* No. 1:02 CV 72, 2003 WL 23784462 (N.D. Ohio Oct. 1, 2003); *Boutros v. Avis Rent A Car Sys., LLC,* No. 10 C 8196, 2013 WL 3834405 (N.D. Ill. July 24, 2013); *Walton v. Neptune Tech. Grp., Inc.,* No. 2:08-CV-5-MEF, 2009 WL 3379912 (M.D. Ala. Oct. 20, 2009); and *Demshick v. Delaware Valley Convalescent Homes, Inc.,* 2007 WL 1244440 (E.D. Pa. Apr. 26, 2007).

judgment was granted and sustained despite plaintiff's direct evidence of discrimination: *Campbell v. Fasco Indus., Inc.,* 67 F.3d 301 (7th Cir. 1995).

In *Campbell*, an age-discrimination case, the Seventh Circuit noted only one piece of direct evidence of animus – a comment by plaintiff's manager that he should "consider hiring a younger person" for an open job – which was made two years before plaintiff's own, alleged age-based termination. The *Campbell* court granted summary judgment because of "overwhelming" evidence of a non-discriminatory reason for termination, including that plaintiff was terminated as part of a found of layoffs, during a company-wide financial crisis, and had racked up at least two-year's worth of poor performance evaluations before he was fired. For all the reasons described *supra*, the *Campbell* facts bear zero resemblance to the facts of this case.

However, just two months ago, this Court reversed summary judgment in a national-origin and sex-discrimination case, finding that direct-evidence of discrimination precluded dismissal. *Ryan's Pointe Houston, L.L.C.*, 2022 WL 4494148 at *3. Although not designated for

publication, the facts and holding of *Ryan's Pointe Houston* are persuasive.

The plaintiff, Magali Villalobos, was originally from Mexico and served as property manager for the defendant's apartment complex. After a change in management, defendant fired Villalobos because of her allegedly poor performance and lack of experience. Relevant here, plaintiff claimed she was actually fired because of her national origin. For instance, plaintiff alleged one of her new managers referred to a tenant as a "trashy Mexican," and other managers talked about wanting to change the "demographics" of the renters, which plaintiff alleged was code for race. *Id.* at *2. Plaintiff also alleged her managers expressed dismay about the racial makeup of their staff, because they were "all Mexicans." *Id.* Plaintiff's managers also made comments implying they wanted to hire people who looked like "Ken and Barbie" to replace the plaintiff. *Id.* at *4. Although plaintiff's managers claimed they gave her both oral and written warnings before she was fired, and was overall a poor performer, plaintiff disputed this, indicating she was never reprimanded at all.

Nevertheless, the district court granted summary judgment in favor of defendants, holding that plaintiff failed to make a *prima facie* case of discrimination (she was too inexperienced for the job) and, even if she had, that management fired her because of poor performance. *Id.* at *3.

This Court reversed. First, the Court determined management's multiple race-based comments constituted direct evidence of discrimination. *Id.* This Court then concluded the defendant could not prove, as a matter of law, that it would have fired the plaintiff regardless of her national origin. *Id.* Specifically, this Court noted plaintiff offered evidence – at least in the light most favorable to her on summary judgment – that the various instances of her alleged poor performance were untrue and pretextual. *Id.* at *5. For instance, while the defendant claimed the plaintiff had been disciplined for poor work, the plaintiff testified that was not true. While the defendant claimed rent-delinquencies at the apartment complex were up under the plaintiff's watch, the most recent business reports showed that was inaccurate. This Court also noted that even if the defendant had put plaintiff on notice of poor performance before firing her, the termination

decision came almost immediately thereafter, suspiciously leaving plaintiff with no time to improve.  *Id.* at *5.

