No. 22-30556

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

SHANE M. WILKINSON,

      Plaintiff/Appellant,

v.

PINNACLE LODGING, LLC, ET AL.,

      Defendants/Appellees.

On Appeal from the United States District Court
for the Eastern District of Louisiana

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

JULIE L. GANTZ
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities .......................................................................................... iii

Statement of Interest .......................................................................................... 1

Statement of the Issues ...................................................................................... 2

Statement of the Case ........................................................................................ 3

   A.  Statement of the Facts ............................................................................ 3

   B.  District Court's Decision ...................................................................... 12

Argument ............................................................................................................ 15

A reasonable jury could find that the defendants fired Wilkinson because of his race, national origin, and/or gender. ................................................. 15

   A.    The district court correctly held that Wilkinson produced direct evidence of race, national origin, and gender discrimination ................. 18

   B.    Because Wilkinson offered direct evidence, his discrimination claims should have survived summary judgment without further inquiry. ............................................................................................... 21

   C.    *McDonnell Douglas*'s burden-shifting proof scheme does not apply here. ................................................................................................ 27

   D.    Title VII does not require comparator evidence to establish a prima facie case of race, national origin, and gender discrimination. ... 28

Conclusion ........................................................................................................33

Certificate of Compliance

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................22

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344 (5th Cir. 2013) ....................32

*Bauer v. Albemarle Corp.*, 169 F.3d 962 (5th Cir. 1999) ......................................30

*Brown v. E. Miss. Elec. Power Assoc.*, 989 F.2d 858 (5th Cir. 1993) .............25, 26

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ...................................................25

*Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285 (5th Cir. 1991) ........................................................................................................27

*Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994) ...............................28

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ........................................17, 25, 29

*EEOC v. Ryan's Pointe Houston, L.L.C.*, No. 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022) ................................................................................20, 26

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473 (5th Cir. 2015) ........................................................................................ 19, 24-26, 27

*Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409 (5th Cir. 2003) .................24, 25

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978) ...........................................29

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470 (5th Cir. 2015) .............18, 33

*Harville v. City of Houston*, 945 F.3d. 870 (5th Cir. 2019) ...................................31

*Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177 (5th Cir. 2018)..........................................................................................................27

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) .............................29

*Johnson v. Maestri Murrell Prop. Mgmt.*, 555 F. App'x 309 (5th Cir. 2014)..........................................................................................................21

*Jones v. Robinson Prop. Grp.*, 427 F.3d 987 (5th Cir. 2005)................................26

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) .................................................26

*Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003) .................................................23

*Lockhart v. Republic Servs.*, No. 20-50474, 2021 WL 4955241 (Oct. 25, 2021).............................................................................................................33

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................... 1, 27-29, 33

*Nall v. BNSF Ry. Co.*, 917 F.3d 335 (5th Cir. 2019) .............................................23

*Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38 (5th Cir. 1996) ...........................21

*Nguyen v. Univ. of Tex. Sch. of L.*, 542 F. App'x 320 (5th Cir. 2013) ..........31, 33

*Oldenburg v. Univ. of Tex. at Austin*, 860 F. App'x 922 (5th Cir. 2021) ..........22

*Portis v. First Nat. Bank of New Albany*, 34 F.3d 325 (5th Cir. 1994) ...............28

*Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983)..............................29

*Pratt v. City of Houston*, 247 F.3d 601 (5th Cir. 2001) .......................................32

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) ...........................16, 24, 25, 26

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043 (5th Cir. 1993).......................................................27

*Rodriguez v. Eli Lilly and Co.*, 820 F.3d 759 (5th Cir. 2016) ...............................22

*Rutherford v. Harris Cnty.*, 197 F.3d 173 (5th Cir. 1999)..............................18, 32

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)...........................................30

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002) .................18, 20

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).........................30, 31

*Thompson v. Dallas City Atty's Off.*, 913 F.3d 464 (5th Cir. 2019)....................24

*Thornbrough v. Columbus & Greenville Ry. Co.*, 760 F.2d 635 (5th Cir. 1985)................................................................................................30

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) ...............................27

*Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887 (5th Cir. 2012) .........................30

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)..............16, 17, 22, 25

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001) ....................19, 30

**Statutes**

42 U.S.C. §§ 2000e *et seq.* ....................................................................................1

42 U.S.C. § 2000e-2(a)(1) ....................................................................................16

42 U.S.C. § 2000e-2(m)...............................................................................16, 17, 21

42 U.S.C. § 2000e-5(g)(2) .........................................................................17, 22, 23

## Other Authorities

Fifth Cir. Pattern Jury Instructions (Civil Cases) § 11 (2020)..........................23

## Statement of Interest

Congress charged the Equal Employment Opportunity Commission (EEOC or Commission) with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. In this case, the district court correctly held that discriminatory comments the plaintiff's supervisor made before firing him were direct evidence of discrimination. But the court nevertheless granted summary judgment to the defendants, ruling that they would have fired the plaintiff regardless due to performance problems. This ruling cannot be reconciled with the statute, as amended by the Civil Rights Act of 1991. With the amendments, an employer that demonstrates it would have made the same decision absent the unlawful motive has a defense to various remedies, but not to liability.

