NO. 22-30556

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

SHANE M. WILKINSON,
PLAINTIFF-APPELLANT

v.

PINNACLE LODGING, L.L.C.; MY HOSPITALITY SERVICES, L.L.C.;
LAURA ROSA; RUSSELL BLOCK; YOGESH PATEL,
DEFENDANTS-APPELLEES
_____

On Appeal From
The United States District Court for the Eastern District of Louisiana,
(USDC NO. 2:20-CV-3427)

---

ORIGINAL BRIEF OF APPELLEES,
PINNACLE LODGING, L.L.C.; MY HOSPITALITY SERVICES, L.L.C.;
LAURA ROSA; RUSSELL BLOCK; YOGESH "CHRIS" PATEL

---

SIDNEY W. DEGAN (#4804)
RENÉE F. SMITH AULD (#23568)
TRAVIS L. BOURGEOIS (#22964)
**DEGAN, BLANCHARD & NASH**
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone:  (504) 529-3333
Facsimile:  (504) 529-3337
E-mail:     sdegan@degan.com
            rsmithauld@degan.com
            tbourgeois@degan.com

*Attorneys for Defendants/Appellees, Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh Patel, Laura Rosa, and Russell Block*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellants: |
|---|---|
| Shane Wilkinson | Kevin S. Vogeltanz<br>The Law Office of Kevin S. Vogeltanz, LLC<br>823 Carroll Street, Suite A<br>Mandeville, LA 70448 |

| Appellees: | Counsel for Appellees: |
|---|---|
| Pinnacle Lodging, LLC.,<br>My Hospitality Services, LLC,<br>Yogesh Patel,<br>Laura Rosa, and<br>Russell Block | Sidney W. Degan<br>Renée F. Smith Auld<br>Travis Louis Bourgeois<br>Degan, Blanchard & Nash<br>400 Poydras Street, Suite 2600<br>New Orleans, LA 70130 |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Equal Employment Opportunity Commission | Julie L. Gantz, Attorney<br>Gwendolyn Young Reams, Acting General Counsel<br>Jennifer S. Goldstein, Associate General Counsel<br>Dara S. Smith, Assistant General Counsel<br>Equal Employment Opportunity Commission<br>Office of General Counsel<br>131 M St., N.E., 5th Floor<br>Washington, D.C. 20507 |

s/ RENÉE F. SMITH AULD

*Attorneys for Defendants/Appellees, Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees take the position that Oral Argument is not warranted in this case. The matter was considered upon motions for summary judgment, and exhaustive written reasons for judgment were provided in a forty-six page record document. ROA.1089 – 1135. This appeal can be considered on the record. However, if the Court wishes to grant oral argument, the Appellee will participate.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS...................................................................................iv

TABLE OF AUTHORITIES ................................................................. viii

BRIEF ON BEHALF OF APPELLEES, PINNACLE LODGING, LLC., MY HOSPITALITY SERVICES, LLC, YOGESH "CHRIS" PATEL, LAURA ROSA, AND RUSSELL BLOCK ............................................................1

I.    STATEMENT OF THE CASE ...................................................1

II.   SUMMARY OF THE ARGUMENTS..........................................6

      A.    PINNACLE'S SUMMARY OF ITS ARGUMENTS IN RESPONSE TO THE APPELLANT'S BRIEF ........................................6

      B.    PINNACLE'S SUMMARY OF ITS ARGUMENTS IN RESPONSE TO THE EEOC'S BRIEF................................................8

III.  ARGUMENT.............................................................................10

      A.    THE *DE NOVO* STANDARD OF REVIEW APPLIES ....................10

      B.    SUMMARY JUDGMENT STANDARDS........................................10

      C.    THE DISTRICT COURT CORRECTLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ..............12

            1.    THE DISTRICT COURT'S FINDINGS MUST BE AFFIRMED BECAUSE WILKINSON WAS REPLACED BY ANOTHER CAUCASIAN, AMERICAN, MALE...........12

                  a.    Wilkinson was not discriminated or retaliated against upon the basis of his race, national origin, or sex ..........12

2.    WILKINSON IS INCORRECT THAT THERE IS
      EVIDENCE OF PRETEXT ......................................................15

      a.    Even when the district court used the term "likely", it
            did not find that Wilkinson showed direct evidence of
            discrimination ...............................................................15

      b.    Pinnacle's explanation for termination does not create
            grounds for establishing pretext ....................................16

            i.    The evidence that Wilkinson has presented does
                  not constitute direct evidence of discrimination
                  under the law ........................................................16

                  (a)  Wilkinson's charges of race and national
                       origin discrimination ....................................16

                  (b)  Wilkinson's charges of sex discrimination ..20

            ii.   Pinnacle produced evidence showing the "same
                  decision" would have been made ........................24

3.    ROSA'S COMMENTS WERE "STRAY REMARKS," NOT
      DIRECT EVIDENCE OF DISCRIMINATION .....................29

      a.    Rosa's comments pertaining to race and national origin
            are stray remarks............................................................31

      b.    Rosa's alleged comments regarding discrimination
            based upon sex are also stray remarks............................33

4.    THERE IS NO EVIDENCE OF PRETEXT IN
      APPELLANT'S RETALIATION CLAIM .............................38

      a.    Wilkinson cannot establish a genuine issue of fact
            regarding pretext ............................................................41

      b.    Rosa's alleged threat is not substantive or pervasive........46

c.  Wilkinson has not met his burden to show that Pinnacle reasons for terminating Wilkinson constitute pretext .......46

d.  Wilkinson's cases are inapplicable and can be distinguished.....................................................................48

e.  Pinnacle has offered testimony from objective sources....50

5.  THE TRIAL COURT DID NOT ERR IN FINDING THAT THE APPELLANT'S LEWA AND LWA CLAIMS FAIL BECAUSE THERE IS NO GENUINE ISSUE OF FACT REGARDING PRETEXT ......................................................51

a.  There is no clear evidence of state law whistleblower retaliation, despite Wilkinson's allegations...................51

b.  The trial court correctly found that Wilkinson cannot maintain his action for unlawful disparate treatment based on retaliation in violation of the Louisiana environmental whistleblower statute, La. R.S. 30:2027 ..........................................................53

c.  The trial court correctly found that Wilkinson cannot maintain whistleblower claims under La. R.S. §23:967 ...........................................................55

d.  Wilkinson could have used his company credit card to purchase protective equipment for his staff...................59

6.  WILKINSON'S HOSTILE WORK ENVIRONMENT ARGUMENTS FAIL...............................................59

APPELLEES' RESPONSE TO THE EEOC'S BRIEF ..........................................65

    A.    THE DECISION OF THE DISTRICT COURT SHOULD BE AFFIRMED ............................................................................................65

            1.    ALL ARGUMENTS BASED UPON THE 1991 AMENDMENT TO THE CIVIL RIGHTS ACT ARE WAIVED AND FORFEITED ..................................................65

            2.    THE DISTRICT COURT DID NOT FIND THAT WILKINSON PRODUCED DIRECT EVIDENCE OF DISCRIMINATION ....................................................66

            3.    THE DISTRICT COURT DID NOT ERR IN FINDING THAT WILKINSON'S CLAIMS DO NOT SURVIVE SUMMARY JUDGMENT ........................................................71

            4.    THE *MCDONNELL-DOUGLAS* BURDEN SHIFTING SCHEME APPLIES HERE ......................................................73

            5.    WILKINSON CANNOT MEET HIS BURDEN OF PROOF TO ESTABLISH A "PRIMA FACIE" CASE OF DISCRIMINATION ..............................................................73

IV.    CONCLUSION...............................................................................................76

CERTIFICATE OF SERVICE ...............................................................................77

CERTIFICATE OF COMPLIANCE ......................................................................78

# TABLE OF AUTHORITIES

## CASES                                                                   PAGE #

*Abbt v. City of Houston*,
  28 F.4th 601 (5th Cir. 2022) ...............................................................64

*Ackel v. Nat'l Commc'ns, Inc.*,
  339 F.3d 376 (5th Cir. 2003) ..............................................................39

*Alkhawaldeh v. Dow Chem. Co.*,
  851 F.3d 422 (5th Cir. 2017) .........................................................75, 76

*Allen v. Envirogreen Landscape Pros., Inc.*,
  721 F. App'x 322 (5th Cir. 2017) ......................................................40

*Anderson v. City of New Orleans*,
  38 F.4th 472 (5th Cir. 2022) ...............................................................66

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).....................10

*Armstrong v. K & B Louisiana Corp.*,
  488 Fed.Appx. 779 (5th Cir. 2012)...................................................13

*Autry v. Fort Bend Indep. Sch. Dist.*,
  704 F.3d 344 (5th Cir. 2013) ..............................................................74

*Badaiki v. Schlumberger Holdings Corp.*,
  4:20-CV-2216, 2021 WL 6010580 (S.D. Tex. 04/23/21),
  *R.&R. adopted*, 2021 WL 5542144 (S.D. Tex. 11/26/21),
  *R.&R. adopted*, 2021 WL 5769276 (S.D. Tex. 12/06/21).................31

*Baker v. FedEx Ground Package Sys. Inc.*,
  278 F. App'x 322 (5th Cir. 2008) ......................................................52

*Beard v. Seacoast Electronics, Inc.*,
  2006-1244 (La. App. 4 Cir. 01/24/07), 951 So.2d 1168 ...................56

*Brackens v. Stericycle, Inc.*,
   829 F.App'x 17 (5th Cir. 2020) ...........................................................38

*Breaux v. Rosemont Realty*,
   768 F. App'x 275 (5th Cir. 2019) ......................................................52

*Breeding v. U.S. Dep't of Interior*,
   14-948, 2015 WL 1809977 (E.D. La. 04/21/15) .........................40, 41

*Broadway v. City of Montgomery*,
   530 F.2d 657 (5th Cir. 1976) ..............................................................69

*Brown v. E. Miss. Elec. Power Ass'n*,
   989 F.2d 858 (5th Cir. 1993) ..........................................15, 16, 25, 67

*Brown v. ICF Int'l*,
   07-931-JJB, 2011 WL 5548962 (M.D. La. 11/15/11).........................56

*Brown v. Wal-Mart Stores East, L.P.*,
   969 F.3d 571 (5th Cir. 2020) .......................................................43, 47

*Buisson v. Bd. of Supervisors of La. Cmty. & Tech. Coll. Sys.*,
   592 F.App'x 237 (5th Cir. 2014) ........................................................64

*Burnett v. E. Baton Rouge Par. Sch. Bd.*,
   2011-1851 (La. App. 1 Cir. 5/3/12), 99 So.3d 54...............................12

*Burrell v. Lab. Ready, Inc.*,
   09-227, 2012 WL 1565360 (M.D. La. 03/30/12),
   *R.&R. adopted*, 2012 WL 1565620 (M.D. La. 04/30/12) ............25, 31

*Bye v. MGM Resorts Int'l, Inc.*,
   49 F.4th 918 (5th Cir. 2022) ..............................................................61

*Caldwell v. KHOU-TV*,
   850 F.3d 237 (5th Cir. 2017) ..............................................................42

*Campbell v. Fasco Indus., Inc.*,
   67 F.3d 301 (7th Cir. 1995) ................................................................24

*Carter v. Target Corp.*,
    541 F.App'x 413 (5th Cir. 2013) .........................................................40

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)......................................10

*Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*,
    933 F.2d 1285 (5th Cir. 1991) ..............................................8, 66, 72

*Collins v. State of Louisiana, through Dept. of Natural Resources,*
    2012-1031 (La. App. 1 Cir. 05/30/13), 118 So.3d 43...................................54, 55

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*,
    555 U.S. 271, 129 S.Ct 846, 172 L.Ed.2d 650 (2009).......................................39

*Daniel v. Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll.*,
    21-30555, 2022 WL 1055578 (5th Cir. 04/08/22).................................15, 30, 70

*DeHart v. Baker Hughes Oilfield Operations, Inc.*,
    214 F. App'x 437 (5th Cir. 2007) .......................................................41

*Eaglin v. Texas Children's Hospital*,
    801 F. App'x 250 (5th Cir. 2020) ...............................................*passim*

*Equal Employment Opportunity Commission v. Ryan's Pointe Houston, LLC*,
    19-20656, 2022 WL 4494148 (5th Cir. 09/27/22)......................................*passim*

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
    778 F.3d 473 (5th Cir. 2015) .....................................................*passim*

*Fabela v. Socorro Indep. Sch. Dist.*,
    329 F.3d 409 (5th Cir. 2003) ............................................................25

*Fisher v. Bilfinger Indus. Servs. Inc.*,
    20-30265, 2021 WL 5272214 (5th Cir. Nov. 11, 2021)......................................64

*Gardner v. CLC of Pascagoula, L.L.C.*,
    915 F.3d 320 (5th Cir. 2019), *as revised* (Feb. 7, 2019) ..............................60, 61

*Gautreau v. EnLink Midstream Operating GP, LLC,*
  21-0796 (La. App. 1 Cir. 05/25/22), 342 So.3d 939,
  *writ denied,* 2022-1010 (La. 10/12/22), 2022 WL 6938247 .............................56

*Gee v. Principi*,
  289 F.3d 342 (5th Cir. 2002) .............................................................42

*Gonzalez v. J.E. Merit Constructors, Inc.*,
  263 F.3d 162 (5th Cir. 2001) .............................................................54

*Hale v. Touro Infirmary*,
  04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210,
  *writ denied*, 05-0103 (La. 3/24/05), 896 So.2d 1036 ..................................56, 57

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ......................................62

*Hensley v. Wal-Mart Stores Inc.*,
  290 F.App'x 742 (5th Cir. 2008) ..................................................69, 70

*Herster v. Bd. of Supervisors of Louisiana State University*,
  887 F.3d 177 (5th Cir. 2018) .............................................2, 24, 30, 36

*Hicks v. Central Louisiana Elec. Co. Inc.*,
  97–1232 (La. App. 1 Cir. 5/15/98), 712 So.2d 656...........................................61

*Jackson v. Cal-W. Packaging Corp.*,
  602 F.3d 374 (5th Cir. 2010) ......................................................30, 42

*Jones v. Gulf Coast Rest. Grp., Inc.*,
  8 F.4th 363 (5th Cir. 2021) ........................................................26, 46

*Jones v. Robinson Prop. Grp., L.P.*,
  427 F.3d 987 (5th Cir. 2005)........................................................23, 25

*Katseanes v. Time Warner Cable, Inc.*,
  511 F.App'x 340 (5th Cir. 2013)....................................................18, 31

*Keelan v. Majesco Software, Inc.*,
  407 F.3d 332, 339–40 (5th Cir. 2005) .................................................69

*Laird v. Shell Oil Co.*,
770 F.2d 508 (5th Cir. 1985) ..............................................................72

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir. 2003) ..............................................................43

*Lee v. Kan. City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) ..............................................................74

*LeMaire v. La. Dep't of Transp. & Dev.*,
480 F.3d 383 (5th Cir. 2007) ..............................................................42

*Lightner v. City of Wilmington, N.C.*,
545 F.3d 260 (4th Cir. 2008) ..............................................................76

*Little v. Republic Refining Co., Ltd.*,
924 F.2d 93 (5th Cir. 1991) ........................................................26, 46

*Long v. Eastfield Coll.*,
88 F.3d 300 (5th Cir. 1996) ................................................................39

*Maldonado v. First Service Residential, Inc.*,
20-1484, 2021 WL 2517542 (S.D. Tex. 06/18/21) ................................25, 26, 31

*Manning v. Chevron Chem. Co., LLC*,
332 F.3d 874 (5th Cir. 2003) ..............................................................11

*Marathon Pipe Line Co. v. M/V Sea Level II*,
806 F.2d 585 (5th Cir. 1986) ..............................................................70

*McCoy v. City of Shreveport*,
492 F.3d 551 (5th Cir. 2007) ..........................................15, 39, 42, 43

*McDaniel v. Shell Oil Co.*,
350 F. App'x 924 (5th Cir. 2009)........................................................70

*McDonald v. Santa Fe Trail Transportation Co.*,
427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) ........................12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .................................*passim*

*McFaul v. Valenzuela*,
  684 F.3d 564 (5th Cir. 2012) ...............................................................58