The strength of a direct-evidence case on summary judgment is that defendant is forced to prove, by a preponderance of the evidence, as a matter of law, that although the employer held animus against its own employee based on his or her protected status, the employer managed to keep those ill-feelings in check and really fired the plaintiff because of poor performance or some other legitimate reason. Obviously, in that context, any evidence of pretext is sufficient to deny judgment as a matter of law.  This is presumably why summary judgment has been ultimately denied in every single direct-evidence case plaintiff could find except one (the Seventh Circuit's *Campbell* case).  This is presumably why this Court reversed summary judgment just two months ago in *Ryan's Pointe Houston*.  And this is why this Court should reverse the district court's summary judgment against Shane Wilkinson in this case.

Here, just like in *Ryan's Pointe Houston*, plaintiff brought forward multiple and repeated statements showing not just Laura Rosa's animus towards Mr. Wilkinson and his staff based on race, sex, and

national-origin, but that Rosa went so far as to tell Wilkinson he should be replaced because of it.

Rosa and her fellow managers in this case claim Wilkinson was a poor performer, but unlike in *Ryan's Pointe Houston*, defendants admit they never disciplined Wilkinson at all before the day they fired him. Just like in *Ryan's Pointe Houston*, management's decision to fire an allegedly poor performer without giving any opportunity for improvement raises the specter of pretext.

Block and Rosa claim that the Hampton Inn failed its franchise inspection under Mr. Wilkinson's watch, but later admitted in discovery that the property had never passed that inspection under Wilkinson's predecessor or successor. Block claimed the Hampton Inn hadn't met various quality benchmarks, but Ashley Vanderhoff testified that paperwork was all in order.

Moreover, all of management's supposed evidence of poor performance in this case comes from the individual co-defendants themselves – Block, Rosa, and Patel – who each have a direct, financial stake in the outcome in the case. Under *Reeves*, their purported

inconsistent and uncorroborated testimony cannot be fully credited on summary judgment as a matter of law. *Reeves*, 530 U.S. at 150-51.

Here, plaintiff submits the defendant in *Ryan's Pointe Houston* put forward more significant evidence of allegedly poor performance compared to defendants in this case. But neither the evidence in that case nor this one is the sort of "overwhelming" evidence of a legitimate firing the Seventh Circuit spoke of in *Campbell*. To the extent the district court in *Ryan's Pointe Houston* erred, so did the district court in this case.

C.    *Temporal Proximity Between Protected Complaint and Termination, Plus Defendants' Disputed Explanation for Termination, Plus at Least One Verbal Threat after Complaining, Creates Evidence of Pretext*

Plaintiff concedes he lacks direct-evidence of retaliatory animus for his claims under Title VII and Section 1981. Instead, plaintiff must prove a *prima facie* case of retaliation, which requires (1) a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

Mr. Wilkinson explicitly complained to Russell Block about Laura Rosa's racist and sexist comments to him in October or November 2019, just a month or two before his termination, and this was corroborated

by Chasity Anthony who was present at the meeting. On December 19, Block and Rosa (with Patel's blessing) fired Mr. Wilkinson. After he complained, but before she fired him, Rosa told Wilkinson "You're not getting rid of me. I'm going to be here." Wilkinson told Block would quit if Rosa didn't stop her harassment, and later Block and Rosa admittedly used this idea that Wilkinson "threatened to quit" as a supposed reason justifying his termination.

The district court seemed to concede, or at least assumed for the sake of argument, that plaintiff established his *prima facie* case of retaliation *See* ROA.1120 (the "Court assumes that Wilkinson can establish a *prima facie* case of retaliation under Title VII, but dismissal is nevertheless warranted for his failure to show a genuine issue of fact regarding pretext"). Based on the record evidence, this was a correct assumption. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38 (5th Cir. 1996) ("to establish a prima facie case, a plaintiff need only make a very minimal showing"). Nor does appellant dispute that defendants at least proffered a reason which, if believed, justified firing Mr. Wilkinson (his allegedly poor performance).

Rather, the district court dismissed plaintiff's claims based on a supposed lack of pretext under the third and final stage of the *McDonnell Douglas* framework. The district court essentially found, without stating it on the nose, that because defendants' proffered non-discriminatory reason for firing Wilkinson was good enough to overcome direct-evidence of discrimination, it must likewise be good enough to overcome circumstantial evidence of retaliation. *See* ROA.1121 (incorporating the district court's analysis of pretext concerning plaintiff's direct-evidence claims).