In addition, the district court applied the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), proof scheme designed to reveal discriminatory animus in cases involving circumstantial evidence, despite ruling that the plaintiff had offered direct evidence of discrimination. And, in applying *McDonnell Douglas*, the court required the plaintiff to offer comparator

evidence as part of his prima facie case, even though such evidence is not mandatory. Because the EEOC has an enforcement interest in these questions, we offer our views to the Court. Fed. R. App. P. 29(a).

## Statement of the Issues[1]

1. Did the district court correctly rule that the non-Hispanic, male plaintiff adduced direct evidence of race, national origin, and sex discrimination by submitting testimony that his supervisor threatened to replace him and his staff with Hispanic workers, stated that women make better general managers, and told him he "should not be here" shortly before she fired him?

2. Did the district court err in granting summary judgment to the defendants even though evidence they would have fired the plaintiff anyway can only be a defense to certain remedies, not to liability?

3. Did the district court err in applying the burden-shifting *McDonnell Douglas* proof scheme to the evidence in this case after holding that the plaintiff offered direct evidence of discrimination?

---

[1] The Commission takes no position on any other issue in this appeal.

4. Did the district court err in requiring comparator evidence to satisfy a prima facie case of discrimination under *McDonnell Douglas*?

## Statement of the Case

### A.   Statement of the Facts

Defendant Yogesh "Chris" Patel is a majority owner of Pinnacle Lodging, LLC, the corporate entity that owns the Hampton Inn in Covington, Louisiana where plaintiff Shane Wilkinson worked. ROA.886. Patel also owns MY Hospitality Services, LLC (MHS), the company that manages Patel's nineteen hotels, including the Hampton Inn. *Id.* Patel purchased the twenty-year-old Hampton Inn in 2015. ROA.894. He testified that the property was significantly older than his other hotels and required a costly, lengthy renovation. ROA.895, 897. The hotel suffered a host of problems, including lack of air circulation, plumbing issues, and persistent mold infestations. ROA.847-48; ROA.894-895; ROA.277; ROA.292; ROA.938-39; ROA.1056; ROA.589.

Wilkinson started out as front desk clerk in November 2017, was promoted to assistant general manager in May 2018, and became general manager in July 2018. ROA.1055-56. Wilkinson's supervisor was initially

Russell Block, MHS's director of operations. ROA.513. Wilkinson received several raises culminating in a salary jump from $37,000 to $50,000 per year in November 2018 due to his successful job performance. ROA.1031-1033; ROA.512-513; ROA.348.

As general manager, Wilkinson worked fifty to sixty hours per week and supervised a staff of fourteen to sixteen, including head of housekeeping Chasity Anthony. ROA.515, 531. Wilkinson's duties included handling "complaints, hiring, firing, payroll . . . everyday operations of a hotel." ROA.513. He often staffed the front desk to address problems with guests checking in or out. ROA.515. He assisted in inspecting rooms and trained associates on working the front desk. ROA.516. Wilkinson also helped with the hotel renovation by obtaining bids on work for Patel and Block to approve and then overseeing the work. ROA.278; ROA.515, 518.

Anthony stated that Wilkinson was a "very good" general manager (ROA.846), and maintenance worker Demille Topps testified that Wilkinson "did a great job with what he had to work with." ROA.841. Wilkinson reduced the number of out-of-order rooms from 37 to 23 in the

summer of 2019. ROA.478. Although the defendants had a progressive

discipline policy requiring two written warnings prior to termination

(ROA.779-80), Wilkinson never received any written warnings, counseling,

or discipline. ROA.1056; ROA.360; ROA.409; ROA.782-83; ROA.954-56.

Block never related any concern about Wilkinson's work performance until

the day he fired him. ROA.1056. Wilkinson did not receive a performance

evaluation at any time, and his personnel file contains no documented

performance issues. ROA.239; ROA.777, 780-781; ROA.330-331; ROA.409.

Laura Rosa began supervising Wilkinson in July or August 2019

when MHS promoted her to be the company's regional manager; Block

supervised Rosa. ROA.1056; ROA.325-326. Rosa testified that she knew

Wilkinson needed to be replaced from their first meeting. ROA.459.