*McLaurin v. Waffle House, Inc.*,
  178 F.Supp.3d 536 (S.D. Tex. 2016)....................................................31

*Meredith v. LA. Fed. Of Teachers*,
  209 F.3d 398 (5th Cir. 2000) ................................................................3

*Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*,
  55 F.Supp.3d 864 (M.D. La. 2014)......................................................11

*Murray v. Louisiana*,
  2011 WL 703653 (M.D. La. 2011)......................................................56

*Musser v. Paul Quinn Coll.*,
  944 F.3d 557 (5th Cir. 2019) ..............................................................43

*Myers v. BP America, Inc.*,
  6:08-0168, 2010 WL 3878920 (W.D. La. 09/28/10).........................54

*Myrick v. City of Dallas*,
  810 F.2d 1382 (5th Cir. 1987) ............................................................72

*Newbury v. City of Windcrest*,
  991 F.3d 672 (5th Cir. 2021) ..............................................................42

*Newport News Shipbuilding & Dry Dock Co., v. EEOC*,
  462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d (1983).............................35

*Nguygen v. Univ. of Texas Sch. of L.*,
  542 F.App'x 320 (5th Cir. 2013) ........................................................74

*Odubela v. Exxon Mobil Corporation*,
  736 F.App'x 437 (5th Cir. 2018)....................................19, 20, 70, 72

*Owens v. Circassia Pharms., Inc.*,
  33 F.4th 814 (5th Cir. 2022) ...............................................................38

*Patel v. Midland Mem. Hosp. & Med. Ctr.*,
  298 F.3d 333 (5th Cir. 2002) .............................................................30

*Peterson v. Linear Controls, Inc.*,
  757 F. App'x 370 (5th Cir. 2019) ......................................................64

*Plummer v. Marriott Corp.*,
  94–2025 (La. App. 4 Cir. 4/26/95), 654 So.2d 843,
  *writ denied,* 95–1321 (La. 9/15/95), 660 So.2d 460..........................33

*Portis v. First National Bank of New Albany*,
  34 F.3d 325 (5th Cir. 1994) ........................................................*passim*

*Powers v. Vista Chem. Co.*,
  109 F.3d 1089 (5th Cir. 1997) ...........................................................54

*Quebedeaux v. Dow Chemical Co.*,
  01–2297 (La. 6/21/02), 820 So.2d 542 .................................................3

*Rayborn v. Bossier Par. Sch. Bd.*,
  881 F.3d 409 (5th Cir. 2018) .............................................................52

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133, 120 S.Ct 2097 (2000).............................................43, 44

*Roberts v. Fla. Gas Transmission Co.*,
  447 F.App'x 599 (5th Cir. 2011) .......................................................52

*Rogers v. Pearland Indep. Sch. Dist.*,
  827 F.3d 403 (5th Cir. 2016) .........................................................9, 75

*Russell v. McKinney Hosp. Venture*,
  235 F.3d 219 (5th Cir. 2000) .............................................................42

*Saketkoo v. Administrators of Tulane Educ. Fund*,
  31 F.4th 990 (5th Cir. 2022) .......................................................*passim*

*Saketkoo v. Administrators of Tulane Educ. Fund*,
510 F.Supp.3d 376 (E.D. La. 2020)........................................42, 63, 75

*Sandstad v. CB Richard Ellis, Inc.*,
309 F.3d 893 (5th Cir. 2002) ..............................................6, 7, 25, 35

*Saunders v. Michelin Tire Corp.*,
942 F.2d 299 (5th Cir. 1991) .......................................................10, 33

*Scales v. Slater*,
181 F.3d 703 (5th Cir. 1999) ..............................................................38

*Seagrave v. Dean*,
03-2272 (La. App. 1 Cir. 06/10/05), 908 So.2d 41............................13

*Septimus v. Univ. of Houston*,
399 F.3d 601 (5th Cir. 2005) .......................................................11, 73

*Simmons v. Pacific Bells, LLC*,
787 Fed.App'x 837 (5th Cir. 2019) ....................................................49

*Simon v. United States*,
891 F.2d 1154 (5th Cir. 1990) ............................................................72

*Singleton v. Wulff*,
428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ...................9, 72

*Smith v. AT&T Sols., Inc.*,
90 F.App'x 718 (5th Cir. 2004) ..........................................................52

*Spears v. Patterson UTI Drilling Co.*,
337 F.App'x 416 (5th Cir. 2009) ............................................25, 35, 46

*Stevenson v. Williamson*,
547 F.Supp.2d 544 (M.D. La. 04/09/08),
*affirmed,* 324 Fed.App'x 422, 2009 WL 1310988 ................56, 58, 62

*Stone v. Par. of E. Baton Rouge*,
06-401, 2008 WL 4534374 (M.D. La. 09/30/08),
*aff'd*, 329 F.App'x 542 (5th Cir. 2009) .......................................25, 31

*Strong v. Univ. Healthcare Sys., L.L.C.*,
   482 F.3d 802 (5th Cir. 2007) .........................................................47, 52

*Tatum v. United Parcel Serv., Inc.*,
   10-1053 (La. App. 5 Cir. 11/15/11), 79 So.3d 1094...........................52

*Univ. of Texas Sw. Medical Ctr. v. Nassar*,
   570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) ...........................*passim*

*Valderaz v. Lubbock Cnty. Hosp. Dist.*,
   611 F.App'x 816 (5th Cir. 2015) ........................................................41

*Wallace v. Methodist Hosp. System*,
   271 F.3d 212 (5th Cir. 2001) .............................................................11

*Wantou v. Wal-Mart Stores Texas, LLC*,
   23 F.4th 422 (5th Cir. 2022) ..............................................................60

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) .............................................................62

*West v. City of Houston, Texas*,
   960 F.3d 736 (5th Cir. 2020).............................................................60

*Wilkerson v. Parish of Jefferson*,
   20-3031, 2021 WL 4989899 (E.D. La. 10/27/21) .............................63

*Williams v. City of Port Arthur*,
   1:20-527, 2022 WL 1183293 (E.D. Tex. 02/25/22),
   *adopted*, 2022 WL 866407 (E.D. Tex. 03/23/22).............................64

*Williams v. Hosp. Serv. Dist. of W. Feliciana Par., Louisiana*,
   15-95, 2017 WL 4335023 (M.D. La. 09/28/17) ...............................56

*Williams v. Recovery Sch. Dist.*,
   859 F.Supp.2d 824 (E.D. La. 2012)...................................................39

*Wilson v. KRBE Radio, Inc.*,
   2005 WL 1155082 (S.D. Tex. 05/04/05)................................21, 37, 38

*Woods v. Cantrell*,
   29 F.4th 284 (5th Cir. 2022) ................................................................64

*Zuccarello v. Exxon Corp.*,
   756 F.2d 402 (5th Cir. 1985) .............................................................72

## **STATUTES & CODE ARTICLES:**

42 U.S.C. § 2000e-5(g)(2)(B) .................................................................65

La. Admin. Code tit. 51 §123 .................................................................57

La. Civ. Code art. 2747 ...........................................................................3

La. Rev. Stat. § 23:13...............................................................................57

La. Rev. Stat. § 23:967..................................................................*passim*

La. Rev. Stat. § 30:2027................................................................*passim*

Miss. Code Ann. §13-5-35 .....................................................................49

## **RULES:**

Fed. R. App. Pro. 32(a)(5) ......................................................................78

Fed. R. App. Pro. 32(a)(6) ......................................................................78

Fed. R. App. Pro. 32(a)(7)(B) .................................................................78

Fed. R. App. Pro. 32(f) ...........................................................................78

5th Cir. R. 28.2.1.......................................................................................i

5th Cir. R. 32.1........................................................................................78

## <u>BRIEF ON BEHALF OF APPELLEES, PINNACLE LODGING, LLC., MY HOSPITALITY SERVICES, LLC, YOGESH "CHRIS" PATEL, LAURA ROSA, AND RUSSELL BLOCK</u>

This Appellee Brief is respectfully submitted by Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block (collectively "Pinnacle" or "Appellees").

## I.     <u>STATEMENT OF THE CASE</u>

This is a reverse discrimination case wherein Shane Wilkinson, the Appellant, a Caucasian American male, claims he was discriminated against on the basis of race, national origin, and sex and retaliated against for reporting the alleged discrimination and/or notifying Pinnacle of the presence of mold at the Hampton Inn ("Hotel") in Covington, Louisiana. The trial court correctly determined that Shane Wilkinson ("Wilkinson") did not meet his burden of proof because Laura Rosa's ("Rosa") comments, even if true, cannot be construed by any reasonable juror to constitute discrimination under the law. Of significance, Wilkinson testified that he "laughed…and moved on"[1] when questioned about alleged racist comments made by Rosa.  The District Court's findings should be affirmed because any comments made by Rosa, even if they were actually made, do not constitute discrimination under the law.

---

[1]     ROA.523 [116:17-116:18].

Wilkinson, a former General Manager of the Hampton Inn, filed suit against Pinnacle Lodging, LLC[2] ("Pinnacle"), My Hospitality Services, LLC[3] ("My Hospitality"), Yogesh "Chris" Patel ("Patel") (an owner), Laura Rosa (a Regional Manager), and Russell Block (a Director of Operations), based upon alleged unlawful discrimination and retaliation. Wilkinson claims to have been discriminated against, and eventually terminated, on the basis of his sex (male), race (Caucasian), and national origin (American). He alleges Rosa stated that women made better General Managers than men because men are not detail oriented;[4] that Rosa said that "'Mexican' employees 'work harder, faster, and cheaper'"[5] than their white counterparts; and stated he could wear tight pants during an inspection of the Hotel, if the inspector were a woman to "distract" her.[6] However, such comments by Rosa, even if true, amount only to "stray remarks,"[7] and are not direct or circumstantial evidence of discrimination.

Separate and apart from his claims of discrimination, Wilkinson alleges he was fired by the Appellees for notifying them of mold in the Hotel and seeks relief

---

[2] Patel owns 90% to 95% of Pinnacle Lodging, LLC with My Investments, LLC owning 5% - 10% Pinnacle Lodging. ROA.260, (21:1- 21:10).

[3] Patel owns 99% of MyHospitality, with his wife, Bhavna Patel, owning 1%.

[4] ROA.79 [¶ 81].

[5] ROA.79-80 [¶ 82].

[6] ROA.80 [¶ 86].

[7] The law distinguishes so-called "stray remarks" from actual discriminatory conduct. *See Herster v. Bd. of Supervisors of Louisiana State University*, 887 F.3d 177, 187 (5th Cir. 2018).

under the Louisiana whistleblower statues.[8] However, My Hospitality, Pinnacle, and Patel were aware the 20 year-old Hotel could potentially have mold in it when Pinnacle began operating the Hotel on February 4, 2015;[9] they expected the Hotel contained mold that would not be detected until renovations were made.[10]

Wilkinson failed to make a *"prima facie"* case to maintain any of his actions, particularly since Pinnacle hired another male, Caucasian American, Robert "Denny" Dansbury, III ("Dansbury"), to replace Wilkinson after he was terminated. The evidence establishes that Wilkinson was terminated for cause[11] due to his poor work performance,[12] lack of leadership,[13] frequent absences,[14] threats to quit,[15] failure to set rates,[16] lack of revenue management, failure to develop as a General Manager, failure to document his employees, insubordination, and failure to complete his responsibilities and administrative duties among other reasons.[17]

---

[8]   La. R.S. §23:967 and La. R.S. §30:2027.

[9]   ROA.272 [72:17].

[10]  ROA.272 [72:6-72:12].

[11]  In Louisiana, employment is deemed at-will unless it is for a definite term. *Meredith v. LA. Fed. Of Teachers*, 209 F.3d 398, 403 (5th Cir. 2000). When the employer and employee are silent on the terms of the employment contract, Civil Code Article 2747 provides the default rule of employment-at-will. *Quebedeaux v. Dow Chemical Co.*, 01–2297, pp. 4–5 (La.6/21/02), 820 So.2d 542, 545.

[12]  *See* ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; ROA.357 [146:10-147:1]; ROA.376-379; ROA.326 [22:25-23:21].

[13]  *See* ROA.385 [No. 7].

[14]  *See* ROA.327 [26:18-26:22].

[15]  *See* ROA.284 [120:11-120:16]; ROA.350 [118:18-118:23]; ROA.475 [242:18-242:25].

[16]  *See* ROA.327 [26:11-27:1]; ROA. 328 [30:1-30:13].

[17]  ROA.328 [30:1-30:8]; ROA.491 [305:5-305:17].

Wilkinson was hired in 2017 to work as a front desk clerk for the Hampton Inn. Shortly thereafter, Wilkinson received a $1.00 per hour raise and continued his position as a front desk clerk. In 2018, Wilkinson was promoted to management and began receiving an annual salary. In 2018, he became the General Manager of the Hotel and received a raise.

With 27 years[18] of experience in the hotel industry, Rosa was promoted to Regional Manager for My Hospitality in the Summer of 2019. Wilkinson was struggling then as the General Manager (sometimes "GM") to meet the expectations of his employer. The Hotel was undergoing substantial renovations and several of the rooms were out of use. Under Wilkinson's leadership, the Hotel failed to pass an inspection in 2019, which was conducted by Hilton Hotels, its parent company. Even before Rosa became the Regional Manager, Wilkinson was instructed that his goal as GM for the Hotel was to pass the Hilton's inspection. However, instead of actively working toward that goal, he failed to complete numerous tasks, which contributed to the failure of the inspection.

Shortly thereafter, Wilkinson was terminated from employment with My Hospitality by Russell Block ("Block") and Rosa effective December 19, 2019. His termination letter indicated that he failed, in several respects, to perform at the level

---

[18]   ROA.489 [300:20-300:21].

required of the General Manager position.[19] He "failed to review, monitor and make recommendations towards rate management based on demand and area pricing"[20] resulting in lower than expected occupancy and the loss of business.[21] He failed to ensure that all Quality Assurance items were addressed following inspections. The Hotel failed Hilton's inspection in part because of Wilkinson's inability to delegate or complete the action items brought to his attention by Rosa and Block in advance of the inspection.

Indeed, the November 2019 inspection revealed Wilkinson had been dishonest with upper management on multiple occasions. Several items which Wilkinson told upper management were completed, were not completed at all, including light stay-fire inspection training and crisis management.[22] Further, the termination letter indicated training by Hotel staff was completed only a day prior to the inspection, and only after staff was forced to continue training sessions at home.[23] Wilkinson was terminated for one reason: his inability to perform the duties of, and meet the expectations placed on him as the General Manager of the Hotel.

---

[19]    ROA.376-379.
[20]    ROA.376-379.
[21]    ROA.376-379.
[22]    ROA.376-379.
[23]    Wilkinson, however, gave assurances to upper management on July 13, 2019, August 9, 2019, and October 4, 2019 that all staff training had been completed.

## II.   <u>SUMMARY OF THE ARGUMENTS</u>

### A.   **PINNACLE'S SUMMARY OF ITS ARGUMENTS IN RESPONSE TO THE APPELLANT'S BRIEF.**

Wilkinson claims he was discriminated and retaliated against based upon race, national origin and sex because he is a white American male.  However, he cannot meet his burden to maintain his claim for discrimination because he was replaced as General Manager of the Hotel by Dansbury, another white American male.[24]

Wilkinson erroneously alleges that evidence of the so-called discrimination along with Pinnacle's grounds for his termination creates evidence of pretext. But Wilkinson's arguments are meritless because even when the District Court used the term "likely," it did not find that Wilkinson presented direct evidence of discrimination. Importantly, the District Court <u>did not hold</u> that Rosa's comments to Wilkinson were direct evidence of discrimination.

The District Court's holding should be affirmed because Rosa's comments, even if true, are merely "stray remarks" and are not direct evidence of discrimination. Under well settled law, discriminatory statements must be specifically directed to the Plaintiff and unambiguous, allowing one to conclude without any inferences or presumptions a discharge was intended.[25]   Of significance, Wilkinson fails to establish that the comments were specifically directed towards him.

---

[24]   ROA.390 [No.14].