Evidence of pretext is evidence that a reasonable jury could rely upon to "to disbelieve [an employer's] proffered reason was its true motivation" to fire the plaintiff. *Laxton*, 333 F.3d at 579–80. Classic evidence of pretext is that which tends to show the proffered reason is "false" or "unworthy of credence." *Reeves*, 530 U.S. at 143. But the fact finder may also consider the underlying evidence establishing the plaintiff's *prima facie* case and any "inferences properly drawn therefrom." *Id.* Likewise, "[a]n oral statement exhibiting discriminatory animus may be used to demonstrate pretext or . . . additional evidence of discrimination." *Laxton*, 333 F.3d at 583. When

considering the falsity of a proffered reason, the district court should not fully credit a defendant's self-interested explanation. *Reeves*, 530 U.S. at 151; *accord Ryan's Pointe Houston*, 2022 WL 4494148, at *7 ("fully crediting [manager's] *post hoc* conclusion that her actions were proper and legal is inappropriate at this stage in the proceedings").

In *Ryan's Pointe Houston*, this Court also reversed summary judgment on plaintiff's related, circumstantial-evidence pregnancy discrimination claim under the *McDonnell Douglas* framework. Although this Court noted the plaintiff lacked the sort of direct-evidence of discrimination that she brought forward on her national-origin discrimination claim, this Court nevertheless concluded "the record contains evidence suggesting [management's] justification was pretextual" with respect to her pregnancy-discrimination claim. *Id.* at *7. This Court held proof that management was aware of plaintiff's pregnancy and disapproved of it, combined with the other evidence challenging management's reason for termination, was sufficient to create an issue of pretext. *Id.* Importantly, this Court also held the testimony of one of plaintiff's managers that she as a poor performer

was "insufficient to defeat summary judgment" given the credibility assessment inherent to the issue.  *Id.*

The same sorts of evidentiary disputes pervade this case as well, as discussed at length throughout this brief.  But on the special point of credibility determinations, the district additionally erred by (in the words of this Court) "fully crediting" the *post hoc* conclusions of Block, Rosa, and Patel that Mr. Wilkinson was a poor performer.  Under *Reeves*, on a motion for summary judgment, a district court may not credit against a nonmovant uncorroborated testimony sourced from an interested witness.

This Court has reversed summary judgment in a similar sort of retaliation case based in part on this issue.  *See Simmons v. Pac. Bells, L.L.C.*, 787 Fed.Appx. 837, 843 (5th Cir. 2019) (in a retaliation case alleging defendant fired its employee because he refused to lie to avoid Mississippi jury duty, reversing summary judgment in part because employer "puts forth no contemporaneous evidence demonstrating that [plaintiff's] termination was decided before his jury summons [and] a jury is not required to believe the statements of interested witnesses").

Once again, the majority – if not all – the evidence that defendants have proffered against Mr. Wilkinson in this case that he was a poor manager or was otherwise legitimately terminated appears to be inconsistent, self-serving, uncorroborated by any objective sources, and ultimately put forward by the individual co-defendants in the case. This Court in *Simmons* noted "[t]he precise definition of an interested witness has remained elusive," but agreed "the definition includes those with a "direct and private interest in the matter at issue." *Id.* at 840 n.1.

When combined with the temporal proximity between Mr. Wilkinson's complaints to Block and his termination, Rosa's threat made after his complaint, and the evidence suggesting management's proffered reason for termination is false, the district court erred by finding plaintiff failed to raise an issue of pretext on summary judgment.

D.   *Clear Evidence of State Law Whistleblower Retaliation, Plus Defendants' Inconsistent Explanation for Termination, Creates Evidence of Pretext*

To the extent Mr. Wilkinson brought forward sufficient evidence of pretext on his status-based retaliation claims, he surely brought forth

enough evidence to survive summary judgment on this Louisiana state-

law whistleblower claims under the LEWA, codified at La. Rev. Stat.