Wilkinson, who is white and non-Hispanic, testified that when he initially

met with Rosa, she told him that she "wanted me to get rid of everybody

that was non-Hispanic, because we could hire Hispanics to work cheaper

and faster." ROA.1035; ROA.521, 523. He recounted that Rosa also made

clear to him that he "was a non-Hispanic she wanted to get rid of."

ROA.523. Additionally, at a subsequent meeting, Rosa told Wilkinson that "male GMs don't make good general managers, and as far as she [was] concerned, [Wilkinson] shouldn't be here." ROA.513.

Other hotel employees corroborated Wilkinson's testimony about Rosa's comments and prejudices. Head of maintenance Paul Lanclos, who is Hispanic, stated that Rosa told him she thought "Hispanic workers are better workers" and get "more accomplished'" than non-Hispanics and were "model employees" that "she preferred to anyone else." ROA.1059. Rosa told Lanclos, in front of Wilkinson, that Wilkinson was a "pioneer" as a general manager because the job was "female oriented" and "females are more capable" than men. ROA.1060. Anthony confirmed Rosa made "many inappropriate comments," including that "women did hotel work better and could focus better than men." ROA.846. According to Anthony, Rosa told Wilkinson that the hotel "should have a woman as a general manager because women made better managers." *Id.*

Additionally, Wilkinson's wife, Kristen, testified that Rosa told Wilkinson that they "needed to get rid of all the housekeeping workers,

6

and hire . . . Mexicans . . . because they are cheaper, and work faster, and harder. And then also that a man wasn't made to be in the position that he was in, that a woman needed to do it." ROA.600. According to Kristen, Rosa made such observations "at least every other day, if not every day." ROA.607; *see also id.* ("It was often."). Wilkinson would call her and say, "I can't believe she said this" and come home "upset and frustrated" because of Rosa's remarks. ROA.601-02, 607.

Rosa and Block fired Wilkinson on December 19, 2019, ostensibly for poor performance. ROA.376; ROA.795. The termination letter, written by Rosa and Block, provides four reasons: Wilkinson purportedly (1) failed to contribute to rate management based on area demand and area pricing, resulting in lower profits and loss of business; (2) failed to complete some of the tasks required prior to Hilton's corporate inspection in November 2019, which caused the hotel to fail the inspection; (3) threatened to quit twice; and (4) lacked "overall hotel (Hilton) knowledge." ROA.376. Wilkinson testified that he refused to sign the termination letter because it was inaccurate. ROA.521; ROA.379. After Wilkinson filed suit, the

decisionmakers reiterated some of the reasons identified in the letter and included additional reasons. Block's responses to interrogatories stated that Wilkinson was fired because of the failed inspection, because he "stated that he quit his position," failed "to renovate rooms and remediate the mold in several of the hotel rooms and conference rooms," and had a high number of absences. ROA.827. Rosa's response to interrogatories restates Block's list verbatim except for Wilkinson's failure "to remediate the mold," then adds that Wilkinson "did not show the type of leadership expected of a General Manager and was not proactive" and "did not act to boost the morale of Hampton Inn employees." ROA.986.

For his part, Wilkinson offered evidence to counter each reason provided for his termination and pointed out inconsistences and shifts in the defendants' justifications. While Block testified "the top" reason was Wilkinson's non-involvement in "rate management," (ROA.772), Wilkinson offered evidence that determining the appropriate price for the rooms was not part of his job and was instead Block's responsibility. ROA.1040; ROA.366. Although Block testified that it was Wilkinson's fault

that the hotel failed its inspection, Rosa claimed that the failed inspection

had nothing to do with Wilkinson's termination. ROA.973. Both Rosa and

Block conceded that the Hampton Inn failed inspection under other general

managers predating and postdating Wilkinson but were not fired.

ROA.969-973; ROA.790-91; *see also* ROA.1014-15. Rosa acknowledged that

the hotel would have failed inspection regardless due to problems outside

Wilkinson's purview. ROA.976; *see also* ROA.867-69; ROA.991. The

Hampton Inn has yet to pass the inspection. ROA.972-73; ROA.362.

Additionally, while the termination letter and answers to

interrogatories assert that Wilkinson's threats to quit influenced the

termination decision, Block testified in his deposition that Wilkinson's

reported threat to quit was *not* a reason for Wilkinson's termination.

ROA.815; *but see* ROA.366 ("it probably was considered as part of the

decision" to fire him). And while Block's answers to interrogatories assert

Wilkinson had "an unusually high number of absences," (ROA.827), Block

said at his deposition that Wilkinson's absences were not "necessarily" a

reason he terminated him. ROA.772, 804-805.

Defendants by turns blamed and exonerated Wilkinson for the hotel's

mold problem during discovery. Block's responses to interrogatories state

that Wilkinson was terminated because he "failed to renovate rooms and

remediate the mold in several of the hotel rooms and conference rooms."