[25]   *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994); *see also Sandstad*

The lower court's decision should be affirmed because Wilkinson failed to make a *"prima facie"* showing of retaliation because he has not established that he engaged in any activity protected by Title VII. Although Wilkinson may have complained about Rosa being demanding to prepare for the inspection, there is no evidence that the Appellant complained to Block that Rosa's made discriminatory comments to him.

Wilkinson cannot maintain his claims under Louisiana's Environmental Whistleblower Act, La. R.S. 30:2027 ("LEWA") or Louisiana's Whistleblower Act, La. R.S. 23:967 ("LWA") on the basis he reported the existence of mold at the Hotel. Wilkinson's arguments fail because the District Court properly found that reporting mold is not a protected activity under the law.[26]

The lower court did not err in dismissing Wilkinson's environment claims. In sum, the District Court correctly found that Rosa's statements, "while offensive, do not equate to the reprehensible, offense-laden racial epithets the Fifth Circuit has found sufficient to state a claim for hostile work environment."[27]

---

*v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).
[26]  ROA.115, fn.95.
[27]  ROA.1129.

### B.    PINNACLE'S SUMMARY OF ITS ARGUMENTS IN RESPONSE TO THE EEOC'S BRIEF.

The decision of the trial court should be affirmed because all arguments the EEOC has made based upon the 1991 Amendments to the Civil Rights Act are waived because Wilkinson did not address the Amendments in either his Opposition to Pinnacle's Summary Judgment in the lower court or in his Appellate Brief. The law of the Fifth Circuit is clear that, absent exceptional circumstances, an issue waived by an appellant cannot be raised in an *amicus curiae* brief.[28] Hence, this Court is precluded from addressing whether any post-1991 jurisprudence, which incorporates the statutory changes of Title VII into summary judgment analysis, should be applied here.

Pinnacle also disputes that the District Court found Wilkinson produced direct evidence of discrimination. In sum, the EEOC fails to correctly interpret the trial court's findings on the issue of direct evidence of discrimination.

Despite the EEOC's position regarding the changes to the Amendments to the "lessened causation standard"[29] and the applicability of *Univ. of Texas Sw. Medical Ctr. v. Nassar*,[30] this Honorable Court cannot take these arguments into consideration because Wilkinson did not raise such arguments in either the lower

---

[28]    *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292–93, (5th Cir. 1991).

[29]    *Univ. of Texas Sw. Medical Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

[30]    *Nassar*, 570 U.S. at 339.

court[31] or in his Appellant Brief. Accordingly, the arguments raised by the EEOC concerning the "lessened causation standard"[32] and the applicability of *Nassar* are waived and forfeited.[33]

The EEOC has argued that the lower court improperly applied *McDonnell-Douglas* because the District Court found that Wilkinson offered direct evidence of discrimination. Again, the Appellee maintains that Rosa's comments are "stray remarks" and that the lower court did not find that they were direct evidence of discrimination. Thus, Pinnacle avers that the lower court properly applied the *McDonnell-Douglas* test.

The EEOC argues that Wilkinson was not required to show comparator evidence to establish a *"prima facie"* case of discrimination. Despite the EEOC's arguments, it is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others *outside of his protected class.*[34]

---

[31]   ROA.701-725.
[32]   *Nassar*, 570 U.S. at 339.
[33]   *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877 (1976).
[34]   *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 409 (5th Cir. 2016).

# III.    ARGUMENT

## A.    THE *DE NOVO* STANDARD OF REVIEW APPLIES.

The *de novo* standard of review applies.

## B.    SUMMARY JUDGMENT STANDARDS.

The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case.[35]  Where the opposing party bears the burden of proof at trial (as Wilkinson does here), the moving party in a summary judgment procedure need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.[36]  To properly oppose a motion for summary judgment, the non-movant must set forth specific facts to establish a genuine issue of material fact, and cannot merely rest on allegations and denials.[37]  A genuine issue of fact exists where the evidence is such that a reasonable fact finder could return a verdict for the non-moving party.[38]

In employment discrimination cases, the burden is first on the plaintiff to establish a *"prima facie"* case of discrimination. To establish a *"prima facie"* case the plaintiff must prove that he or she: (1) is a member of a protected class; (2) was

---

[35]    *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

[36]    *See Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir. 1991).

[37]    *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2552.

[38]    *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably.[39] Once the plaintiff establishes a *"prima facie"* case, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action.[40] If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. To carry this burden in a discrimination case, the plaintiff must put forward evidence rebutting **each** of the nondiscriminatory reasons the employer articulates.[41] A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated his employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence.[42] However, throughout Title VII cases, the ultimate burden of proof remains with the plaintiff.[43]

---

[39]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *See also Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).

[40]    *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 881 (5th Cir.2003).

[41]    *Wallace v. Methodist Hosp. System,* 271 F.3d 212, 220 (5th Cir.2001) (Emphasis added).

[42]    *Id.* (inset quotations omitted).

[43]    *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll*., 13-0000, 55 F. Supp. 3d 864 (M.D. La. 2014).

## C. THE DISTRICT COURT CORRECTLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT.

### 1. THE DISTRICT COURT'S FINDINGS MUST BE AFFIRMED BECAUSE WILKINSON WAS REPLACED BY ANOTHER CAUCASIAN, AMERICAN, MALE.

Despite Wilkinson's arguments, the District Court's holdings that Wilkinson was not discriminated or retaliated against should be affirmed because it cannot be disputed that Wilkinson was replaced by a like individual after he was terminated. Accordingly, Wilkinson cannot establish a "*prima facie*" case of discrimination.

#### a. Wilkinson was not discriminated or retaliated against upon the basis of his race, national origin, or sex.

Wilkinson claims he was discriminated and retaliated against based upon race, national origin and sex because he is a white American male. In this instance, Wilkinson failed to meet his burden of proof because he was replaced as General Manager by a white American male.[44] Title VII actions may be maintained by white individuals,[45] but Wilkinson failed to show that he was discriminated or retaliated against based upon his race, national origin or sex. To establish a *"prima facie"* case of discrimination, an employee must establish by a preponderance of the evidence that: (1) he was a member of a protected class (2) he was qualified for the position;

---

[44]   *See* ROA.390 [No.14].
[45]   *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 279–80, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976); *Burnett v. E. Baton Rouge Par. Sch. Bd.*, 2011-1851 (La. App. 1 Cir. 5/3/12), 99 So. 3d 54.

(3) he suffered an adverse employment action such as a discharge; and, (4) *he was replaced by someone outside the protected class who was treated more favorably*.[46]

Even though Wilkinson is a member of a protected class and was discharged, he failed to maintain his claim for discrimination or retaliation because he was replaced shortly after his termination by Dansbury, another Caucasian, American, male, on or about December 30, 2019.

Additionally, Wilkinson failed to demonstrate that Rosa discriminated against him based upon his race because she was born in New Orleans, Louisiana and her race is listed "Caucasian" on her birth certificate.[47] Rosa is also of German decent, as her maiden name is "Diket."[48] Block, another Appellee, is also an American white male.[49] Indeed, Wilkinson concedes in his deposition that he was not replaced by someone who is not white.[50]

---

[46]    *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Seagrave v. Dean,* 03-2272 (La. App. 1 Cir. 06/10/05), 908 So.2d 41, 45. (Emphasis added); *Armstrong v. K & B Louisiana Corp.*, 488 Fed.Appx. 779 (5th Cir. 2012).
[47]    *See* ROA.485 [282:25-282:4]; ROA.489 [300:15-19].
[48]    *See* ROA.489 [300:8-300:19]. *See also*, ROA.374 [215:20-216:1]. Rosa is now divorced from Mr. Rosa and currently goes by "Laura Perkins."
[49]    *See* ROA.374 [215:4-215:13].
[50]    *See* ROA.522 [109:22-109:25] as follows:

```
            109
22    Q.  Are you alleging that you were replaced
23
24    by someone that is not white?
25        A.  No, ma'am.
```

Although Wilkinson attempts to show through the declaration of Chasity Anthony ("Anthony"), the head of housekeeping, that Ashely Vanderhoff ("Vanderhoff"), the Assistant General Manager was the *de facto* General Manager,[51] these are erroneous conclusions for a number of reasons. First, Dansbury was hired to be the General Manager of the Hotel and is still employed as the General Manager of the Hotel.[52] Second, Anthony, who was hired by Pinnacle, quit working for the Hotel shortly after Dansbury was hired.[53] Third, Vanderhoff never acted as the General Manager after Wilkinson was terminated and was not considered for the position.[54] Instead, Rosa worked at the Hotel as the General Manager until Dansbury was hired and began working at the Hotel as the General Manager.[55]

Despite Wilkinson and the EEOC's claims to the contrary, the holding of *Equal Employment Opportunity Commission v. Ryan's Pointe Houston, LLC* ("*Ryan's Pointe*")[56] does not apply. In *Ryan's Pointe*, the Court noted that the managers of the property at issue wanted Magali Villalobos[57] ("Villalobos"), a pregnant woman born in Mexico, replaced with a "higher class of individual with

---

[51]   ROA.849-850.

[52]   ROA.483 [276:1-276:4].

[53]   ROA.846 [¶ 6].

[54]   ROA. 346 [104:25-105:16].

[55]   ROA.270-271 [270:9-271:5].

[56]   *Equal Employment Opportunity Commission v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022).

[57]   Villalobos was the intervening Plaintiff in *Ryan's Pointe*.

the look of Ken and Barbie."[58] In sharp contrast, Wilkinson was replaced by another person who looked like him, a Caucasian, American born male. Given that Wilkinson was replaced by Danbury who is of the same race, nationality, and sex as Wilkinson, Wilkinson failed to prove Rosa had a discriminatory animus against him based upon this factor alone.

### 2.   WILKINSON IS INCORRECT THAT THERE IS EVIDENCE OF PRETEXT.

#### a.   Even when the District Court used the term "likely," it did not find that Wilkinson showed direct evidence of discrimination.

A Title VII racial discrimination claim can be established through either direct or circumstantial evidence."[59] "If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using '[t]he three-step *McDonnell Douglas-Burdine* minuet.' "[60] If, however, the plaintiff presents direct evidence, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor."[61]

---

[58]   *Ryan's Pointe Houston,* p. *2, No. 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022).

[59]   *Daniel v. Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll.,* No. 21-30555, 2022 WL 1055578 (5th Cir. Apr. 8, 2022) (*citing McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

[60]   *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015).

[61]   *Etienne* (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

In the District Court's Order and Reasons, it states "Wilkinson 'likely,' presents direct evidence of gender-based discrimination"[62] with regard to the statements made by Rosa. However, the Court did not hold that Rosa's comments were direct evidence of discrimination.[63] Rather, the Court only found it did not have to determine whether Wilkinson produced direct evidence because Pinnacle established by a preponderance of the evidence that the "same decision" would have been made[64] regardless of the so-called comments.

### b.  Pinnacle's Explanation for Termination Does Not Create Grounds for Establishing Pretext.

#### i.  The evidence that Wilkinson has presented does not constitute direct evidence of discrimination under the law.

##### (a)  Wilkinson's charges of race and national origin discrimination.

Among other allegations, Wilkinson has stated in his Complaint that Rosa discriminated against him because she said that "'Mexican' employees 'work harder, faster, and cheaper'"[65] than their white counterparts. Moreover, Wilkinson has alleged he was discriminated against based upon his race and national origin because

---

[62]  ROA.1101.

[63]  In their briefs, both the Wilkinson and the EEOC in essence disregard the lower court's use of the term "likely." However, the District Court failed to find that Rosa's comments were direct evidence of discrimination.

[64]  *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

[65]  ROA.79-80 [¶ 82].

Rosa said that she was going to fire the white housekeeping staff and replace them with Latinos.

Importantly, Wilkinson's own deposition testimony is inconsistent regarding many of these allegations of racial and national origin discrimination. First, in one part of his deposition Wilkinson said that Rosa told him to terminate "the Hotel's staff" because "she was going to bring in a Hispanic crew. I refused."[66] This statement cannot be considered direct evidence of a discrimination because, according to Wilkinson, Rosa wanted Wilkinson to terminate the staff only. Consequently, even assuming these statements are true for the sake of argument only, Rosa did not threaten Wilkinson with termination through these alleged statements. Hence, they do not constitute direct evidence.

Wilkinson's statement is also inconsistent because while Wilkinson has the authority to terminate staff, Rosa was not responsible for hiring staff. It was Wilkinson's responsibility, not Rosa's, to hire and fire Hotel staff. However, Wilkinson made no mention that Rosa told him that he would be terminated in this exchange.

Second, in another part of his deposition, Wilkinson alleged that Rosa said that "We need Hispanic workers in, and get rid of non-Hispanics."[67] Here, again,

---

[66]    ROA.513 [76:12-76:14].
[67]    ROA.523 [116:12-116:14].

Wilkinson did not say that Rosa indicated that he was a non-Hispanic that would be fired. It, therefore, cannot be considered direct evidence.

Finally, it was only when Wilkinson was asked if Rosa ever said that "we need to get rid of you because you're not Hispanic"[68] did Wilkinson say "Yeah. She did. I laughed at it and moved on."[69]  However, Wilkinson did not make such allegations in his Amended Complaint.[70] Even if Rosa made such comments, they are not so severe or pervasive that they could be considered discriminatory under the law. The fact that Wilkinson testified that he "laughed at it and moved on" shows that no reasonable jury could believe that the alleged comments could be considered discriminatory or that Wilkinson found them to be offensive, and therefore, cannot be considered direct evidence. Further, similar comments from a supervisor that she was going to "clean house" and "get rid of the older"[71]  employees were found not to be discriminatory and were only considered to be "stray remarks" by this Court.

Similarly, in *Eaglin v. Texas Children's Hospital*,[72] this Honorable Court found that a comment, wherein an African-American plaintiff was told that she was going to be replaced with Hispanic employees, was a stray remark–even when the

---

[68]    ROA.523 [116:15-116:16].
[69]    ROA.523 [116:17-116:18].
[70]    ROA.523 [116:17-116:18]; ROA.79-80 [¶¶ 77-83]
[71]    *Katseanes v. Time Warner Cable, Inc*., 511 F.App'x 340, 346. (5th Cir. 2013).
[72]    *Eaglin v. Texas Children's Hospital*, 801 F. App'x 250 (5th Cir. 2020).

comment was made a week before her termination. Specifically, the plaintiff was told "they want to replace you-all with Hispanics."[73]

This Court determined that such evidence was not direct evidence of discrimination, even when the plaintiff was asked previously by a supervisor if she and another plaintiff "ate watermelon and fried chicken" on holidays[74] and asked about the color and style of her hair.[75] The plaintiff was also told that "it was not professional to wear braids in the medical field,"[76] and that she needed to "[e]ither… change [her] hair [color] or. . . go home for the rest of the day."[77] The plaintiff's supervisor once "flipped" the plaintiff's hair and asked her how much she paid for it.[78]   In *Eaglin*, the Court determined the employer, Texas Children's Hospital offered legitimate, non-biased reasons for the termination and that the plaintiff failed to show that employer's proffered reason for the termination was mere pretext for race discrimination. Given the similarities with *Eaglin*, this Court should determine that Rosa's comments were merely stray remarks.

In *Odubela v. Exxon Mobil Corporation*,[79] this Court determined that a supervisor's comments that he was unsure if an employee, a Nigerian immigrant,

---

[73]   *Eaglin*, 801 F. App'x 250, 252.
[74]   *Eaglin,* 801 at 252.
[75]   *Eaglin,* 801 at 252.
[76]   *Eaglin,* 801 at 252.
[77]   *Eaglin,* 801 at 252.
[78]   *Eaglin,* 801 at 252.
[79]   *Odubela v. Exxon Mobile Corporation,* 736 F. App'x 437 (5th Cir. 2018).

could "make it"[80] in the United States was found to be a stray remark when the employee expressed an interest in a position in Nigeria. Moreover, the supervisor's comments that the employee should be a "better person"[81] and remarks about his failure to maintain eye contact[82] was not considered evidence of racial discrimination. Based upon the foregoing U.S. Fifth Circuit jurisprudence, Rosa's statements are "stray comments."