Ann § 30:2027 *et seq.*, and the LWA, codified at La. Rev. Stat. Ann. §

23:967.

At the outset, a plaintiff proves a claim under the LEWA by

showing five elements:

> (1) the employee acts in good faith; (2) the employee reports,
> or threatens to report, a violation; (3) the employee
> reasonably believes the activity, policy, or practice
> undertaken by his employer, or another employer with
> whom there is a business relationship with his employer, is a
> violation of an environmental law; (4) the employee reports,
> or threatens to report, the violation to a supervisor or to a
> public body of the employer; and (5) employer acts in a
> retaliatory manner because the employee reported, or
> threatened to report, a violation.

*Collins v. State*, 118 So.3d 43, 49 (La. App. 2013).  Here, Mr. Wilkinson

put forward evidence that he told Rosa, Block, and Patel in good-faith

his concerns that management's refusal to properly remediate the mold

infestation that had taken over the Hampton Inn was unsafe, and so

was management's insistence that Wilkinson and his staff try to

perform the work without adequate equipment, and he was fired at

most only a few months later.

Concerning the LWA, a plaintiff proves a *prima facie case* by showing "(1) the defendant violated state law; (2) she informed defendant of the violation; (3) she refused to participate in the violation or threatened to disclose the practice; and (4) she was fired as a result of her refusal or threat." *Brown v. ICF Int'l*, 07-931, 2011 WL 5548962 at *9 (M.D. La. Nov. 15, 2011). Specifically, Wilkinson asserted predicate violations of La. Rev. Stat. Ann. § 23:13 (relative to defendants' failure to "furnish employment which shall be reasonably safe for the employees therein); and also La. Admin. Code tit. 51 § 123 (relative to defendants' rental of hotel rooms "wherein the floor is damp by reason of water from the ground, or which is impregnated or penetrated by an offensive gas or smell prejudicial to health").

The district court gave short-shrift to its analysis on these points, essentially assuming without deciding that even if plaintiff could make out a *prima facie* case of retaliation, management's proffered reason for termination was sufficient as a matter of law across all of plaintiff's wrongful termination claims, including under the LEWA and LWA. *See* ROA.1133-34 ("even assuming Wilkinson can establish a *prima facie*

case under these statutes, his LEWA and LWA claims fail because he cannot show that a genuine issue of fact regarding pretext exists").

Appellant agrees, at least for the sake of argument here, that the *McDonnell Douglas* burden-shifting framework applies to plaintiff's state-law whistleblower claims. But the same impact of management's inconsistent, uncorroborated, and self-interested reasons for terminating Mr. Wilkinson remain applicable here as well. Moreover, Wilkinson brought forward even clearer evidence linking his complaints about the Hampton Inn's mold infestation to his termination.

Specifically, in their written answers to plaintiff's interrogatories, Block, Rosa, and Patel all responded one of the reasons that they fired Wilkinson was because he did not "timely" remediate the mold from the Hampton Inn's rooms. Indeed, Rosa's email to Wilkinson, Block, and Patel dated August 23, 2019 (just days after Rosa became regional manager) ordered Mr. Wilkinson to focus on scrubbing down infested hotel rooms with bleach and water so they could be put back into service (in other words, to earn money).

Wilkinson protested that bleach and water was ineffective. Despite another manger, Al Schof, privately telling Rosa that Wilkinson

was right, she insisted he continue the work.  Rosa was apparently

aware of the issue enough that she actively prevented Hilton's franchise

inspector from accessing some of the mold-infested rooms during their

November 2019 inspection.  And Ashley Vanderhoff testified that

management never hired actual remediators until *after* Mr. Wilkinson

was fired.