ROA.827. At his deposition, Block criticized Wilkinson for not cleaning the

mold-infested rooms with water and bleach. ROA.789. Yet, Patel and Rosa

both stated in depositions that the out-of-order rooms due to mold were

*not* Wilkinson's fault. ROA.478; ROA.898. Block testified that Wilkinson

"wasn't terminated because of the mold." ROA.817; *see also* ROA.342 ("It

had nothing to do with his being terminated."). And Defendants hired an

outside mold remediation company after Wilkinson's termination

(ROA.277;  ROA.1010)—after Wilkinson and his staff attempted

unsuccessfully to clean the mold off walls with bleach and paint over it,

with no protective equipment (ROA.1053-54), per Block's and Rosa's

directives. ROA.1056; ROA.847-848; ROA.981- 984. During her deposition,

Rosa refused to admit that there was any mold in the hotel despite a paper

trail documenting the problem and her awareness of it (ROA.981-84;

ROA.708; ROA.336; ROA.461; ROA.858), insisting "I can't say it's actual mold" and "I'm not an expert." ROA.945. She admitted she told Wilkinson to use codes words like "M&M" instead of "mildew and mold" so as not to alarm hotel guests. ROA. 943-44.

Block, Rosa, and Patel offered additional generalized justifications for Wilkinson's termination during their depositions. Block testified that Wilkinson was "incapable of or refused to do" "any" job responsibility of a general manager. ROA.772. When asked to clarify if Wilkinson had failed to meet any specific benchmarks, Block replied, "[t]here [are] probably several. I don't recall exactly what they were right now." ROA.328. Block testified that Wilkinson "fail[ed] to do his responsibilities," "did not develop into the GM that we needed," "the hotel was not doing well," that he exhibited a "lack of leadership," and that he was lacking on "administrative duties." ROA.773-76. Similarly, Rosa testified without elaboration that Wilkinson "lacked the overall knowledge of the hotel brand," reiterating but not explaining one of the bases listed in the termination letter. ROA.974. Much of their testimony was internally

inconsistent and/or contradicted each other. For example, Rosa testified that Wilkinson "wasn't able to delegate simple tasks to his employees." ROA.974. Block, in contrast, complained that Wilkinson "delegated his responsibilities to all his employees" and "had them do his work." ROA.326, 329. And Patel testified that Wilkinson was fired for "lack of control," "lack of ability," and "just overall lack of performance." ROA.899. The only specific Patel offered was that Wilkinson "wanted a lot of time off," (ROA.899) although Patel conceded that the termination letter did not mention Wilkinson's absences. ROA.283.

### B. District Court's Decision

The district court granted summary judgment for the defendants. The court held that Rosa's remarks that she was going to replace Wilkinson with Hispanics because they were cheaper and faster four months before she fired him were "likely [] direct evidence of race-based or national-origin-based discrimination" because they "tend[] to show that Wilkinson's being white or American . . . was *a* basis in the decision to terminate him." ROA.1101. The court also held that Rosa's comment that men should not be

general managers and he "shouldn't be here" was also likely[2] direct

evidence because it was related to his protected characteristic (his gender),

proximate in time to his termination, made by the decision-maker, and

related to the termination. *Id.*

However, rather than denying the defendants' motion as to these

claims, the district court stated that the burden shifts to the defendants "to

establish by a preponderance of the evidence that the same decision would

have been made regardless of the forbidden factor." ROA.1102. The court

held that the "uncontroverted testimony of Wilkinson's supervisors and his

termination letter establish that Wilkinson would have been terminated

regardless of his protected characteristics," accepting as true what it

deemed the "consistent and sufficiently supported nondiscriminatory"

reasons the defendants provided for terminating Wilkinson. *Id.* The court

concluded that the termination letter "also establishes" that he would have

---

[2] The Commission understands the district court's use of the word "likely"
to signify that the comments are direct evidence of discrimination if the
jury believes Rosa made them—an allegation Rosa denies. ROA.484-85,
492.

been terminated regardless of his gender, race, or national origin because the letter lists four "nondiscriminatory" reasons for the decision. ROA.1103-04. The court faulted Wilkinson for disputing "a select few" of the reasons, which the court held "cannot overcome Defendants' showing that Wilkinson would have been terminated regardless of his race, national origin, or gender." ROA.1104.

Next, although it had determined Rosa's comments were direct evidence, the court held that Wilkinson could not establish a prima facie case or pretext under the *McDonnell Douglas* proof scheme, which the court said applied "[w]hen a plaintiff's Title VII discrimination claim relies entirely on circumstantial evidence." ROA.1105. The defendants contested only the fourth element of the prima facie case, which the court described as "whether Wilkinson was treated less favorably than a similarly situated employee outside of his protected class." ROA.1106. The court ruled that Wilkinson could not make that showing because he had not identified "a single appropriate comparator" treated better "under nearly identical circumstances," given that the record contains insufficient details about

any comparator's violation history, supervisor, or treatment. ROA.1106-1108. The court did not mention Rosa's discriminatory comments or appear to factor them into its analysis.