### (b)  Wilkinson's charges of sex discrimination.

With regard to Wilkinson's allegations of sex discrimination, Wilkinson claims that Rosa said that that women made better General Managers than men because men are not detail oriented.[83] Further, Wilkinson has maintained that Rosa stated that she would have made him to wear "tight pants" during an inspection of the Hotel, if the inspector were a woman.[84] Rosa denied making any of the foregoing statements to Wilkinson.[85] Even assuming *arguendo,* that they were made, they do not constitute direct evidence of discrimination under the law.

The statement that women make better General Managers than men is only a statement of opinion. Similarly, a comment such as "men are not detail oriented" is

---

[80]    *Odubela,* 736 F. App'x at 441, 443.
[81]    *Odubela,* 736 F. App'x at 443.
[82]    The plaintiff, Tolupe Odubela, maintained that his failure to make eye contact was part of his Sub-Saharan African culture.
[83]    *See* ROA.79 [¶ 81].
[84]    *See* ROA.80 [¶ 86].
[85]    *See* ROA.485 [282:14-282:23].

vague, not discriminatory, on its face, and is only a stray remark. The remarks

cannot be considered to be discriminatory because a reasonable juror could not take

Wilkinson's allegations that Rosa was going to make him wear tight pants seriously.

As set forth in more detail below, the U.S. District Court for Southern District

of Texas found comments that "women are smarter than men" and "women handle

money better than men"[86] were not direct evidence of discrimination and were "not

sufficient to infer that gender-based discriminatory animus constituted a motivating

factor in the [employer's] decision to discharge"[87] the male employee.

Consequently, Rosa's alleged remarks, even if they were made, do not constitute

direct evidence of discrimination because more than an inference is required to prove

that they led to Wilkinson's termination.

The jurisprudence also establishes that the evidence Wilkinson has presented

is significantly weaker than what this Court has accepted as direct evidence of

discrimination in prior cases. For example, in *Portis*[88] the plaintiff, Judy Portis

("Portis"), sued her employer for gender discrimination after her demotion,[89] but the

District Court granted the defendant's motion for judgment as a matter of law.[90]

Portis provided evidence that on several occasions her supervisor told her she

---

[86]  *Wilson v. KRBE Radio, Inc.*, p. 8. 2005 WL 1155082 (S.D. Tex. May 4, 2005).
[87]  *Wilson*, p. 10. 2005 WL 1155082.
[88]  *Portis v. First National Bank of New Albany*, 34 F.3d 325 (5th Cir. 1994).
[89]  *Portis*, 34 F.3d 325, 326.
[90]  *Id*.

"wouldn't be worth as much as the men would be to the bank" and "she would be paid less *because she was a woman*."[91] This Court held that no inference was required to conclude that the plaintiff was treated differently because of her sex, and therefore, the statement constituted direct evidence of discrimination.[92]  In contrast, unlike the statements[93] made by the supervisor in *Portis*, the alleged comments of Rosa were not specifically directed towards Wilkinson, as they were in *Portis*.

In *Etienne v. Spanish Lake Truck & Casino Plaza*,[94] the plaintiff alleged that she was not being promoted to a managerial position because of her race. This Court held that the district court erred in granting the defendant's motion for summary judgment because direct evidence established plaintiff's *"prima facie"* discrimination claim.[95] The plaintiff presented an affidavit that stated the general manager allocated responsibilities to employees based on the color of their skin and did not allow "dark skin black persons to handle any money."[96] The general manager made a statements directed to the plaintiff that he thought the plaintiff "was too black to do various tasks."[97]  Although Wilkinson and the EEOC have relied on *Etienne*, they failed to show that Pinnacle discriminated against Wilkinson because Rosa's

---

[91]    *Id*. 34 F.3d at 329. (Emphasis added.)
[92]    *Id*. 34 F.3d at 329.
[93]    *See* fn. 90, *supra*.
[94]    *Etienne v. Spanish Lake Truck & Casino Plaza*, 778 F.3d 473 (5th Cir. 2015).
[95]    *Id*. at 477.
[96]    *Id.* at 476.
[97]    *Id.*

comments were not specifically directed to Wilkinson. Unlike the racial discrimination in *Etienne*, My Hospitality Services and Pinnacle allows Caucasians and males to be General Managers.[98] What's more, unlike *Ryan's Pointe*,[99] where a Hispanic female employee was replaced by a white female, Wilkinson was replaced by another American Caucasian male.[100]

As another example, in *Jones v. Robinson Property Group*,[101] the plaintiff alleged that he was not hired as a poker dealer because he was African-American. Evidence was presented by the plaintiff that the poker room manager responsible for the hiring decision stated "the[y] were not going to hire a black person unless there were extenuating circumstances."[102]  One of the employees stated that the poker room manager told him that, "maybe I've been told not to hire too many blacks in the poker room."[103] Additional evidence showed that the poker room manager used racially derogatory terms often and stated that "good old white boys don't want black people touching their cards."[104] This evidence constituted direct evidence of discrimination.[105] As these cases demonstrate, Wilkinson's so-called "direct"

---

[98]    ROA.269 [57:9-57:20].
[99]    *Ryan's Pointe,* 2022 WL 4494148.
[100]   *See* ROA.390 [No.14].
[101]   *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987 (5th Cir. 2005).
[102]   *Jones,* 427 F.3d at 991.
[103]   *Id.*
[104]   *Id*. at 993.
[105]   *Id.*

evidence of discrimination is far from the type of solid, impenetrable evidence[106] that this Court has previously held to be direct evidence of discrimination.[107]

### ii. Pinnacle produced evidence showing the "same decision" would have been made.

The District Court properly determined that Pinnacle showed by a preponderance of the evidence that the "same decision" would have been made to terminate Wilkinson based upon a myriad of factors, including[108] his poor job performance, regardless of any perceived discrimination by Pinnacle.

The District Court correctly found that the record evidence presented by Pinnacle reflects consistent and sufficiently supported nondiscriminatory reasons that satisfy its summary-judgment burden.[109] Throughout the District Court's decision, the Court emphasized that the uncontroverted testimony of Wilkinson's

---

[106]  The Appellant also alleges that *Campbell v. Fasco Indus., Inc.*, 67 F.3d 301 (7th Cir. 1995) is distinguishable from this matter, a case decided by the Seventh Circuit wherein summary judgment was granted and affirmed, despite the plaintiff's direct evidence of discrimination. However, *Campbell* is applicable to this matter.

In *Campbell*, the Court affirmed the holding of the trial court because it found that no reasonable jury could have found that Campbell was fired based upon discriminatory grounds. The Seventh Circuit in *Campbell* reasoned, "Campbell's conclusory statements, especially in regard to his own performance, are inadequate to counter the evidence that the district court properly found was 'overwhelming.' No reasonable jury could have found that Campbell was fired because of his age." *Campbell v. Fasco Indus., Inc.* 67 F.3d 301, p. *2.

Just as in *Campbell*, the decision of the District Court should be affirmed because the Appellee has provided overwhelming evidence from six witnesses to demonstrate that the Appellant was discharged based upon legitimate, non-discriminatory reasons. Likewise, no reasonable jury could find that the Appellant was fired based upon any discriminatory grounds.

[107]  *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177 (5th Cir. 2018); *Eaglin v. Texas Children's Hosp.*, 801 F. App'x 250 (5th Cir. 2020).

[108]  *See* fns. 11-17, *supra.*

[109]  ROA.1102.

supervisors and his termination letter establish that the "same decision" would have

been made and Wilkinson would have been terminated regardless of his protected

characteristics.[110]

Pinnacle disagrees there is direct evidence in this case. "Direct evidence is

evidence which, if believed, proves the fact without inference or presumption."[111]

"[S]tatements or documents which show on [their] face that an improper criterion

served as a basis—not necessarily the sole basis, but a basis—for the adverse

employment action are direct evidence of discrimination."[112] The evidence must be

**direct and unambiguous**, allowing one to conclude **without any inferences or**

**presumptions** that an impermissible factor motivated the decision.[113] Vague terms

are insufficient to plausibly plead discriminatory intent.[114] Even when a plaintiff

---

[110] ROA.1102; ROA.376-379.

[111] *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

[112] *Jones*, 427 F.3d at 993 (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003)).

[113] *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."). (Emphasis added.)

[114] *See*, e.g., *Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you people" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), R.&R. adopted, No. 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or indirectly race-based about the words "you people"), *aff'd* 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. First Service Residential, Inc.*, No. 20-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *See also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

perceives the use of a vague term as discriminatory, that subjective belief, no matter how genuine, cannot provide the basis for relief.[115]  Here, all of the comments relied upon by Wilkinson require more than an inference to connect the statements to his termination. Hence, Wilkinson failed to produce direct evidence of discrimination; Wilkinson has misinterpreted and ignored the District Court's findings.

Defendants have offered objective, legitimate and nondiscriminatory reasons for Wilkinson's termination. Wilkinson was fired based upon his poor work performance,[116] lack of leadership,[117] frequent absences,[118] and threats to quit.[119] Therefore, the comments at issue are not direct evidence of discrimination.

When asked the basis for Wilkinson's termination, Patel testified: "It was just a … lack of control, lack of his ability to control the hotel and lack of his – what do you call it? – lack of enthusiasm, lack of ability, lack of – just overall lack of performance."[120] Patel also believed that "Wilkinson did not show the type of leadership expected of a General Manager and was not proactive."[121]

---

[115]  *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)).

[116]  ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; ROA.376-379.

[117]  ROA.385 [ No. 7].

[118]  ROA.327 [26:18-26:22].

[119]  ROA.284 [120:11-120:16]; ROA.350 [118:18-118:23]; ROA.475 [242:18-242:25]; *See* fns. 11-17, *supra*.

[120]  ROA.282 [109:14-109:22].

[121]  ROA 385 [No. 7].

The trial court correctly found that Block and Rosa similarly provided nondiscriminatory reasons for Wilkinson's termination. When asked to list "every single reason that [he] had at the time that informed [his] decision to fire [Wilkinson]," Block responded:

> I don't recall every single reason, but I know the top one, example, um, rate management. Um, revenue management, he had no involvement with. That's a responsibility. Documenting employees, that's a responsibility. Any responsibility that falls under the GM, he was basically incapable of or refused to do it. Even when instructed how to do it, he'd come up with some excuse as to why he couldn't do it. So I don't remember every reason, but going from the personnel aspect that he didn't handle, the administration aspect which he didn't handle, financial aspect which he didn't handle, sales and marketing, absolutely nothing. So all those aspects of operating a hotel, he just did not fulfill his obligation to the company.[122]

Block continued: "[Wilkinson] did not develop into the GM that we needed to operate a hotel.... [J]ust about every responsibility of a GM, he was not up to par on that. The hotel was not doing well, and he made no efforts to improve."[123] Block also stated "[Wilkinson] had people do his responsibilities, *direct GM responsibilities that he should have been doing*, um, whether he'd just be too lazy, or didn't know how and didn't want to ask."[124]

---

[122]   ROA.327 [26:11-27:1].
[123]   ROA.327 [27:4-28:5].
[124]   ROA.327 [29:16-29:20]. (Emphasis added). Opposing counsel summarized Block's testimony during Block's deposition: "So what I've written down now, for all the reasons you had to fire Mr. Wilkinson: rate management, revenue management, documenting employees, failure to do his responsibilities, lack of marketing, didn't develop as a GM, hotel was not successful, lack of leadership, and a general perception that he didn't handle his administrative duties the way that he should."  ROA.328 [30:1-30:13].

Wilkinson's termination letter also establishes that Wilkinson would have been terminated regardless of his gender, race, or national origin. The letter details that Wilkinson (1) "failed to review, monitor and make recommendations towards rate management based on demand and area pricing," which resulted in lower than expected occupancy and loss of business; (2) represented that various tasks were completed when they were not; (3) failed to delegate tasks despite acknowledging that he needed to delegate them; and (4) threatened to quit on multiple occasions.[125]

The November 2019 inspection also revealed that Wilkinson had been dishonest with upper management on multiple occasions. Several items which Wilkinson told upper management were completed, were not completed at all, including light stay-fire inspection training and crisis management.[126] Further, the termination letter noted that training by Hotel staff was completed only a day prior to the inspection, and only after staff was forced to continue training sessions at home.[127]

While Wilkinson contends that only his supervisors, interested parties, provided testimony regarding his poor performance, Pinnacle provided testimony of Vanderhoff, an Assistant Manager, and Kim Schexnaydre ("Schexnaydre"), a Front

---

[125] ROA.376-379.
[126] ROA.376-379.
[127] ROA.376-379. Wilkinson, however, gave assurances to upper management on July 13, 2019, August 9, 2019, and October 4, 2019 that all staff training had been completed.

Desk supervisor at the Hotel.  The testimony of these non-interested witnesses shows that Pinnacle had grounds to terminate Wilkinson and would have reached the same decision to terminate him, regardless of any alleged discriminatory animus.

Vanderhoff, the Hotel's Assistant General Manager, believed that Wilkinson had zero leadership skills, was very manipulative, would play people against each other, and did not get much done during the day.[128] Further, Wilkinson rarely greeted guests and overall did not take is position as the General Manager seriously.[129] Schexnaydre testified that Rosa had to take charge of the Hotel when she became Regional Manager because Wilkinson was unmotivated and lacked the leadership skills to prepare the Hotel for Hilton's inspection on November 22, 2019.[130]

These reasons for Wilkinson's termination are nondiscriminatory. Accordingly, the District Court correctly found that "None [of the reasons for Wilkinson's termination] relates to Wilkinson's protected characteristics."[131]

### 3.    ROSA'S COMMENTS WERE "STRAY REMARKS," NOT DIRECT EVIDENCE OF DISCRIMINATION.

The District Court's holding should be affirmed because Rosa's comments, even if true, are merely "stray remarks" and are not direct evidence of discrimination. While Wilkinson contends that the lower court erred in failing to affirmatively

---

[128]   ROA.579 [28:9-28:16].
[129]   ROA.579 [28:18-28:21].
[130]   ROA.1075-1077.
[131]   ROA.1104.

determine that Rosa's comments were "stray remarks," Pinnacle is not required to challenge such findings of the District Court.

To establish that a comment is more than a stray remark, the Fifth Circuit requires a showing the comment was: (1) related to the plaintiff's status as a member of a protected class, (2) proximate in time to the adverse employment action, (3) made by someone "with authority over the challenged employment decision," and (4) related to the challenged decision.[132] The test focuses on "whether the comments prove, *without inference* or presumption, that race was *a* basis in employment decisions in the plaintiff's workplace."[133] Comments that do not meet these four criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment.[134]  In sum, Pinnacle demonstrated that Rosa's comments are "stray remarks" because a reasonable juror could not consider them to be insulting, and the comments did not give Wilkinson reason to reflect upon them.

---

[132]  *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 343 (5th Cir. 2002); *Daniel*, 2022 WL 1055578, at *5 (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015)).
[133]  *Etienne*, 778 F.3d at 476. (alterations in original omitted; emphasis in original); *Herster v. Bd. of Supervisors of Louisiana State University*, 887 F.3d 177 (5th Cir. 2018).
[134]  *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

### a.   Rosa's comments pertaining to race and national origin are stray remarks.

Wilkinson alleged that Rosa said that Mexican employees "work harder, faster, and cheaper"[135] than their white counterparts. However, this statement by Rosa, even if true, does not meet prong one of the test above. First, with regard to prong one, the statement that Mexican employees "work harder, faster, and cheaper"[136] does not in and of itself reasonably relate to Wilkinson's status as a member of a protected class. Rosa's statement, as set forth in Wilkinson's Amended Complaint, did not show any correlation with Pinnacle's decision to terminate Wilkinson. Accordingly, prong four cannot be met. Similar comments from a supervisor that she was going to "clean house" and "get rid of the older" employees were found not to be discriminatory.[137] Likewise, comments that the employer

---

[135]   ROA.79-80 [¶ 82]. *See*, e.g., *Burrell v. Lab. Ready, Inc*., 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you people" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), R.&R. adopted, 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, 06-401, 2008 WL 4534374, *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or indirectly race-based about the words "you people"), *aff'd*, 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. First Service Residential, Inc*., 20-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *Badaiki v. Schlumberger Holdings Corp.,* 4:20-CV-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), R.&R. adopted, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021), R.&R. adopted, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc*., 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted).
[136]   ROA.79-80 [¶ 82].
[137]   *Katseanes v. Time Warner Cable, Inc*., 511 F. App'x 340 (5th Cir. 2013).