One reasonable conclusion from this evidence is that Rosa, Block,

and Patel pressured Mr. Wilkinson to inadequately remediate hotel

rooms so they could be rented to unsuspecting guests to generate

greater cashflow, and Wilkinson's reluctance to do so motivated

management's decision to fire him at most four month's later.[5]  The fact

that Block and Rosa later testified during their deposition that they did

*not* fire Mr. Wilkinson because of this issue creates further

inconsistency in their proffered explanations.  Finally, Patel admitted

during his deposition testimony that no one should have been

attempting to remediate the mold at the Hampton Inn with bleach and

---

[5] This Court has previously held a span of time of four months from protected
activity to adverse action is "sufficient to satisfy the causal connection for
summary judgment purposes." *Richard v. Cingular Wireless LLC*, 233 Fed. Appx.
334, 338 (5th Cir. 2007) (quoting *Evans v. City of Houston*, 246 F.3d 344, 354 (5th
Cir. 2001)).

water, and it was "possible" Block and Rosa terminated Mr. Wilkinson

to cover the process up (ROA.711).

On these facts, a reasonable jury could certainly disbelieve

management's proffered reason for terminating Mr. Wilkinson.  And, if

so, the district court erred by finding plaintiff failed to produce

sufficient evidence of pretext to survive summary judgment.

E.     *Laura Rosa's Routine Harassment Was Severe, Pervasive, and*
       *Destructive*

Finally, the district court dismissed plaintiff's related hostile work

environment claims based on Rosa's race, sex, and national-origin

harassment at work.  The district court dismissed those claims, finding

the admitted direct-evidence of animus was not severe or pervasive

enough to have "destroyed Wilkinson's opportunity to succeed or

interfered with his work performance." The district court noted Mr.

Wilkinson "laughed" at one of Rosa's comments about firing him

because of his race, and thus it was speculative whether Rosa's

harassment impacted his performance at all (ROA.1130-31).

But these findings belie the fact that Rosa made these harassing

comments repeatedly during the entire four months of supervising Mr.

Wilkinson, in front of his subordinate staff, and Wilkinson was bothered

enough that not only did he complain to Block about the matter, but Wilkinson told Block he would quit if Rosa didn't stop. Defendants must at least tacitly concede this impacted the work environment, because Block and Rosa then indicated they fired Wilkinson in part because he threatened to quit.

More fundamentally, the crux of Rosa's harassment was to tell Wilkinson she did not have confidence in him as a general manager because he was a man, and because he could not work as "hard" or as "fast" as others because of his race. Ashley Vanderhoff likewise admitted Wilkinson lamented to her that he felt "targeted" by Rosa because of her harassment. When Wilkinson complained to Block about the matter, he laughed and did nothing.

And, of course, the cumulation of plaintiff's evidence is that Rosa and her fellow managers did fire Wilkinson because of the race, sex, national-origin, and related retaliatory animus against him. While the district court determined these facts did not "destroy" Mr. Wilkinson's ability to succeed at his work, the more reasonable interpretation of the evidence – at least for purposes of summary judgment – is that Rosa's harassment did exactly that. In other words, defendants owe a certain

liability to Mr. Wilkinson if the jury believes he was fired *because* of his race, sex, and national origin.  That liability is generally described as a claim for "wrongful termination."  But defendants also owe a separate and independent liability to Mr. Wilkinson for not just *firing* him because of his status, but by *overtly subjecting him* to Rosa's animus, without protection, throughout his employment until defendants made that final, tangible employment act.

In other words, it is not just that defendants fired Mr. Wilkinson because of his race, sex, and national origin, the essence of his hostile work environment claim is that they overtly harassed him until they swung the termination axe.  On those facts, Rosa's harassment (and management's failure to intervene) was at least severe or pervasive sufficient to survive summary judgment.

## X.  CONCLUSION

For these reasons, appellant Shane M. Wilkinson asks this Court to reverse the district court's grant of summary judgment and the final judgment dismissing his case with prejudice.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Shane M. Wilkinson*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I, Kevin S. Vogeltanz, certify that on November 9, 2022 I filed appellant's original brief via the Court's CM/ECF system. To the best of my knowledge, all parties in this case are represented by attorneys who are registered Filing Users in this case and who will receive notice through the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Shane M. Wilkinson*

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(b) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,191 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text, and with 12-point font for footnotes.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com