Regarding pretext, the district court relied on the same reasoning it did in its direct evidence analysis, holding that Wilkinson failed to raise a genuine issue of fact either as to whether he was subjected to disparate treatment or whether the proffered explanation for his termination "'is false or unworthy of credence.'" ROA.1109, 1111-12. In the court's view, Wilkinson did not supply "countervailing evidence" to refute each of the reasons for his termination and only argued the reasons were not "consistent or credible." ROA.1112-13. The court reiterated that "the record conclusively reveals" that the defendants would have fired Wilkinson regardless of his protected characteristics." ROA.1113.

## Argument

### A reasonable jury could find that the defendants fired Wilkinson because of his race, national origin, and/or gender.

Title VII prohibits an employer from discharging an individual "because of such the individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1). Congress amended Title VII in the Civil Rights Act of 1991 to provide that an individual may prevail by showing that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m). This provision, the Supreme Court has observed, is "a lessened causation standard." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013).

Congress made a second important change to the statute in the 1991 Act. Prior to that Act, if an employee proved that a prohibited trait was a motivating or substantial factor in the challenged decision, an employer could defeat liability altogether by showing that it would have made the same decision absent the discriminatory motive. *See Nassar*, 570 U.S. at 348 (discussing plurality and concurring opinions in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)). The 1991 Act made this "same decision" showing a defense to certain remedies, but not a defense to liability. *Id.* at 349.

16

Thus, under Title VII, if a plaintiff proves a violation under § 2000e-2(m), and the employer demonstrates that it "would have taken the same action in the absence of the impermissible motivating factor," liability still attaches to the employer, but the court may only award limited relief to the plaintiff. *See id.* § 2000e-5(g)(2)(B); *see also Nassar*, 570 U.S. at 349; *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94-95 (2003) (discussing statutory changes).

Here, the district court held that Wilkinson had supplied "direct evidence of race-based or national-origin-based discrimination" in the decision to fire him, but it nonetheless granted summary judgment for the defendants. The district court was correct to conclude that Wilkinson provided direct evidence of discrimination. But, in light of the amended statute, that conclusion should have ended the liability analysis on summary judgment. That it did not reflects a tension in this Court's case law; some post-1991 Act decisions incorporate the statutory changes into their summary judgment analysis, but some do not. This Court should clarify the correct standard in this case.

17

Moreover, the *McDonnell Douglas* burden-shifting analysis should not play a role in a direct evidence case at all. And, even under that framework, comparator evidence is not necessary to establish a prima facie case.

### A.  The district court correctly held that Wilkinson produced direct evidence of race, national origin, and gender discrimination.

Direct evidence "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Although direct evidence is "rare in discrimination cases," *Rutherford v. Harris Cnty.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999), the district court correctly determined that Wilkinson offered direct evidence of race, national origin, and gender discrimination in the decision to fire him.

This Court applies a rigorous test to discriminatory comments offered as direct evidence because "the comments are being relied on to prove the entire case of discrimination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). This test considers four factors: whether the comments are (1) related to the plaintiff's protected characteristic; (2)

18

proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)). "In applying this test, our ultimate focus is on whether the comments prove, 'without inference or presumption, that [the protected trait] was *a* basis in employment decisions' in the plaintiff's workplace." *Etienne*, 778 F.3d at 476 (cleaned up). Additionally, "when the proximity in time of the comments to the challenged employment decision is unclear, we have found the proximity-in-time factor to be satisfied when the comments were 'routine.'" *Id.*

The district court was correct that, if believed, the evidence here is direct. Wilkinson's immediate supervisor, Laura Rosa, told him repeatedly that she wanted to replace him and his staff at the hotel with Hispanics because they work "cheaper and faster." ROA.1035; ROA.521, 523. She also told him "often" that women make better general managers than men, the

19

job was "female oriented," "females are more capable" than men, and that as far as she was concerned, Wilkinson "shouldn't be here." ROA.513; ROA.846; ROA.1060; ROA.607. As the district court explained, these statements satisfy all four prongs of the test. ROA.1101. These comments were all made by a decisionmaker close to the date of Wilkinson's termination and expressly reveal discriminatory animus against non-Hispanics and men, like Wilkinson, and the desire to remove him from his position. A factfinder would need no inference or presumption to find "the fact of discriminatory animus" here. *See Sandstad*, 309 F.3d at 897.