"want[s] to replaced you-all with Hispanics"[138] have been found to be "stray remarks."

Even though Wilkinson can show he was a member of a protected class and was discharged, he failed to prove he was discriminated against because he was replaced shortly after his termination by Dansbury, a white American male.

Additionally, Wilkinson cannot maintain that Rosa discriminated against him based upon his race because Rosa was born in New Orleans, is of German descent, and her race is listed "Caucasian" on her birth certificate.[139] Block is also an American white male.[140] To date, Wilkinson has not presented any evidence that proves he was discriminated against based upon his race/color[141] or national origin.[142] Further, Wilkinson admitted in his deposition that he is not alleging that he was replaced by someone who is not white.[143]

In fact, Rosa never told Wilkinson or anyone else at the Hotel that Mexican or Latino employees work harder and cheaper.[144] Further, neither Vanderhoff nor Demille Topps ("Topps"), a former maintenance employee at the Hotel who was hired by Wilkinson, ever heard Rosa say that Latino employees work harder and

---

[138] *Eaglin*, 801 F. App'x. at 252.
[139] ROA.485 [282:25-282:4]; ROA.489 [300:15-19].
[140] ROA.374 [215:4-215:5].
[141] ROA.523 [113:17-114:20].
[142] ROA.522 [109:4-109:15].
[143] ROA.522 [109:22-109:25].
[144] ROA.284 [282:14-282:23].

cheaper.[145] And Patel has never heard Rosa say that Wilkinson was not a good manager because he was an American.[146] There is absolutely no corroboration of Wilkinson's self-serving allegations that Rosa made such statements.

Although Wilkinson may have taken offense that Rosa was trying to accomplish many tasks at the Hotel to get it ready for the mandatory inspection, mere conclusory statements or personal and subjective beliefs by an employee that he was discriminated against are not sufficient to prove discrimination.[147]  Here, Wilkinson simply failed to make a *"prima facie"* case of discrimination based upon race, nationality origin or color when he was replaced by another Caucasian male of American decent, particularly since he has not presented any admissible evidence to support any of his allegations.[148]

>      **b.    Rosa's alleged comments regarding discrimination based upon sex are also stray remarks.**

Rosa also allegedly told Wilkinson that (1) "male [general managers] don't make good general managers, and as far as [she] was concerned, [Wilkinson] shouldn't be here";[149] and (2) "females are more capable" than men.[150] On one occasion before a scheduled inspection, Rosa allegedly told Wilkinson that if the

---

145    ROA. 872[93:3-9]; ROA.581 [93:1-93:9]; ROA.588 [16:15-16:18];
146    ROA.271 [67:6-68:2].
147    *Plummer v. Marriott Corp.,* 94–2025 (La.App. 4th Cir.4/26/95), 654 So.2d 843, 849, *writ denied,* 95–1321 (La.9/15/95), 660 So.2d 460.
148    *See Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991). (Emphasis added).
149    ROA.1090; *See* also ROA.79 [¶ 81].
150    ROA.1090.

Hilton inspector were a woman, he would need to wear "tight pants" to distract her.[151]

Wilkinson also alleged when he found out that the Hilton inspector was a man that Rosa said that she would have a General Manager from another hotel with "big boobs" attend Hilton's inspection.[152] However, Rosa did not make arrangements for Megan Mahendra ("Mahendra") to attend the inspection[153] or dress provocatively.[154] Importantly, Rosa did not know Mahendra and had not met her until the day of the inspection.[155] Further, Rosa never told Wilkinson that he would have to wear tight pants, if the inspector were a woman.[156] Pinnacle provided testimony that neither Vanderhoff,[157] Topps,[158] nor Schexnaydre[159] ever heard Rosa make any discriminatory remarks about men.[160]

Despite Wilkinson's allegations that Pinnacle favors women as General Managers, Mahendra was also terminated by Pinnacle as the General Manager of the Home 2 Suites hotel in Gonzales, Louisiana due to her overall poor performance,

---

[151]   ROA.1090.
[152]   ROA.80 [¶ 88]. *See also* ROA.486 [285:3-285:10]; ROA.588 [17:4-17:9].
[153]   ROA.486 [285:11 – 287:21]; ROA. 492 [309:12-309:21].
[154]   ROA.492 [309:19-309:21].
[155]   ROA.492 [309:12 – 309:21].
[156]   ROA.485 [282:24 – 283:9]; ROA.588 [17:10 – 17:16].
[157]   ROA.580 [92:1-92:6].
[158]   ROA.580 [92:1-92:6]; ROA.588 [16:8-16:11].
[159]   ROA.1085-1087.
[160]   *See also* ROA.352 [126:10-127:1]; ROA.891:1-16].

just as Wilkinson was.[161] Consequently, Wilkinson's allegations that Pinnacle favors women as General Managers are meritless when Pinnacle has shown that female General Managers have also been terminated[162] for the same reason as Wilkinson.

While men are a protected[163] class, the alleged comments by Rosa do not meet prong four because they are only vague comments[164] that have no relation to Wilkinson's termination due to his inept performance in a managerial position. Under well settled law, discriminatory statements must be must be direct and unambiguous, allowing one to conclude without any inferences or presumptions that a discharge was intended.[165] Even if Rosa said that Wilkinson should not be there or be a General Manager, she never stated that there would be any resulting consequences. Given that the fourth criteria cannot be met, such comments must be considered "stray remarks," not evidence of discrimination.

Further, no juror could reasonably conclude that Rosa could or would "make" Wilkinson wear tight pants if the inspector was a woman. Consequently, Pinnacle has met its burden of proof to show that alleged Rosa's remarks, which Pinnacle

---

[161]  ROA.373 [213:6-214:13].

[162]  ROA.368 [191:23-192:25]. [Block discuss the termination of another black, female GM.]

[163]  *Newport News Shipbuilding & Dry Dock Co., v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d (1983).

[164]  *See also Spears v. Patterson UTI Drilling Co*., 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

[165]  *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

denies were ever said, if true, can only be considered stray comments under the law.[166]

This matter is more analogous to *Herster v. Bd. of Supervisors of Louisiana State University*,[167] wherein this Court determined that a comment by an associate professor's supervisor, Rod Parker ("Parker"), that the professor/plaintiff, Margaret Herster ("Herster"), was a "trailing spouse" and that she would want to "have babies" were stray remarks and not direct evidence of discrimination.[168]  Parker also told  Herster that she was acting like an "eight year old" and a "princess" when she asked for a raise.  This Court determined in *Herster* that the repetitive comments to the plaintiff "still requires an inference to reach the conclusion that Herster's gender served as basis for her compensation."[169] Consequently, this Court determined that the comments made by Parker are stray remarks that fail to provide direct evidence of gender discrimination.

Wilkinson has also implied throughout this litigation that Pinnacle discriminated against him on the basis of sex because a number of its General Managers are women. But Patel testified that his hotels probably have more women

---

[166]    *Herster v. Bd. of Supervisors of Louisiana State University*, 887 F.3d 177 (5th Cir. 2018).
[167]    *Herster*, 887 F.3d 177.
[168]    *Herster,* 887 F.3d at 187.
[169]    *Id.*

managers because *75% of the applicants for General Managers are women*.[170] This

supports an admission that Pinnacle does not discriminate based upon sex.

In another similar matter, *Wilson v. KRBE Radio, Inc.,*[171] the Court determined

that a man, an account executive for a radio station, could not prove he was

discriminated against after he was discharged when two women co-workers both

made comments to the effect that "women are smarter than men" and that "women

handle money better than men."[44] The plaintiff, Roby Wilson ("Wilson"), asserted

that his co-workers referred to themselves on a consistent basis as  "sales sisters"

and "girl power" demonstrating gender bias at sales meetings and in e-mails up to

the time of his termination.

The plaintiff alleged that defendants discriminated against him because he

was a man by failing to promote him, by reassigning two of his accounts, by

depriving him of credit for sales, and by discharging him. However, the court in

*Wilson* found in favor of the defendant/employer because Wilson failed to present

any evidence of pretext showing that the gender-based comments made by his

female co-workers were directed to him, made about him, or related to the decision

to discharge him.[172] In reaching its decision, the Court applied the law of this Circuit

and found "absent additional evidence of pretext, work place comments with no

---

[170]   ROA.268 [56:1-56:11; ROA.59:21-61:1]. (Emphasis added).
[171]   *Wilson v. KRBE Radio, Inc*., 2005 WL 1155082 (S.D. Tex. May 4, 2005).
[172]   *Wilson v. KRBE Radio, Inc*., p. 10, 2005 WL 1155082.

connection to an employment decision cannot create a fact issue regarding discriminatory intent.[173] Under the U.S. Fifth Circuit's jurisprudence, Rosa comments should be considered stray remarks, not evidence of discrimination.

### 4. THERE IS NO EVIDENCE OF PRETEXT IN APPELLANT'S RETALIATION CLAIM.

The trial court correctly found that dismissal of the Appellant's retaliation claim is warranted for his failure to show a genuine issue of fact regarding pretext. Wilkinson's retaliation claims are analyzed under the Title VII standard.[174] "Title VII protects an employee only from retaliation for complaining about the types of discrimination it prohibits."[175] When a Title VII retaliation claim is based on circumstantial evidence,  a court analyzes it under the *McDonnell Douglas* burden-shifting framework.[176] Under the *McDonnell Douglas* framework, the plaintiff-employee has the initial burden of establishing a *"prima facie"* case of retaliation by showing (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.[177] "If the plaintiff successfully establishes a *"prima facie"* case, the burden then shifts to the employer to introduce

---

[173]  *Wilson v. KRBE Radio, Inc.*, p. *10. 2005 WL 1155082 (S.D. Tex. May 4, 2005) citing *Scales v. Slater,* 181 F.3d 703, 712 (5th Cir.1999).
[174]  *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 834-35 & n.18 (5th Cir. 2022).
[175]  *Brackens v. Stericycle, Inc.*, 829 F.App'x 17, 21 (5th Cir. 2020) (quotation and citation omitted).
[176]  *Saketkoo*, 31 F.4th at 1000.
[177]  *Id*.

evidence of a legitimate, nonretaliatory reason for the adverse employment action."[178] If the defendant-employer meets its burden, the "'plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real retaliatory purpose.'"[179]

Here, the District Court correctly found that Wilkinson could not make a *"prima facie"* showing of retaliation because he has failed to show that he engaged in any activity protected by Title VII. Specifically, "protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[180] Thus, Title VII's antiretaliation provision outlines two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"); and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").[181] Wilkinson's alleged protected activity (complaining to Block about Rosa's comments) falls under the opposition clause. Under the opposition clause, an employee "cannot simply complain that she received unfair or

---

[178]    *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)).

[179]    *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)) (alteration omitted).

[180]    *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830-31 (E.D. La. 2012) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).

[181]    *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274, 129 S.Ct 846, 850, 172 L.Ed.2d 650, 653 (2009).

undesirable treatment,"[182] he must refer "to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practices."[183]

Although Wilkinson alleges he complained frequently to Block about Rosa's comments, he failed to make a *"prima facie"* showing of retaliation because he never said to Block that he thought Rosa's comments were discriminatory. Under the law, an informal complaint that does not indicate that the plaintiff views the employment practice as discriminatory is not protected activity.[184]

The record evidence is clear that while Wilkinson may have complained about Rosa being demanding to prepare for the inspection, there is no evidence indicating Wilkinson complained to Block that Rosa's comments, if true, were discriminatory based on his race, national origin, or gender. Block testified that while Wilkinson complained to him[185] about Rosa being hard on him to get work done, Wilkinson never said that Rosa's comments were discriminatory.[186] Although Vanderhoff knew

---

[182]   *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013).
[183]   *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017).
[184]   *Breeding v. U.S. Dep't of Interior*, at *8 14-948, 2015 WL 1809977 (E.D. La. Apr. 21, 2015).
[185]   ROA.350 [119:12-120:23].
[186]   ROA.350 [120:18-120:23].  *See* the following exchange between Russell Block and counsel for the Appellant:
    Q   Did Mr. Wilkinson ever tell you
    19   anything -- or, I should say, did he ever complain
    20   to you that Laura Rosa treated him or said anything
    21   to him that was discriminatory based on his sex,
    22   his race, his color, or his national origin?
    23        A   Not at all.

that Wilkinson complained to Block about Rosa, Wilkinson only told Vanderhoff that "he was not happy with Laura."[187]  Wilkinson's complaints about Rosa, therefore, fall into a category of criticisms "indistinguishable from non-race-based grumbling by an employee…[and] had no racial element."[188] Accordingly, they do not give rise of a claim of retaliation.

Of significance, the trial court correctly determined that nothing in the record supports Wilkinson's claim that he reported Rosa's behavior as discriminatory.[189] Accordingly, Wilkinson's retaliation claims fail because without evidence that Wilkinson complained he was discriminated against, based upon his protected characteristics, there is no protected activity.[190]

> **a.    Wilkinson cannot establish a genuine issue of fact regarding pretext.**

After a plaintiff establishes a *"prima facie"* case of retaliation, "the burden then shifts to the employer to articulate a legitimate ... nonretaliatory reason for its

---

[187]    ROA.580 [92:12-92:23]; ROA.352. [126:10-127:2]; ROA.871 [92:1-92:11].

[188]    *Breeding v. U.S. Dep't of Interior*, 14-948, 2015 WL 1809977 (E.D. La. Apr. 21, 2015) (citing (*Stewart v. RSC Equip. Rental, Inc.,* 485 F. App'x 649, 652 (5th Cir.2012).

[189]    *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

[190]    At the *"prima facie"* stage, a plaintiff need only show that " 'the protected activity and the adverse employment action are not completely unrelated.' "[190]  The Fifth Circuit "look[s] to three factors when considering the causal link prong [at the *"prima facie"* stage]: '(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination.'"*Valderaz v. Lubbock Cnty. Hosp. Dist.*, 611 F. App'x 816, 823 (5th Cir. 2015) (quoting *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007)).

employment action."[191] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[192]

The District Court correctly determined that Pinnacle met its burden of proof of showing that Wilkinson was terminated for a myriad of valid, non-discriminatory reasons,[193] and not for engaging in protected activity.[194] When the employer meets its burden of production, "the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose."[195] A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.[196]

To survive summary judgment at the pretext stage, a plaintiff "must do more than just dispute the underlying facts and argue that [the employer] made the wrong decision."[197] Instead, "a plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment

---

[191]  *McCoy*, 492 F.3d at 557 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

[192]  *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

[193]  *See* ROA.28 [109:14-22]; *See also*, ROA.327 [26:7-28:18]; ROA.376-379;  ROA.385 [No. 7]; ROA.327 [26:18-26:22]; ROA.284 [120:11-120:16]; ROA.380 [118:18-118: 23]; ROA.475 [242:18-242:25]. *See* fns. 11-17, *supra.*

[194]  ROA.1118. ["Without evidence that Wilkinson complained that he was being discriminated against based on his protected characteristics, there is no protected activity, and Wilkinson's retaliation claims fail. *See Saketkoo*, 510 F. Supp. 3d at 394-95"].

[195]  *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (citing *McCoy*, 492 F.3d at 557).

[196]  *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)).

[197]  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

action "but for" the protected activity."[198] Importantly, to carry his summary-judgment burden, "the plaintiff must rebut *each* nondiscriminatory or nonretaliatory reason articulated by the employer."[199] Evidence of pretext is evidence a reasonable jury could rely on "to disbelieve [an  employer's] proffered reason was it's true motivation" to fire the plaintiff.[200]

Classic evidence of pretext is that which tends to show that the proffered reason is "false" or "unworthy of credence."[201] But importantly, as the District Court noted, Wilkinson "fail[ed] to address each of the Defendants' nondiscriminatory reasons for his termination"[202] and "has not shown that each of Defendants' nonretaliatory explanations is false or unworthy of credence."[203] Pinnacle has met its burden and showed that Wilkinson would have been terminated without the protected conduct based upon his poor work performance,[204]  and a number of other non-discriminatory reasons.[205]

---

[198]  *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)).
[199]  *McCoy*, 492 F.3d at 557.
[200]  *Laxton v. Gap*, 333 F.3d 572, 579-80 (5th Cir. 2003).
[201]  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct 2097 (2000)
[202]  ROA.1122.
[203]  ROA.1123.
[204]  ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; ROA.376-379.
[205]  ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; ROA.376-379; ROA.385 [No. 7]; ROA.327 [26:18-26:22];  ROA.284  [120:11-120:16];  ROA.380  [118:18-118: 23];  ROA.475  [242:18-242:25]; *See* fns. 11-17, *supra*.