This Court recently reached the same conclusion about comments made in a factually similar case in *EEOC v. Ryan's Pointe Houston, L.L.C.*, No. 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022). This Court held that comments by an apartment complex's owners evincing a preference for a "white" staff and dismay that the charging party and staff managing the building were "Mexican" were direct evidence of race and national origin discrimination in the decision to terminate the Hispanic charging party from her position as property manager. *Id.* at *4. As in *Ryan's Pointe,*

Rosa's statements show that a protected trait was "a factor in employment decisions, which is by definition direct evidence of discrimination." *Id.* at *5 (cleaned up).

### B.    Because Wilkinson offered direct evidence, his discrimination claims should have survived summary judgment without further inquiry.

Because Rosa's comments met this Court's demanding test for direct evidence of discrimination, Wilkinson's discrimination claims should have withstood summary judgment and been decided by a jury. *See* 42 U.S.C. § 2000e-2(m) (plaintiff may prevail by showing protected trait was "a motivating factor" in the decision); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) ("A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden.") (ADEA case); *see also Johnson v. Maestri Murrell Prop. Mgmt.*, 555 F. App'x 309, 312 (5th Cir. 2014) (comments that decisionmaker would not consider hiring an African American was direct evidence and "provide[d], at a minimum, evidence sufficient to defeat summary judgment") (citation omitted)); *Rodriguez v. Eli*

*Lilly and Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (four-part test applied to determine if remarks offered as direct evidence "are sufficient to overcome summary judgment") (ADA case); c*f. Oldenburg v. Univ. of Tex. at Austin*, 860 F. App'x 922, 925 (5th Cir. 2021) (noting the demanding four-part test used when discriminatory remarks are offered as direct evidence, i.e. when remarks alone are being used to try to satisfy the plaintiff's summary judgment showing).

To be sure, the defendants presented evidence that they would have made the same decision absent discriminatory animus. If a factfinder finds the direct evidence of discrimination credible but agrees that the employer would have made the same decision regardless, then Wilkinson may be able to obtain declaratory relief, attorney's fees and costs, and some forms of injunctive relief, but he could not obtain "monetary damages and a reinstatement order." *Nassar*, 570 U.S. at 349 (citing 42 U.S.C. § 2000e-5(g)(2)). But those issues—whether Wilkinson's direct evidence of discrimination is credible and whether the defendants' explanations for Wilkinson's firing are sincere—are issues for the factfinder. *Anderson v.*

22

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . ."); *see also* Fifth Cir. Pattern Jury Instructions (Civil Cases) § 11 at 129-31, 134-35 (explaining how to instruct a jury in mixed motive cases). After the changes the 1991 Act made to Title VII, the same-decision evidence does not allow summary judgment for the employer on liability.[3]

---

[3] A district court could grant cross-motions for summary judgment if all the evidence in a case were undisputed. That is, if any reasonable jury would have to conclude that the employer discriminated but that it would have made the same decision absent the discriminatory motive, then the district court could rule for the plaintiff but award only the remedies set out in 42 U.S.C. § 2000e-5(g)(2). Here, though, the defendants have disputed the direct evidence, and Wilkinson has countered their explanations by pointing to the absence of any record of discipline the entire time he served as general manager; to the conflicting and shifting reasons for the decision over time; and to the contradictions in different witnesses' explanations. *See supra* at 8-12; *see generally Laxton v. Gap, Inc.*, 333 F.3d 572, 580-81 (5th Cir. 2003) (noting the employer's failure to document employee complaints and discuss workplace problems with the manager and affirming jury's finding of discrimination); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 347 (5th Cir. 2019) ("[I]t is well-accepted in employment law ... that inconsistent explanations and changing requirements undermine a party's credibility.").

The district court held otherwise because it relied on this Court's decisions that invoked the pre-1991 Act, *Price Waterhouse* scheme. ROA.1099-1100 (*citing Etienne*, 778 F.3d at 475 and *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417-18 (5th Cir. 2003))). Under that framework, an employer could obtain summary judgment by showing that any reasonable jury would conclude the employer met the "same decision" defense. *See Etienne*, 778 F.3d at 477. The district court should not have relied on these portions of *Etienne* for several reasons. First, the language in *Etienne* was *dicta* because, given the panel's holding that the employer did not meet its "same decision" burden, *id.*, it did not affect the outcome of the appeal. That is, the Court of Appeals reversed applying *Price Waterhouse*, but it would have reversed anyway had it applied the governing statutory standard set out in the 1991 Act.