Wilkinson contends that the District Court also erred in by "fully crediting" the *post hoc* conclusions of Block, Rosa, and Patel that Wilkinson was a poor performer.[206] Under *Reeves*, Wilkinson contends, on a motion for summary judgment, the District Court may not credit against a nonmovant uncorroborated testimony source from an interested witness.[207] However these arguments fail on several grounds.

First, the testimony of Block, Rosa, and Patel that Wilkinson was a poor manager was corroborated by evidence presented[208] and by the testimony of other disinterested witnesses.  There was simply no countervailing evidence on summary judgment. For example, Vanderhoff and Schexnaydre both said that Wilkinson was not a good manager,[209] which required Rosa to intervene to get the Hotel ready for the Hilton inspection.[210] Vanderhoff also said that Wilkinson was manipulative, liked to play people against each other, did not get much work done during the day, and did not take his job seriously.[211]

Second, Pinnacle also presented corroborated evidence from disinterested witnesses that disputes Wilkinson's race, national origin and gender claims. Rosa never told Wilkinson or anyone else at the Hotel that Mexican or Latino employees

---

[206]    *See* Appellant Brief, p. 58.
[207]    *See* Appellant Brief, p. 58.
[208]    *See* ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; ROA.376-379.
[209]    *See* ROA.579 [28:4-28:21]; ROA.1085-1087.
[210]    *See* ROA.1085-1087.
[211]    *See* ROA.579 [28:9-28:21].

work harder and cheaper.[212] In particular, Vanderhoff and Topps never heard Rosa say that Latino employees work harder and cheaper.[213]  Further, Schexnaydre testified that she never heard Rosa make any remarks such as Mexican employees "work harder and cheaper.'[214]

With regard to Wilkinson's claim for sexual discrimination, neither Topps,[215] Vanderhoff,[216] nor Schexnaydre[217] ever heard Rosa say that men should not be General Managers because they were not detail oriented[218] or that Wilkinson should not be a General Manager.[219] Additionally, Vanderhoff, confirmed that she never heard Rosa use any language wherein she discriminated against men.[220]

Lastly, Wilkinson suggests that Vanderhoff testified that "the paper work was all in order," for the Hotel inspection but that is only because other members of the Hotel staff finished preparing the necessary paper work at home, the day prior to the inspection, because Wilkinson failed to complete the work.[221]

---

[212]   ROA.485, [282:14-282:23].
[213]   ROA.581, [93:1-93;9]; ROA.588 [16:15-16:18]; ROA.871 [92:1-16].
[214]   ROA.1076 [¶ 8].
[215]   ROA.588 [16:8-16:11; 16:12-16:14]
[216]   ROA.580 [92:1-92:6]; ROA.580 [92:7-92:11].
[217]   ROA.1085-1087.
[218]   ROA.588 [16:8-16:11].
[219]   ROA.588 [16:12-16:14].
[220]   ROA.580 [92:7-92:11].
[221]   ROA.376-379.

**b.    Rosa's alleged threat is not substantive or pervasive.**

Wilkinson also claims that Rosa threatened him by allegedly saying "You're not getting rid of me. I'm going to be here"[222] after he complained to Block that she was hard on him. The comment does not relate to Wilkinson's termination but the possibility of Rosa's termination. The aforesaid comment is also vague and insufficient to plausibly be considered discriminatory.[223] Again, when a plaintiff perceives the use of a vague term as discriminatory, that subjective belief cannot provide the basis for relief.[224]

**c.    Wilkinson has not met his burden to show that Pinnacle's reasons for terminating Wilkinson constitute pretext.**

Wilkinson has argued that "the district court seemed to concede" that the "plaintiff established his *'prima facie'* case of retaliation."[225] But, again, Wilkinson misstates the trial court's findings. Specifically, the District Court concluded that "Because Wilkinson cannot establish a genuine issue of fact regarding pretext as to Defendants' nonretaliatory reasons for his termination, his retaliation claims must be dismissed."[226] In reaching this conclusion, the District Court set forth three well-

---

[222]    ROA.525 [123:11-123:15].
[223]    *See Spears v. Patterson UTI Drilling Co*., 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).
[224]    *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)).
[225]    *See* Appellant's Brief, p. 55.
[226]    ROA.1124.

grounded reasons for determining that Wilkinson did not meet his burden of proof.

First, the District Court found Wilkinson failed to address each of Pinnacle's nonretaliatory reasons for his termination.[227] The District Court correctly determined that Pinnacle articulated several varied reasons for his termination. Second, the lower court determined that Wilkinson did not raise a genuine issue of fact regarding pretext's because he fails to present evidence of: (1) disparate treatment; or (2) facts that casts doubt on the credence of Pinnacle's proffered justifications for his termination. Of significance, the District Court found that Wilkinson did not show that each of Pinnacle's proffered non-retaliatory explanations for terminating Wilkinson is false or unworthy of credence.[228] The lower court also noted that Wilkinson implies that temporal proximity establishes pretext, but found that it is insufficient alone to demonstrate that a proffered reason is pretextual.[229]

Third, the trial court held that Wilkinson did not establish "but for" his complaints about Rosa's conduct, his termination would not have occurred. Here, Pinnacle clearly demonstrated in the lower court that Wilkinson's employment would have been terminated regardless of his race, national origin, or sex. Given that Wilkinson has failed to provide any evidence that Pinnacle's reasons for

---

[227] ROA.1122.
[228] ROA.1123.
[229] *Brown*, 969 F.3d at 579 (citing *Strong v. Univ. Healthcare Sys.*, *LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

terminating Wilkinson are false or unworthy of credence, the Appellant has failed to meet his burden to prevent the dismissal of his retaliation claim.

### d.    Wilkinson's cases are inapplicable and can be distinguished.

Wilkinson cites *Ryan's Pointe,*[230] as applicable on the basis that this Court noted in it that "the record contains evidence suggesting [management's] justification was pretextual" with respect to the [intervenor's] pregnancy – discrimination claim.[231]    Although this Honorable Court in *Ryan's Pointe* determined one of the plaintiff's managers testified that the Plaintiff/Intervenor was a "poor performer,"[232] there are no other similarities in the two cases.

As noted above, the plaintiff/intervenor in *Ryan's Pointe* was a woman who was born in Mexico and replaced by an American, Caucasian woman that looked like a "Barbie and Ken." Unlike in *Ryan's Pointe*, where the plaintiff/intervenor was replaced by someone outside of her protected class, Wilkinson was replaced by Dansbury, another Caucasian, American male.[233]

Further, the supervisor's comments in *Ryan's Pointe* were much more pervasive and offensive than those allegedly articulated by Rosa. For example, Villalobos's supervisor told her that she should consider getting an abortion because

---

[230]    *EEOC v. Ryan's Pointe Houston*, No. 19-20656, 2022 WL 4494148.
[231]    Appellant's Brief, p. 57.
[232]    *Ryan's Pointe*, p. *1-5, 2022 WL 4494148.
[233]    ROA.390 [No.14].

her "job was taking off."[234] And unlike in *Ryan's Pointe*, where the evidence showed

that some of the reasons for Villalobos's termination were pre-textual, multiple

witnesses in this matter testified Wilkinson was terminated for cause for numerous

and varied reasons, including:[235] failure to complete his administrative duties,[236] and

lack of performance.[237] As set forth above, Vanderhoff[238] and Schexdaydre,[239] also

testified about Wilkinson's short comings and reasons for termination.  Accordingly,

Pinnacle has shown the reasons for Wilkinson's termination were not merely

pretextual, but were justified reasons for his release.[240]

---

[234]  *Ryan's Pointe*, p. *7, 2022 WL 4494148.
[235]  *See* ROA.282 [109:14-22]; ROA.327 [26:7-28:18]; *See also* ROA.376-379; ROA.282, [109:14-22]; ROA.327 [26:7-28:18]; ROA.284 [120:11-120:16]; ROA.350 [118:18-118:23]; ROA.475 [242:18-242:25]. Interestingly, during the deposition of Block, counsel for the Appellant himself summed up many of the reasons why the Appellant was terminated, which included  "rate management, revenue management, documenting employees, failure to do his responsibilities, lack of marketing, didn't develop as a GM, hotel was not successful, lack of leadership, and a general perception that he didn't handle his administrative duties the way that he should. ROA.328, [30:1-30:13].
[236]  ROA.328 [30:1-30:8].
[237]  ROA.385 [No. 7].
[238]  *See* fn. 11-17, supra.
[239]  *See* fn.135 *supra*; ROA.1085-1087.
[240]  Additionally, Wilkinson cites *Simmons v. Pacific Bells, LLC*, 787 Fed.App'x. 837 (5th Cir. 2019) as applicable, but it is not because the plaintiff's cause of action is not based upon federal or state law regarding discrimination, but a state law precluding an employer to "persuade or to attempt to persuade any juror to avoid jury service." Miss. Code Ann. §13-5-35. The court narrowed the *Simmons'* matter down to one issue, which was whether Simmons was fired for his refusal to lie when he was an at will employee who may have had some protection under a Mississippi statute. However, given the Appellant has made various discrimination claims under federal and state law, *Simmons* cannot apply because a different burden of proof must be met.

### e.     Pinnacle has offered testimony from objective sources.

In the last section of Wilkinson's brief addressing the issue of pretext in Wilkinson's retaliation claim, he states that the Pinnacle did not offer any testimony of non-interested parties in this case. In contrast, Pinnacle offered the testimony of Vanderhoff, Schexnaydre, and Topps who are all disinterested parties. Vanderhoff testified that Wilkinson has no leadership skills, was very manipulative, would "play people against each other," and did not get accomplished during the day.[241] Further, Vanderhoff said Wilkinson rarely greeted guests and overall did not take is position as the General Manager seriously.[242] Likewise, Schexnaydre knew that Wilkinson was unmotivated and lacked the leadership skills to prepare the Hotel for Hilton's inspection, essentially requiring Rosa to do Wilkinson's work for him when she became Regional Manager.[243] Topps never heard Rosa make any discriminatory comments about Caucasians, Americans,[244] or men.[245] Thus, Wilkinson's arguments again fail.

---

[241]   ROA.579.
[242]   ROA. 579.
[243]   ROA.1085.
[244]   ROA.588 [16:15-16:18].
[245]   ROA.588 [16:8 -16:14].

5.    **THE TRIAL COURT DID NOT ERR IN FINDING THAT THE APPELLANT'S LEWA AND LWA CLAIMS FAIL BECAUSE THERE IS NO GENUINE ISSUE OF FACT REGARDING PRETEXT.**

a.    **There is no clear evidence of state law Whistleblower retaliation, despite Wilkinson's allegations.**

Wilkinson contends that he properly set forth his whistleblower claims under the Louisiana's Environmental Whistleblower Act, La. R.S. 30:2027 ("LEWA") or, in the alternative, a violation of Louisiana's Whistleblower Act, La. R.S. 23:967 ("LWA") on the basis that he reported the existence of mold at the Hotel. However, Wilkinson's arguments fail because the District Court properly found that reporting mold is not a protected activity under the law.[246] Accordingly, Wilkinson cannot maintain his whistleblower claims because the remedies under La. Rev. Stat. Ann § 30:2027 *et seq.*, La. Rev. Stat. Ann. § 23:967 are inapplicable.[247]

Regardless, for the sake of responding to Wilkinson's allegations, Pinnacle will address the deficiencies in Wilkinson's arguments. The District Court correctly

---

[246]    ROA.1115 [fn.95].

[247]    The fact that Wilkinson did not determine or could not get his staff to determine the source of the mold also shows his lack of motivation and inability to be an effective General Manager. While the Hotel had a maintenance department, Wilkinson hired persons to fill vacancies in the department without any experience performing maintenance work, such as Demille Topps. ROA.587 [Deposition of Topps, 13:5-13:7. Q: Did you perform maintenance [work] anywhere else? A: No.] Patel testified that most of the mold was caused by broken bathroom vent motors on the Hotel's roof. ROA.277 [91:8-91:19].

determined that claims made under the LEWA[248] and LWA[249] are analyzed under the *McDonnell Douglas* framework.

The District Court correctly determined that even if Wilkinson could establish a *"prima facie"* case under the LEWA and the LWA, his whistleblower claims fail because "he cannot show that a genuine issue of fact regarding pretext exists."[250] Of significance, Wilkinson has provided no evidence whatsoever that he was fired for reporting the presence of mold at the Hotel. As discussed in more detail below, Wilkinson has not provided any evidence that Pinnacle broke any laws or violated any statutes pertaining to mold at the Hotel.

---

[248]   *Breaux v. Rosemont Realty*, 768 F. App'x 275, 277-78 (5th Cir. 2019) (citing *Roberts v. Fla. Gas Transmission Co.,* 447 F. App'x 599, 601 (5th Cir. 2011)) (applying the *McDonnell Douglas* framework to a LEWA claim).

[249]   *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018) (*citing, inter alia, Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 n.1 (5th Cir. 2007) ("the standards governing both claims [under Title VII § 23:967] are materially indistinguishable"); *Smith v. AT&T Sols.*, 90 F. App'x 718, 723 (5th Cir. 2004) ("[w]hile the Louisiana Supreme Court has not spoken directly on whether [Title VII's] framework applies to section 23:967 cases, Louisiana courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes"); and *Tatum v. United Parcel Serv., Inc.*, 79 So. 3d 1094, 1103-04 (La. App. 2011)); *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 328 (5th Cir. 2008) (" 'The appropriate framework for analyzing a retaliation claim under the Louisiana whistleblower statute is the same as that applied in Title VII retaliation cases.' ") (quoting *Smith v. AT&T Sols., Inc.*, 90 F. App'x 718, 723 (5th Cir. 2004) (alteration omitted)).

[250]   *See* ROA.1134.

**b.      The Trial Court correctly found that Wilkinson cannot maintain his action for unlawful disparate treatment based on retaliation in violation of the Louisiana Environmental Whistleblower Statute, La. R.S. 30:2027.**

Wilkinson cannot maintain his cause of action against Pinnacle under La. R.S. 30:2027[251] because Wilkinson was terminated due to his poor job performance[252] and insubordination,[253] – not for reporting the existence of mold at the Hotel. My Hospitality, Pinnacle, and Patel were already aware of the mold issues by late 2018 or early 2019[254] when Wilkinson was acting as the Hotel's General Manager.

To establish a *"prima facie"* case of retaliation under section 30:2027(A), a "plaintiff must prove: (1) that [he] engaged in a protected activity; (2) that an adverse employment decision followed; and (3) that a causal connection between the two

---

[251]   La. R.S. 30:2027 states:

> A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:
> (1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.
> (2) Provides information to, or testifies before any public body conducting an investigation, hearing, or inquiry into any environmental.[251]

[252]   ROA.326 [22:25-23:21].
[253]   ROA.491 [305:5-305:17].
[254]   ROA.274 [77:1-77:17].

existed."[255] To prevail on claim under the LEWA, an employee must show that employer's adverse employment action was motivated by employee's disclosure of environmental violation.[256]

To show a causal connection, the LEWA requires a plaintiff to prove that he suffered an adverse employment action was *specifically motivated* by the employee's internal or external disclosure of an event reasonably believed to be a violation of environmental laws or regulations.[257] The employer [must have] fired the employee *because* the employee committed the 'wrong' of whistleblowing ...."[258]

Wilkinson cannot establish a *"prima facie"* case of retaliation under section §30:2027(A) because reporting the existence of mold in a Hotel is not a protected activity.[259] Again, Pinnacle knew about the existence of mold in the Hotel and had

---

[255]  *Myers v. BP America, Inc.,* 6:08-0168, 2010 WL 3878920, at *6 (W.D. La. 09/28/2010) (citing *Gonzalez v. J.E. Merit Constructors, Inc*., 263 F.3d 162, 2001 WL 803545, at *2 (5th Cir.2001); *Powers v. Vista Chem. Co*., 109 F.3d 1089, 1095 (5th Cir.1997)).