Second, *Etienne* did *not* apply the governing statutory standard. The decision therefore does not preclude a subsequent panel from applying Title VII, as amended by the 1991 Act. *Cf. Thompson v. Dallas City Atty's Off.*, 913 F.3d 464, 467-68 (5th Cir. 2019) (panel not bound by earlier panel's

decision that "couldn't be squared with prior Supreme Court precedent");
*id*. at 468 (earlier panel decision that did not address the Supreme Court
precedent was "inoperative … since it was decided"). As explained above,
in overlooking the 1991 Act, *Etienne* overlooked a significant change in the
law. *See generally Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739-40 (2020)
(explaining new, "more forgiving" causation standard Congress adopted in
the 1991 Act); *Desert Palace*, 539 U.S. at 101 (discussing change to law).

The language in *Etienne* is not persuasive for an additional reason:
the authority on which it relied were not post-1991 Act discrimination
cases. *Etienne* (and the district court here) cited *Brown v. East Mississippi
Electric Power Association*, 989 F.2d 858, 861 & n.4 (5th Cir. 1993), which in
turn cited *Price Waterhouse*; *see also Fabela*, 329 F.3d at 417-18 (citing *Brown*,
989 F.2d at 861).[4]  But the employment action at issue in *Brown* occurred
prior to the 1991 Act, 989 F.2d at 860, and so the amended statute did not

---

[4] *Fabela* is also inapplicable because it is a Title VII retaliation case, to which
the 1991 Act's motivating factor provision does not apply. 329 F.3d at 411;
*Nassar*, 570 U.S. at 360.

apply. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 247 (1994) (1991 Act
does not apply retroactively).

Finally, some of this Court's cases have cited to *Etienne* while, like
*Etienne,* not accounting for the change in the governing statutory text. That
said, the Commission is unaware of any case in which this oversight
affected the outcome of the case (as it did in the district court decision
here). *See, e.g., Jones v. Robinson Prop. Grp.,* 427 F.3d 987, 992-94 (5th Cir.
2005) (citing to *Brown* and *Price Waterhouse* to explain burden shifting but
reversing summary judgment for employer after ruling plaintiff had
demonstrated direct evidence of discrimination); *Ryan's Pointe,* 2022 WL
4494148, at *4 & nn. 18-19 (citing *Etienne* but reversing summary judgment
for employer after ruling plaintiff had demonstrated direct evidence of
discrimination and employer had not met its same decision burden). Given
the imprecision in these cases, this Court should take this opportunity to
clarify that once a plaintiff adduces evidence that meets this Court's high

direct evidence standard, he has produced enough evidence to withstand

summary judgment, and no further liability analysis is needed.[5]

### C.     *McDonnell Douglas*'s burden-shifting proof scheme does not apply here.

Because Wilkinson offered direct evidence of discrimination, there

was no need for the district court to analyze this case under *McDonnell*

*Douglas*. *McDonnell Douglas* is a proof scheme reserved for cases where a

plaintiff presents indirect, circumstantial evidence of a discriminatory

motive for the challenged decision. "[T]he *McDonnell Douglas* test is

inapplicable where the plaintiff presents direct evidence of discrimination."

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Herster v. Bd.*

*of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (same,

---

[5] The caselaw is sufficiently confusing that the Appellant's brief repeats
*Etienne*'s problematic language. *See* Original Brief of Appellant at 14, 39-40.
Although amicus curiae "generally cannot expand the scope of an appeal
to implicate issues that have not been presented by the parties," *Resident
Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d
1043, 1049 (5th Cir. 1993), "[a]bsent exceptional circumstances," *Christopher
M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991), the
proper analysis of direct evidence on summary judgment is an issue
already fairly within the scope of this appeal.

quoting *Portis v. First Nat. Bank of New Albany*, 34 F.3d 325, 328 (5th Cir.

1994)); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) ("If

there is direct evidence that an employer placed substantial negative

reliance on an illegitimate criterion in reaching an employment decision,

however, resort to *inferential* methods of proof is unnecessary."). Without

acknowledging that it had just ruled that Wilkinson offered direct evidence

of discrimination, the district court stated that when a Title VII

discrimination claim relies "entirely" on circumstantial evidence, it applies

*McDonnell Douglas*. This analysis was, therefore, inapposite.

## D. Title VII does not require comparator evidence to establish a prima facie case of race, national origin, and gender discrimination.

Assuming arguendo that Wilkinson's evidence did not meet this

Court's exacting direct evidence standard and thus should be analyzed

under a circumstantial evidence framework, he did not need comparator

evidence to prove a prima facie case. In applying *McDonnell Douglas*, the

district court held that Wilkinson had to provide evidence of a comparator

outside his protected group(s) treated more favorably under nearly

identical circumstances. But the statute says nothing at all about what type of evidence is required to make that showing, much less anything about requiring comparator evidence. *Cf. Desert Palace*, 539 U.S. at 99-100 ("the '[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases'" requires proof "'by preponderance of the evidence'" but not in any particular form) (quoting *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)). Nor did *McDonnell Douglas* itself require comparators in its statement of the prima facie case. *McDonnell Douglas*, 411 U.S. at 802.