[256]  *Powers v. Vista Chemical Co*., C.A.5 (La.)1997, 109 F.3d 1089.

[257]  *Powers,* 109 F.3d at 1094.

[258]  *Powers,* 109 F.3d at 1094-1095.

[259]  Although there are five elements a plaintiff must prove to maintain a cause of action under the Louisiana Environmental Whistleblower Statute, it is not necessary for Pinnacle to address these because reporting mold is not a protected activity, and Wilkinson has provided no evidence that he was terminated for reporting the mold. For the sake of completeness, however, the five requirements for a cause of action under the Louisiana Environmental Whistleblower Statute are: 1) employee acts in good faith; 2) employee reports, or threatens to report, a violation; 3) employee reasonably believes the activity, policy, or practice undertaken by his employer, or another employer with whom there is a business relationship with his employer, is a violation of an environmental law; 4) employee reports, or threatens to report, the violation to a supervisor or to a public body of the employer; and 5) employer acts in retaliatory manner because the employee reported, or threatened to report, a violation. *Collins v. State of Louisiana, through Dept. of Natural*

hired a company based in Memphis, Tennessee[260] to remediate the mold and another company from Atlanta to replace the wallpaper.[261]

Wilkinson cannot maintain his cause of action against Pinnacle under the LWEA because the Appellees were already aware of the potential mold issues when they purchased a twenty-year-old Hotel. Further, Wilkinson has provided no evidence that he was fired for reporting mold at the Hotel under La. R.S. 30:2027.

> ### c.     The trial court correctly found Wilkinson cannot maintain Whistleblower claims under La. R.S. §23:967.

The same is true for Wilkinson's claim under the Whistleblower statute for disparate treatment. The Louisiana Supreme Court has not interpreted the Louisiana Whistleblower Act[262] (LWA), La. R.S. §23:967, but there is consensus that a plaintiff is required to prove the employer, not simply its employees, committed an

---

*Resources,* 2012-1031 (La. App. 1st Cir. 05/30/13), 118 So.3d 43, 49.

[260]   *See* ROA.276-277 [88:13-90:19]; ROA.279 [99:23-100:5].

[261]   *See* ROA.279 [99:23-100:8].

[262]   The statute governing the Louisiana Whistleblower Act (LWA), in pertinent part, states:
   A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
   (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
   (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
   (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
   B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

actual violation of a statute or law, not just a good faith belief that a violation has occurred.[263]

Although binding only in some jurisdictions[264] a plaintiff under the Whistleblower Statute must show that "(1) the defendant violated state law; (2) he informed defendant of the violation; (3) he refused to participate in the violation or threatened to disclose the practice; and (4) he was fired as a result of his refusal or threat." [265] To state a *"prima facie"* claim under the Louisiana Whistleblower Statute, a plaintiff must establish that he possessed the knowledge that a certain workplace practice amounted to a violation of state law at the time he refused to participate in the practice or informed the employer of his intention to report the practice to the authorities.[266]

In light of these criteria, Wilkinson did not meet his burden of proof under prong one of *Hale v. Touro Infirmary*[267] because Pinnacle did not violate any state

---

[263]  *Brown v. ICF Int'l,* 07-931-JJB, 2011 WL 5548962 (M.D. La. Nov. 15, 2011); *See also, Gautreau v. EnLink Midstream Operating GP, LLC,* 21-0796 (La. App. 1 Cir. 05/25/22), 342 So.3d 939, *writ denied,* 2022-1010 (La. 10/12/22), 2022 WL 6938247. *Stevenson v. Williamson,* 547 F.Supp.2d 544 (M.D. La. 04/09/08), *affirmed,* 324 Fed.App'x 422, 2009 WL 1310988; *Hale v. Touro Infirmary*, 04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 05-0103 (La. 3/24/05), 896 So.2d 1036; *Murray v. Louisiana,* 2011 WL 703653 (M.D.La.2011).

[264]  *See also Beard v. Seacoast Electronics, Inc.*, 2006-1244 (La. App. 4 Cir. 01/24/2007), 951 So.2d 1168, 1170. (Treating *Hale* as "binding precedent on this court."); *Brown v. ICF Int'l*, 07-931-JJB, 2011 WL 5548962 (M.D. La. Nov. 15, 2011).

[265]  *Hale v. Touro Infirmary*, 04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 05-0103 (La. 3/24/05), 896 So.2d 1036.

[266]  *Williams v. Hosp. Serv. Dist. of W. Feliciana Par., Louisiana*, 15-95, 2017 WL 4335023, at *3 (M.D. La. 09/28/17).

[267]  *Hale v. Touro Infirmary*, (La. App. 4 Cir. 11/3/04), 886 So.2d 1210.

law although some parts of the 20-year Hotel contained mold. Despite Wilkinson has maintained that he asserted "predicate violations"[268] of La. Rev. Stat Ann. §23:13 (relative to the defendant's failure to "furnish which shall be reasonably safe for the employees therein") and of La. Admin Code tit. 51 §123 (relative to damp floors), he did not prove Pinnacle violated state law. Further, violations of La. Rev. Stat Ann. §23:13 and La. Rev. Stat Ann. §23:13 are not protected activities.

Wilkinson cannot meet prong two under *Hale* because Pinnacle was aware of the mold at the Hotel before Wilkinson discussed any aspect of the mold with Pinnacle. Further, Wilkinson presented no evidence that he informed Pinnacle that it had violated La. Rev. Stat Ann. §23:13 and La. Admin Code tit. 51 §123 (relative to damp floors). Wilkinson had a company credit card[269] that he could have used to purchase protective equipment. Moreover, Patel retained a construction crew from Memphis and another company from Atlanta to change the wallpaper to renovate the Hotel.[270]

Wilkinson cannot meet prong three because he had the ability to use his company credit card to purchase safety equipment for his staff when the Hotel tried to contain the mold infestation. Lastly, Wilkinson failed to meet prong four because,

---

[268]  Appellant's Brief, p. 61.
[269]  ROA.463 [96:9-196:10]; ROA.490 [303:13-303:22]; ROA.533 [53:16-153:20]; ROA.1012 [16:2-16:20].
[270]  *See* ROA.277 [(90:16-91:19; ROA.279 [100:2-100:8].

as the District Court correctly found, Wilkinson was not terminated for discussing the existence of mold at the Hotel with upper management, but was fired for cause based upon numerous, independent, non-discriminatory grounds.[271]

Further, Wilkinson alleges that Block and Rosa may have fired him because no one should have been using bleach and water to try to clean the mold at the Hotel.[272] But there is no admissible record evidence that Wilkinson was fired because Pinnacle did not want anyone to know that the Hotel management initially recommended that the rooms be cleaned with bleach.[273] Accordingly, Wilkinson has again failed to meet his burden of proof because summary judgment may not be thwarted by conclusional allegations or unsupported assertions.[274]

When an employer proffers legitimate and nondiscriminatory reasons for a termination under La. Rev. Stat. Ann §23:967 and the employee fails to show that such reasons were pretext, as here, this Honorable Court should affirm the decision of the trial court.[275] Based upon this precedent, Wilkinson failed to show that the reasons provided for his termination were merely pretextual.

---

[271]    ROA.376-379.

[272]    Appellant's Brief, p. 63.

[273]    Again, the Appellant did not retain any experts to introduce evidence about whether the presence of mold at the Hotel was dangerous or how the mold should have been remediated.

[274]    *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

[275]    *Stevenson v. Williamson,* 547 F.Supp.2d 544 (M.D. La. 2008).

**d.      Wilkinson could have used his company credit card to purchase protective equipment for his staff**.

Wilkinson also has alleged that his managers were creating an unsafe work environment by failing to provide his staff with proper protective equipment.[276] If any of Wilkinson's employees complained about not having proper protective gear, it is another example of how Wilkinson failed as General Manager because Wilkinson had a company credit card[277] that he could have used to purchase protective equipment.[278] By way of example, Adrienne Adams, the General Manager of the Holiday Inn in Covington,[279] allowed her maintenance technician to use her company credit card to buy a disposable suit, mask, and gloves to cut out sheet rock to prevent mold from spreading.[280]

## 6.      WILKINSON'S HOSTILE WORK ENVIRONMENT ARGUMENTS FAIL.

Wilkinson maintains in his last argument that Rosa's harassment was "severe, pervasive, and destructive"[281] without citing a single case and citing only one finding of the District Court. More importantly is that Wilkinson fails to put forth evidence to demonstrate that he can make a *"prima facie"* showing of harassment.

---

[276]   Appellant's Brief, p. 60.
[277]   ROA.533 [153:14-153:20]; ROA.463 [196:9-196:10].
[278]   ROA.463 [196:9-10]; ROA.490 [303:17-303:22].
[279]   The Holiday Inn in Covington is another hotel that is owned and managed by My Hospitality/Pinnacle.
[280]   ROA.1012 [16:2-16:20].
[281]   Appellant's Brief, p. 71, 72.

To survive summary judgment on a hostile work environment claim, a plaintiff must show that "(1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.' "[282] For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[283]  However, Wilkinson has continued to fail to demonstrate how he meets any of the foregoing elements to show that he can establish a claim of harassment. The District Court specifically found that "Wilkinson devotes just two sentences in support of his claim [for his hostile work environment claims] …[and] offers no additional specific evidence in support of his hostile work environment claim."[284]

In determining whether a work environment is discriminatorily abusive, the fact finder looks at all of the circumstances, such as: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct is physically

---

[282]  *Wantou v. Wal-Mart Stores Texas, LLC*, 23 F.4th 422, 432 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)).
[283]  *Id.* (quoting *West v. City of Houston, Texas*, 960 F.3d 736, 741-42 (5th Cir. 2020).
[284]  ROA.1128.

threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) the effect on the employee's psychological well-being.[285]

For racist comments, slurs, and jokes to constitute a hostile environment, there must be more than a few isolated incidents of racial enmity. Incidents of rude behavior without more are insufficient to create an actionable hostile work environment claim.[286]  Title VII does not prohibit all harassment.[287]

The Supreme Court has summed up the jurisprudence concerning hostile environment harassment as follows:

> [The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that **conduct must be extreme** to amount to a change in the terms and conditions of employment.... (Citations omitted). [288]

This Circuit has made it clear that "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute

---

[285]  *Id.,* 877 So.2d at 1220–21.

[286]  *Hicks v. Central Louisiana Elec. Co. Inc*., 97–1232 (La. App. 1st Cir. 5/15/98), 712 So.2d 656.

[287]  *Bye v. MGM Resorts Int'l, Inc*., 49 F.4th 918, 923(5th Cir. 2022) (citing *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019), *as revised* (Feb. 7, 2019)).

[288]  *Bye v. MGM Resorts Int'l, Inc*., 49 F.4th 918, 923(5th Cir. 2022). (Emphasis added).

actionable adverse employment actions as discrimination or retaliation."[289]

It is apparent that Wilkinson does not consider Rosa's alleged comments extreme or pervasive because by his own account, he "laughed at it and moved on."[290]  While Wilkinson has maintained the comments were made for four months, his own wife's testimony, *albeit* hearsay evidence, shows otherwise. Kristen Garrett Wilkinson, Wilkinson's wife ("Mrs. Wilkinson"), is the only witness who provided live testimony suggesting Wilkinson said that Rosa made any disparaging comments. But Mrs. Wilkinson said that the remarks lasted for only a couple of weeks to a month.[291] Even if such comments were true, they were not as frequent or severe as required to maintain such an action under the law.[292]

Wilkinson has alleged Vanderhoff's testimony reflects that he thought he was "targeted" by Rosa, but such a claim is also meritless. The courts have found that a plaintiff's subjective belief that defendants discriminated against him on basis of race and national origin is insufficient to create genuine issue of fact where the defendants have come forward with a legitimate, nondiscriminatory reason for their employment action.[293]

---

[289]  *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (internal quotation marks omitted).
[290]  ROA.523 [116:17-18].
[291]  ROA.607 [47:2-47:10].
[292]  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
[293]  *Stevenson v. Williamson*, 547 F. Supp.2d 544 (M.D. La. 04/09/08).

Vanderhoff testified that Wilkinson just wanted to believe, in his own mind, that Rosa did not like men or Caucasians.[294] Vanderhoff also said Wilkinson "was just kind of saying it [that Rosa does not like men or white people] out in the air."[295]

As part of his claim for harassment, Wilkinson again raises the fact he complained to Block about Rosa's comments. But the lower court correctly found that there is no evidence[296] that when he complained to Block that he specifically complained about Rosa's discriminatory comments. Given that the testimony of Block, Rosa, and Vanderhoff also reflects that Wilkinson did not make any particular complaints to Block that he believed that Rosa's alleged comments were discriminatory, Wilkinson failed to prove that he was harassed. The lower court correctly found that "Rosa's statements, while offensive, do not equate to the reprehensible, offense-laden racial epithets the Fifth Circuit has found sufficient to state a claim for hostile work environment."[297] As an example, the lower court cited

---

[294]    ROA.582, [94:1-94:6].

[295]    ROA.582 [94:19-94:25].

[296]    The District Court correctly determined:

"There is no evidence that Wilkinson complained about experiencing discrimination based on his gender, race, or national origin sufficient to put Defendants on notice that Rosa's conduct was discriminatory based on any protected characteristics. *See Wilkerson*, 2021 WL 4989899, at *14 (finding that plaintiff's complaints, which failed to implicate plaintiff's protected status or give any notice that employer's conduct was discriminatory, did not constitute protected activity); *see also Saketkoo*, 31 F.4th at 1000 (concluding that there was no evidence plaintiff engaged in a protected activity where plaintiff "did not ... allege that she complained about experiencing gender-based discrimination sufficient to put [her employer] on notice"). *See Saketkoo*, 510 F. Supp. 3d at 394-95." ROA. 1118.

[297]    ROA.1129.

*Woods v. Cantrell*,[298] wherein a supervisor used racially epithets in front of fellow employees.  This Court found that the plaintiff stated an actionable claim.

The trial court correctly found that Rosa's alleged statements were not so frequent or extreme enough to be akin to other actions the Fifth Circuit has held could constitute a hostile work environment. Courts in the Fifth Circuit have "consistently held that conduct worse than Rosa's inappropriate but limited statements[299] has failed to reflect the severity or pervasiveness as would give rise to a claim."[300] Consequently, Wilkinson's claim Pinnacle of harassment has failed.

---

[298]  *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022). The supervisor called the plaintiff a "Lazy Monkey A__ N__" in front of his fellow employees.

[299]  ROA.1129. *See, e.g., Abbt v. City of Houston*, 28 F.4th 601, 608 (5th Cir. 2022) (holding that "a reasonable person could consider the repeated viewing of her intimate, nude video by her coworkers to be sufficiently severe to constitute sexual harassment" and "objectively create[ ] a hostile work environment").

[300]  ROA.1129. *See, e.g., Fisher v. Bilfinger Indus. Servs. Inc.*, 20-30265, 2021 WL 5272214, at *1 (5th Cir. Nov. 11, 2021) (concluding that boss "repeatedly" calling black employee "boy" was insufficient); *Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 374 (5th Cir. 2019) (concluding that plaintiff did not allege sufficiently severe or pervasive conduct where he worked for employer for six years, but his allegations regarding harsher job assignments concerned only one ten-day period); *Buisson v. Bd. of Supervisors of La. Cmty. & Tech. Coll. Sys.*, 592 F. App'x 237, 245 (5th Cir. 2014) (concluding that supervisor calling Asian-American employee "chink" one time was insufficient); *Williams v. City of Port Arthur*, 1:20-527, 2022 WL 1183293, at *8 (E.D. Tex. Feb. 25, 2022) (finding that supervisor's single statement to black plaintiff that she would "never hire another black person" was not sufficiently severe or pervasive enough to support hostile-work-environment claim), *adopted*, 2022 WL 866407 (E.D. Tex. Mar. 23, 2022).