Since *McDonnell Douglas*, the Supreme Court has held that the prima facie case must be adapted to the particular circumstances of the case. *Id.* at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required … is not necessarily applicable in every respect to differing factual situations."); *see also, e.g., Furnco Constr. Corp. v. Water*s, 438 U.S. 567, 577 (1978) ("The method suggested in *McDonnell Douglas* … was never intended to be rigid, mechanized, or ritualistic."); *Int'l Bhd. of Teamsters v. United State*s, 431 U.S. 324, 358 (1977) (no "inflexible formulation" of prima facie case). In any

formulation of the prima facie case, the central inquiry is whether the evidence presented is sufficient to create an inference (i.e., a rebuttable presumption) that the decision was based on unlawful grounds.

As the Supreme Court and this Court have recognized repeatedly, the prima facie case, by design, presents a minimal burden for a plaintiff to meet. A plaintiff's prima facie burden is "not onerous." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (burden is minimal); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (only a minimal showing is necessary); *Thornbrough v. Columbus & Greenville Ry. Co.*, 760 F.2d 635, 639 (5th Cir. 1985) ("Generally, to establish a prima facie case, a plaintiff need only make a very minimal showing."), *abrogated on other grounds* by *Hicks*, 509 U.S. at 513. Establishing a prima facie case raises a presumption of discrimination, *Wallace*, 271 F.3d at 219, and only shifts the burden of production, not proof, to the defendant to articulate a legitimate, non-discriminatory explanation for the adverse employment action. Finally, the burden returns

to the plaintiff to prove that the employer's stated reason is a pretext for discrimination. *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019). Thus the burden of proof remains with the plaintiff.

Consequently, a plaintiff may make out the fourth prong of the prima facie case by showing that he belongs to a protected class, was qualified for his job, and was subjected to an adverse employment decision "*under circumstances which give rise to an inference of unlawful discrimination*." *Burdine*, 450 U.S. at 253 (emphasis added). This Court has sometimes described the fourth prong more narrowly as a showing that the plaintiff "was replaced by someone outside of [his] protected class or treated less favorably than other similarly-situated employees who were not in [his] protected class." *Harville*, 945 F.3d at 875. But it has, at other times, articulated a broader formulation for the fourth element, where the plaintiff can show that he "was either replaced by someone outside [his] protected class, was treated less favorably than other similarly situated employees who were not members of [his] protected class, or was otherwise discharged because of [his] [protected category]." *Nguyen v.*

*Univ. of Texas Sch. of L.*, 542 F. App'x 320, 323 (5th Cir. 2013); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (articulating fourth element of prima facie case re: failure-to-promote claim as whether "the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race."); *Pratt v. City of Houston*, 247 F.3d 601, 606 n.2 (5th Cir. 2001) (describing fourth element as "either the position was filled by someone not in the protected class, or the person was not promoted because of his race"); *Rutherford*, 197 F.3d at 179 (characterizing fourth element as "either the position [plaintiff] sought was filled by someone outside the protected class or [he] was otherwise not promoted because of [his] sex"). The broader formulation is consistent with the Supreme Court's and this Court's direction that the prima facie case be flexible, not onerous, and adaptable to a particular case, and leave open the consideration of other

evidence besides comparators in determining if there was an inference of discrimination.[6]

Here, Rosa's discriminatory statements, even assuming arguendo that they somehow fall short of the standard for direct evidence, are strong circumstantial evidence that Wilkinson was "otherwise discharged" because of his race, national origin, and/or sex. *See Nguyen*, 542 F. App'x at 323; *Goudeau*, 793 F.3d at 475-76. The district court, in narrowly applying the prima facie case, improperly excised these comments from the analysis.

## Conclusion

For the foregoing reasons, the judgment of the district court should be vacated and the case remanded for further proceedings.

---

[6] The Commission made this argument as amicus in *Lockhart v. Republic Services*, No. 20-50474, 2021 WL 4955241, at *3 (Oct. 25, 2021), but this Court declined to rule on this issue, instead resolving the case on "simpler grounds." *Id.* This Court pointed out that "a handful of cases employ a broader formulation" of the prima facie case and noted the "apparent confusion," *id.*, as well as that "'[t]he *McDonnell Douglas* rule was intended to be a flexible one.'" *Id.* (citation omitted). The court added that, "clarification of the proper legal standard for such claims might be necessary in short order." *Id.*

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

s/*Julie L. Gantz*
JULIE L. GANTZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6,104 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Palatino Linotype 14 point.

s/*Julie L. Gantz*
Julie L. Gantz
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

Dated: November 16, 2022