## APPELLEES' RESPONSE TO THE EEOC'S BRIEF

### A.  THE DECISION OF THE DISTRICT COURT SHOULD BE AFFIRMED.

#### 1.  ALL ARGUMENTS BASED UPON THE 1991 AMENDMENT TO THE CIVIL RIGHTS ACT ARE WAIVED AND FORFEITED.

The EEOC contends that the  changes to Title VII  of the Civil Rights Act of 1991 (sometimes "Amendments") should be addressed by this Court to "clarify the correct standard in this case."[301]  The EEOC argues that "under Title VII, if the plaintiff proves a violation under §2000e-2(m) and the employer demonstrates that it 'would have taken the same action in the absence of the impermissible motivating factor,' liability still attaches to the employer, but the court may only award limited relief to the plaintiff."[302]

The EEOC argues that because the District Court determined that Wilkinson likely supplied "direct evidence of race – based or national – origin – based discrimination" that should have ended the liability analysis on summary judgment. However, this Honorable Court is precluded from addressing whether the District Court's "likely" finding should end the liability analysis on summary judgment because the Appellant did not raise this argument in either his Response in

---

[301]  EEOC's *Amicus Curiae* Brief ("EEOC's Brief"), p. 17.
[302]  §2000e-5(g)(2)(B). *Nassar*, 570 U.S. 338, 349.

Opposition to Defendants' Motion for Summary Judgment[303] or in his Appellant Brief.[304] Accordingly, Wilkinson waived and forfeited whether the District Court should have ended its liability analysis when it found that it may have presented direct evidence of race, national origin or sex discrimination.

The law in this Circuit is clear that, absent exceptional circumstances, an issue waived by an appellant cannot be raised in an *amicus curiae* brief.[305] By the same token, this Court has determined for obvious reasons, new issues, generally, cannot be raised in an *amicus* brief.[306] Hence, this Court should not address the EEOC's new arguments on appeal.

And while the EEOC labels the first section of its argument "A reasonable jury could find that the defendants fired Wilkinson because of his race, national origin, and/or gender," the EEOC does not address the aforesaid topic in the first section of its brief. Hence, such arguments are waived.

## 2.     THE DISTRICT COURT DID NOT FIND THAT WILKINSON PRODUCED DIRECT EVIDENCE OF DISCRIMINATION

The EEOC has stated that "the district court correctly determined that Wilkinson offered direct evidence of race, national original, and gender

---

[303]   ROA.701-725.
[304]   *See* Appellant's Brief.
[305]   *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist*., 933 F.2d 1285, 1292–93, (5th Cir. 1991).
[306]   *Anderson v. City of New Orleans,* 38 F.4th 472 (5th Cir. 2022) *citing*, *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist*., 933 F.2d 1285, 1292–93 (5th Cir. 1991).

discrimination in the decision to fire him."[307] However, the lower court only found that Rosa's comments were "likely"[308] direct evidence of race-based or national-origin based discrimination and "likely"[309] direct evidence of gender-based discrimination. The lower court did not definitively or conclusively determine that Rosa's comments alone constituted direct discrimination under the law.[310] Rather, it found that Pinnacle "established by a preponderance of the evidence that the 'same decision' would have been made regardless of the forbidden factor."[311] The lower court correctly identified "multiple nondiscriminatory reasons from which 'any reasonable jury would conclude that [Defendants] would have made the same decision absent the discrimination.'"[312]

Pinnacle takes the position that there is no direct evidence of discriminatory intent. Thus, this is purely a circumstantial evidence case, which is shown in the trial court's opinion, which focuses heavily on the *McDonnell* test in evaluating the circumstantial evidence offered by Wilkinson. Pinnacle was not required to appeal but respectfully disagrees with the trial court's notation that there is "likely" direct evidence of discrimination. There is no such direct evidence. At most, this is a

---

[307]  EEOC's Brief, p. 18.
[308]  ROA.1101.
[309]  ROA.1101.
[310]  As discussed above, the Appellee maintains that Rosa's comments are merely stray remarks under the law and not direct evidence of discrimination.
[311]  *Eteinne, L.L.C.,* 778 F.3d 473, 475, quoting *Brown v. E. Miss. Elect. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).
[312]  ROA.1105.

"stray remarks" case, and there is no direct link between the remarks and the reasons why Wilkinson was terminated, which clearly, was the inability to perform his job on a managerial level.

Moreover, the use of the term "likely" certainly denotes that the trial court made no absolute finding that Wilkinson undisputedly had "direct evidence" of discriminatory actions or motives.[313]  This is further bolstered by the fact that the trial court went on to discuss – the major portion of its ruling – whether the "circumstantial evidence" offered in opposition to Pinnacle's motion was sufficient to survive a Summary Judgment dismissal of Wilkinson's claims.[314]  The District Court never would have devoted such time and effort to evaluating the circumstantial evidence if there was clear, direct evidence of discriminatory actions or motives.

Even if there was "direct evidence" of discrimination, which Pinnacle denies, the EEOC's request for this Court to avoid any type of burden shifting, and that a case must automatically go to a jury, is flawed.  In this case, that very issue was being tried upon Pinnacle's motion for summary judgment. There *is* a burden shifting element under the summary judgment standards,[315] and it became *Wilkinson's burden* to prove a disputed issue of material fact which the jury could try.  The judgment below correctly holds that Wilkinson presented no disputed

---

[313]  ROA.1101 [use of the term "likely"].
[314]  ROA.1105-1113[Judgment evaluating the circumstantial evidence].
[315]  *See* pp. 10-11, *supra.*

material issue of material fact that should be reserved to the jury, and hence, summary judgment was appropriate.  After all, the summary judgment procedure exists to filter cases in which there are no disputed issues of fact, and cases which may be resolved prior to a useless trial on the merits.[316]  The EEOC's position entirely ignores a defendant's right to move for a summary judgment, the burden shifting mechanism in the motion for summary judgment, and would preclude any defendant from ever moving for a summary judgment when the facts are not in dispute, as they are here.

Having failed to raise this issue now briefed by the EEOC in opposing Pinnacle's Motion for Summary Judgment or to present any arguments in the trial court below, Wilkinson waived any arguments for appeal in this Court that have been made by the EEOC. This Circuit's position firmly requires for arguments to first be raised in the lower court proceedings, to be preserved for appeal.  This Circuit has held:

> This court has consistently held that arguments not raised in response to a motion for summary judgment are waived *744 and cannot be considered on appeal. *See, e.g., Keelan v. Majesco Software, Inc*., 407 F.3d 332, 339–40 (5th Cir. 2005). Because Hensley admittedly failed to respond to Wal–Mart's motion for summary judgment in the district court, she has waived any argument based on the undisputed facts in opposition to Wal–Mart's motion for summary judgment and we need not consider her appeal.[317]

---

[316]  *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976) ("The obvious function of summary judgment is to avoid a useless trial.")

[317]  *Hensley v. Wal-Mart Stores Inc.*, 290 F. App'x 742, 743–44 (5th Cir. 2008); *McDaniel v. Shell Oil Co*., 350 F. App'x 924, 927 (5th Cir. 2009) ("Having failed to raise this point in district court in opposition to summary judgment, McDaniel has waived this issue.").

Based upon well settled jurisprudence, the Court cannot review this case as the EEOC suggests because the Appellant did not raise the EEOC's proposed analysis in the District Court. Even if Wilkinson would have raised the EEOC's recommended analysis here, such arguments are still waived under the law, as set forth above.

Finally, even were there "direct evidence" of discrimination, which Pinnacle denies, the judgment at issue is entirely consistent with the historical and even very recent law of this circuit.[318]  And, as argued, Wilkinson never did, below or in this Court, argue for a change in circuit law.  This Court should reject the EEOC's entirely novel argument, never even advanced by the Appellant in this case, that the law of the Circuit should be overruled.[319]

Likewise, the EEOC's reliance on *Ryan's Pointe* in an effort to establish that Rosa's comments are direct evidence of a discriminatory animus is misplaced.  As set forth above, *Ryan's Pointe* can easily be distinguished from this claim because

---

[318]  *See Daniel v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 21-30555, 2022 WL 1055578 (5th Cir. Apr. 8, 2022); *Eaglin v. Texas Children's Hosp.*, 801 F. App'x 250 (5th Cir. 2020); *Herster*, 887 F.3d 177; *Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437 (5th Cir. 2018); *Eaglin v. Texas Children's Hosp.*, 801 F. App'x 250 (5th Cir. 2020). (applying the same test used by the trial court under its "direct evidence" analysis)).
[319]  *See Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 593 (5th Cir. 1986) holding "We are bound by the law of this Circuit."

Rosa's comments were not as pervasive or antagonistic as those in *Ryan's Pointe.*[320]

### 3. THE DISTRICT COURT DID NOT ERR IN FINDING THAT WILKINSON'S CLAIMS DO NOT SURVIVE SUMMARY JUDGMENT.

The EEOC avers that the District Court erred because Wilkinson's claims should have withstood summary judgment and should have been decided by a jury. However, the lower court did not definitively conclude that Rosa's comments were direct evidence of discrimination. Again, Rosa's statements are more akin to stray remarks under the law. Thus, it is not necessary for a jury to make a determination regarding the nature of Rosa's comments.

Further, the EEOC argues that the lower court improperly used the "same-decision" test because after the changes to the 1991 Act, the "same decision evidence does not allow summary judgment for the employer on liability."[321] The EEOC maintains that the trial court improperly relied on *Etienne* and should have relied on *Nassar,*[322] which allows a plaintiff to prevail on a "lessened causation standard."[323] The EEOC argues under *Nassar* that "If a factfinder finds the direct evidence of discrimination credible but agrees that the employer would have made the same decision regardless, then Wilkinson may be able to obtain declaratory relief,

---

[320] *See pp.,* 14-15, 48, *supra.*
[321] *See* EEOC's Brief, p. 23.
[322] *Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013).
[323] *Nassar*, 570 U.S. 338, 339 (2013).

attorney's fees and costs, and some forms of injunctive relief, but he could not obtain 'monetary damages and a restatement order.'"[324]

This Honorable Court should not take these arguments into consideration because Wilkinson did not address the EEOC's arguments in either the lower court[325] or in his Appellant Brief. As this Honorable Court is aware, the rule in this Circuit provides that contentions not briefed are waived and will not be considered on appeal.[326] Of significance, an issue waived by Appellant cannot be raised by *amicus curiae,*[327] in this case the EEOC. The U.S. Supreme Court has long recognized, "the general rule ... that a federal appellate court does not consider an issue not passed on below."[328]

---

[324]   EEOC's Brief, p. 22 (citing *Nassar*, 570 U.S. at 349).

[325]   ROA.701-725.

[326]   *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407–08 (5th Cir.1985). *See also Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 444 n. 22 (5th Cir. 2018).

[327]   *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285 (5th Cir. 1991).

[328]   *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). A party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent. *See Myrick v. City of Dallas,* 810 F.2d 1382, 1386 (5th Cir.1987) (holding a claim not properly raised if not in pleadings, pretrial order, or evidence presented); *Laird v. Shell Oil Co.,* 770 F.2d 508, 510–11 (5th Cir.1985) (refusing to consider an issue not raised in the pleadings, pretrial order, or trial evidence). The raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised. *See Simon v. United States,* 891 F.2d 1154, 1158 (5th Cir.1990) (affirming district court's finding that a party had waived an issue because the record did not put opponent or court on notice).

### 4.   THE *McDONNELL-DOUGLAS* BURDEN SHIFTING SCHEME APPLIES HERE.

The EEOC has argued that the lower court improperly applied *McDonnell-Douglas* because the district court found that Wilkinson offered direct evidence of discrimination. Again, the Appellee maintains that Rosa's comments are stray remarks and were not direct evidence of discrimination.[329]  Hence, the lower court properly applied the *McDonnell-Douglas* test in determining that Wilkinson could not make a *"prima facie"* showing that he was discriminated against through the use of circumstantial evidence.[330]

### 5.   WILKINSON CANNOT MEET HIS BURDEN OF PROOF TO ESTABLISH A *"PRIMA FACIE"* CASE OF DISCRIMINATION.

The EEOC argues that the Wilkinson was not required to show comparator evidence to establish a *"prima facie"* case of race, national origin, and gender discrimination. To establish a *"prima facie"* case the plaintiff must prove that he or she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably.[331] The EEOC argues that this Court

---

[329]   *See pp.* 29 - 38*, supra.*
[330]   ROA.1105-1113.
[331]   *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *See also Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir.2005).

has "at other times" articulated a "broader formulation" for the fourth element where the plaintiff can show that he "was either replaced by someone outside [his] protected class, was treated less favorably than other similarly situated employees who were not members of [his] protected class, or was otherwise discharged because of [his] [protected category]."[332] However, the cases cited by the EEOC all pertain to failure to promote an individual. Hence, Pinnacle maintains that this Court should not use this "broader formulation" of the fourth element to apply it to this matter where Wilkinson was replaced by someone within his protected class. Moreover, within the last year this Honorable Court reiterated:

> To satisfy the "similarly situated" prong, the employee carries out a comparator analysis.[333] Under this analysis, the employee must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications."[334] Moreover, the Courts require an employee to show that the comparator's conduct is "nearly identical," not strictly identical.[335]

---

[332] EEOC's Brief, p. 31 (citing *Nguygen v. Univ. of Texas Sch. of L.*, 542 F. App'x.320, 323 (5th Cir. 2013), *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013).

[333] *Saketkoo,* 31 F.4th 990, 998 (5th Cir. 2022), citing (*See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009)).

[334] *Saketkoo*, 31 F.4th at 998), citing *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018).

[335] *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th at 998), (citing *Lee*, 574 F.3d at 260 n.25).

- 74 -

After a discussion of when a showing of a comparator is required, this Court found the employee must establish that he was treated less favorably than a similarly situated employee outside of his protected class in nearly identical circumstances under the law.[336] In doing so, this Court found that the District Court applied the correct standard in a similar case, *Saketkoo v. Administrators of Tulane Educ. Fund*,[337] where the plaintiff did not meet her burden of proof when she failed to present evidence that her co-employees were similarly situated. In *Saketkoo*, the lower court properly found that "a failure to identify a potential comparator alone justifies dismissal of the plaintiff's claim."[338] Just as *Saketkoo*, Wilkinson was indeed required to identify a suitable comparator, but failed to do so. Given no such comparator exists, Wilkinson cannot establish a "*prima facie*" case.[339]

Regardless of the EEOC's arguments, it is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others *outside of his protected class.*[340] Title VII was enacted to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds. It was not enacted to promote "general fairness in the

---

[336]  *Saketkoo,* 31 F.4d at 990.
[337]  *Saketkoo,* 31 F.4d at 998.
[338]  ROA.1107; *Saketkoo,* 31 F.4th at 998, (citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d at 427).
[339]  *Saketkoo,* 510 F. Supp. 3d 376, 386 (citing *Alkhawaldeh*, 851 F.3d at 427).
[340]  *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 409 (5th Cir. 2016).

workplace, or ... to protect against" the indiscriminate firing of employees.[341] Consequently, the lower court's decision should be affirmed.

## IV.    CONCLUSION

For the reasons provided, this Court should affirm the Summary Judgment granted in favor of Defendants/Appellees Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block.


Respectfully submitted,


**DEGAN, BLANCHARD & NASH**

*s/* RENÉE F. SMITH AULD
SIDNEY W. DEGAN, III (#4804)
RENÉE F. SMITH AULD (#23568)
TRAVIS L. BOURGEOIS (#22964)
**DEGAN, BLANCHARD & NASH**
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone:   (504) 529-3333
Facsimile:   (504) 529-3337
E-mail:      sdegan@degan.com
             rsmithauld@degan.com
             tbourgeois@degan.com
*Attorneys for Defendants/Appellees, Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block*

---

[341] *Alkhawaldeh,* 851 F.3d 422, (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 262 (4th Cir. 2008)).

## **CERTIFICATE OF SERVICE**

I CERTIFY that on the 6th day of January, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

S/ RENÉE F. SMITH AULD
Attorney of record for
***Defendants/Appellees, Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block***

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 18,573 words.

2.   This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface in Word using Times New Roman in 14 point.

January 6, 2023.


<u>S/ RENÉE F. SMITH AULD</u>
Attorney of record for
***Defendants/Appellees, Pinnacle Lodging, LLC., My Hospitality Services, LLC, Yogesh "Chris" Patel, Laura Rosa, and Russell Block***