CASE NO. 22-30556

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

SHANE M. WILKINSON,
Plaintiff – Appellant

v.

PINNACLE LODGING, L.L.C; MY HOSPITALITY SERVICES, L.L.C.;
LAURA ROSA; RUSSELL BLOCK; YOGESH PATEL,
Defendants – Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA
(USDC NO. 2:20-CV-3427)

**REPLY BRIEF OF APPELLANT SHANE M. WILKINSON**

Respectfully submitted:

THE LAW OFFICE OF
KEVIN S. VOGELTANZ, LLC
Kevin S. Vogeltanz (Bar #32746)
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff / Appellant*
*Shane M. Wilkinson*

# I.    Table of Contents

I.    Table of Contents ..............................................................ii

II.   Table of Authorities........................................................iii

III.  Reply Argument ............................................................. 1

    A.    Rosa's comments are direct evidence of discriminatory motive ..................................................................... 1

    B.    Defendants cannot prove on summary judgment they would have fired Wilkinson anyway ................................. 9

    C.    Exceptional circumstances warrant considering the "motivating factor" issue under 42 U.S.C. § 2000e-2(m) ..... 17

    D.    Defendants waived any argument concerning the sufficiency of plaintiff's protected complaints under Title VII's anti-retaliation provision............................................... 23

    E.    Plaintiff reiterates his arguments concerning his state law causes of action and hostile work environment claim ......... 24

IV.   Conclusion ................................................................ 27

Certificate of Service .......................................................... 29

Certificate of Compliance ................................................... 30

## II.   Table of Authorities

**Cases**

*AG Acceptance Corp. v. Veigel*,
    564 F.3d 695 (5th Cir. 2009) ........................................................ 21

*Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*,
    933 F.2d 1285 (5th Cir. 1991) ...................................................... 18

*Eaglin v. Texas Children's Hosp.*,
    801 Fed.Appx. 250 (5th Cir. 2020)............................................. 3, 7

*Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston,
    L.L.C.*, 19-20656, 2022 WL 4494148
    (5th Cir. Sept. 27, 2022) ........................................................ passim

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
    778 F.3d 473 (5th Cir. 2015) .................................................. 2, 3, 4

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,
    969 F.3d 460 (5th Cir. 2020) ........................................................ 21

*Greene v. Toyota Motor Corp.*,
    3:11-CV-207-N, 2014 WL 12575962 (N.D. Tex. May 7, 2014)....... 16

*Herster v. Bd. of Supervisors of Louisiana State Univ.*,
    887 F.3d 177 (5th Cir. 2018) .......................................................... 7

*N. Alamo Water Supply Corp. v. City of San Juan, Tex.*,
    90 F.3d 910 (5th Cir. 1996) .......................................................... 21

*Portis v. First Nat. Bank of New Albany, Miss.*,
    34 F.3d 325 (5th Cir. 1994) ............................................................ 2

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) ................................................................ 10, 15

*Russell v. McKinney Hosp. Venture*,
    235 F.3d 219 (5th Cir. 2000) .......................................................... 8

*See Conley v. Bd. of Trs.*,
    707 F.2d 175 (5th Cir. 1983) ........................................................ 21

*Shepherd v. Comptroller of Pub. Accounts,*
  168 F.3d 871 (5th Cir. 1999) ......................................................... 26

*Simmons v. Pac. Bells, L.L.C.,*
  787 Fed.Appx. 837 (5th Cir. 2019).............................................. 10

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
  570 U.S. 338 (2013) ...................................................................... 17

*Weller v. Citation Oil & Gas Corp.,*
  84 F.3d 191 (5th Cir. 1996) .......................................................... 26

*Wilson v. KRBE Radio, Inc.,*
  CIV.A. H-04-2641, 2005 WL 1155082 (S.D. Tex. May 4, 2005) .. 3, 7

## Statutes

42 U.S.C. § 1981 ............................................................................. 8

42 U.S.C. § 2000e-2(a) ......................................................... 1, 9, 19, 20

42 U.S.C. § 2000e-2(m).......................................................... 1, 18, 19, 20

La. Rev. Stat. Ann. § 23:967 ........................................................ 24

La. Rev. Stat. Ann. § 30:2027 ...................................................... 24

## Other Authorities

Black's Law Dictionary (11th ed. 2019)...................................... 10

Pattern Civ. Jury Inst. 5th Cir. 11 (2020).................................. 22

## III.   Reply Argument

## A.   Rosa's comments are direct evidence of discriminatory motive

Defendants vigorously contest that Laura Rosa's racist and sexist comments at work constituted direct evidence of discriminatory motive, versus mere "stray remarks."[1]  If Rosa's comments were direct evidence of discriminatory motive, plaintiff contends this requires reversal of the district court's dismissal of his disparate-treatment discrimination claims, both because the defendants failed to produce sufficient evidence they would have fired Mr. Wilkinson anyway (the burden-shifting standard under 42 U.S.C. § 2000e-2(a) and this Court's *Etienne* standard), and because direct evidence in this context is *per se* proof that Mr. Wilkinson's race, national origin, or sex was at least *a* motivating factor for his termination (the lessened standard under 42 U.S.C. § 2000e-2(m)).

In an employment discrimination case, "direct evidence includes any statement or written document showing a discriminatory motive on

---

[1] On brief, defendants suggest Rosa is incapable of discriminating against Mr. Wilkinson based on race because they are both white, and because she was "born in New Orleans" and is "listed" as "Caucasian" on her birth certificate. *Def's Brief* at 13.  Defendants offer no rational explanation or controlling authority for this proposition. Nor did the district court buy into the idea, finding that Rosa's racist comments were, in fact, direct evidence of her discriminatory motive.

its face." *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325 (5th Cir. 1994). On the other hand, "stray remarks" are comments that, while derogatory, "fall short of demonstrating discriminatory animus on their face." *Equal Employment Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, 19-20656, 2022 WL 4494148 at *3 (5th Cir. Sept. 27, 2022). Both parties and the district court below analyzed this issue within the correct evidentiary framework expressed in *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015).

Under *Etienne*, and comparing this case to other cases decided in this Circuit, it seems hard to imagine Rosa's comments were anything other than direct evidence of her discriminatory motive to replace Mr. Wilkinson based on his race, origin, and sex. The *Etienne* standard, summed up, asks whether the derogatory comments prove a decision-maker was motivated to take the adverse action at issue against the plaintiff based on his protected status. Accordingly, the most important *Etienne* factors seem to be whether the derogatory comments were made by "an individual with authority over the challenged employment

decision" and were "related to the challenged employment decision." *Etienne*, 778 F.3d at 476.

For instance, in *Eaglin v. Texas Children's Hosp.*, 801 Fed.Appx. 250, 255 (5th Cir. 2020), this Court determined a co-worker's statement to the plaintiff that "management wanted to replace them with Hispanic employees" was not direct evidence of discriminatory motive because the co-worker wasn't plaintiff's supervisor at the time he was fired, and plaintiff provided "no evidence that [the co-worker] somehow influenced [the manager's] decision . . . to terminate [plaintiff's] employment." *Id.* at 255-56. The Southern District of Texas came to the same conclusion in *Wilson v. KRBE Radio, Inc.*, CIV.A. H-04-2641, 2005 WL 1155082 at *10 (S.D. Tex. May 4, 2005), *aff'd* 222 Fed.Appx. 416 (5th Cir. 2007) ("Nothing inherent in the [sexist] remarks themselves indicates that they were related to plaintiff or his discharge").

Contrast those decisions in cases where the derogatory comments were made by the plaintiff's decision-maker and were specific to the adverse action at issue. In *Etienne*, this Court held the comment "Etienne was too black to do various tasks at the casino[,]" made by

plaintiff's manager, was direct evidence of discrimination because – on its face – the comment meant "color is likely to have played a role in [the employer's] decisions." *Etienne*, 778 F.3d at 437. The same result was reached in the very recent case, *Ryan's Pointe*, *supra*, 2022 WL 4494148 at *4. There, this Court held the comments made by a company's owners that they wanted to "change the demographics" of the staff, along with expressing a "preference for a 'white' staff," and wanting to hire a "higher class of individual with the look of Ken and Barbie" were direct evidence of discrimination because they were made by people "in a position to influence [plaintiff's] termination" and "the statements relate to [plaintiff's] termination." *Id.*

Without rehashing all of plaintiff's arguments in his original brief on appeal, Rosa's comments are clearly direct evidence of discriminatory motive to terminate Mr. Wilkinson under the *Etienne* framework. Rosa herself said as much. Rosa repeatedly told Wilkinson and others she wanted to replace him and his staff with "Hispanics" because they work "cheaper and faster." ROA.1035; ROA.521, ROA.523. Rosa "often" told Wilkinson that women made better general managers than men, the job was "female oriented," "females are more

4

capable than men," and as far as Rosa was concerned, Wilkinson "shouldn't be here." ROA.513; ROA.846; ROA.1060; ROA.607. Assuming Rosa said these things – and on a motion for summary judgment the district court was obligated to view the credibility dispute in plaintiff's favor – then of course Rosa's comments are direct evidence of discrimination because the derogatory comments were about Mr. Wilkinson's race, national origin, and sex; were regularly made in the four months leading up to his termination; were made by Wilkinson's manager who fired him; and forecasted Rosa's desire to fire him.

This is the same conclusion based on the same analysis the district court reached below. "Rosa's comment, then, is more than a mere 'stray remark,' and, likely, direct evidence of a race-based or national-origin-based discrimination." ROA.1101. Likewise, "Because [Rosa's sexist] comment is (1) related to Wilkinson's protected characteristic, his gender; (2) proximate in time to the challenged employment decision ("at most four months or so prior to his termination"); (3) made by an individual with authority over the challenged employment decision (Rosa); and (4) related to the challenged employment decision (as the comment contemplated his

termination), Wilkinson likely presents direct evidence of gender-based discrimination." ROA.1101.

On brief, defendants argue the district court did not determine Rosa's comments were direct evidence of discrimination. "Importantly, the District Court did not hold that Rosa's comments to Wilkinson were direct evidence of discrimination." *Def. Brief* at 24 (emphasis in original). This seems a strained reading of the district court's opinion and reasoning quoted at length above, and belies the fact that the district court then proceeded to analyze the case under the burden-shifting standard appliable in direct-evidence cases. Regardless, this Court reviews the district court's decision on summary judgment de novo, and under the *Etienne* standard Rosa's comments on their face described her desire to fire replace Mr. Wilkinson because of his race, origin, and sex.

Defendants do cite to several other direct-evidence cases trying to distinguish the facts of this case, but those cases support plaintiff's position, not defendants. For instance, defendants cited to *Eaglin* and *Wilson*, *supra*, but in those cases the derogatory comments were not made by plaintiff's supervisor. *Eaglin*, 801 Fed.Appx at 255-56; *Wilson*,

2005 WL 1155082 at *10.  In this case, the derogatory comments were made by Mr. Wilkinson's supervisor who then fired him.

Defendants also cited to *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 186 (5th Cir. 2018). There, the sexist comments at issue were made by plaintiff's faculty supervisor, but this Court held the supervisor's comments, "at most, [only] infer that gender was a factor in the decision concerning [plaintiff's] compensation . . . because an inference is required to get from [the comments] to the conclusion that gender was a basis for setting [plaintiff's] compensation." *Id.* at 186.  Here, of course, Rosa's comments need no inference.  She told Mr. Wilkinson and others she wanted to replace him and his staff with "Hispanics" and he "shouldn't be here" because he was a man.  Then Rosa fired him.

Finally, it's immaterial that only Rosa made racist and sexist comments at work, while the decision to terminate Mr. Wilkinson seems to have been shared by Rosa, Russell Block (Rosa's manager), and Chris Patel (the owner of the businesses).  "If the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal

decisionmaker." *Ryan's Pointe*, 2022 WL 4494148 at *4, *quoting Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). Defendants have never suggested that Block and Patel acted independently of Rosa's judgment in this matter, or that they conducted their own investigations of Mr. Wilkinson work performance prior to firing him, or that they disregarded Rosa's opinions in the matter. Rosa's was Mr. Wilkinson's immediate supervisor, jointly presented the termination letter firing him, and defendants have not alleged any facts to purge her discriminatory motive from Block and Patel's shared decision-making. Rosa is also a named defendant under plaintiff's 42 U.S.C. § 1981 discrimination claim and remains liable for her own race-based termination decision in the case. Certainly, on summary judgment, drawing all reasonable inferences in plaintiff's favor, Mr. Wilkinson's termination was because of, or at least motivated by, his race, origin, and sex. His Title VII disparate-treatment discrimination claims (and § 1981 race discrimination claim) should not have been dismissed on summary judgment.

**B.    Defendants cannot prove on summary judgment they would have fired Wilkinson anyway**

If Rosa's comments are direct evidence of discriminatory motive, then under 42 U.S.C. § 2000e-2(a) "the burden of proof shifts to [defendants] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Ryan's Pointe*, 2022 WL 4494148 at *4.  On summary judgment, this means defendants must prove "any reasonable jury would conclude that [defendants] would have made the same decision absent discrimination."  The district court held defendants met that burden, but this was clear error under the law and factual record of the case.  On brief, defendants failed to persuasively argue otherwise.

In their reply brief to the district court below, defendants crystalized that Rosa, Block, and Patel fired Mr. Wilkinson "due to his poor work performance, lack of leadership, frequent absences, and threats to quit."  ROA.1080.  In turn, the district court held "Absent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason for the discharge."  ROA.1113.

First, on the record, plaintiff did offer evidence to rebut defendants' *post hoc* reasons for terminating him, along with

defendants' *post hoc* assertion that Wilkinson was a poor performer. *See Pln's Brief* at 14-24; *EEOC's Brief* at 8-12.

But even so, the district court should not have accepted the wholly self-serving criticisms proffered by co-defendants Rosa, Block, and Patel anyway, because they were each an "interested witness" under *Reeves*. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (a district court should give "credence [only] to . . . evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses"); *accord Ryan's Pointe Houston*, 2022 WL 4494148, at \*7 (on summary judgment, "fully crediting [manager's] post hoc conclusion that her actions were proper and legal is inappropriate at this stage in the proceedings").

This Court has previously held an "interested witness" is one who has a "direct and private interest in the matter at issue." *Simmons v. Pac. Bells, L.L.C.*, 787 Fed.Appx. 837, 840 (5th Cir. 2019), *quoting* Black's Law Dictionary (11th ed. 2019). Rosa, Block, and Patel are each named defendants in the case, and each has a material and financial stake in the outcome of the litigation. The district court erred by fully

crediting *any* self-interested testimony by these defendants against plaintiff on summary judgment.

Under *Reeves*, this Court might wonder how Rosa, Block, and Patel could have defended their termination decision on summary judgment without relying on their *post hoc* deposition testimony and answers to interrogatories. The defendants could have offered any of the typical detritus that exists when an employee is, legitimately, fired for being a poor performer. Defendants could have offered bad performance reviews of Mr. Wilkinson from his employment. Defendants admitted there were none. Defendants could have at least testified to verbal counseling, warnings, or other discipline imposed on Mr. Wilkinson at the time he was still employed. Defendants admitted they never disciplined Mr. Wilkinson before they fired him.

Defendants could have offered any documentary or other objective evidence of poor performance contemporaneous to Mr. Wilkinson's employment. Defendants did not do so, other than the fact that the Hampton Inn failed its Hilton franchise inspection in November 2019. But, even then, Rosa testified during her deposition that the failed inspection had nothing to do with Wilkinson's termination. ROA.973.

And Rosa and Block admitted that the Hampton Inn had never passed the Hilton inspection, yet they never fired Mr. Wilkinson's predecessor or successor because of it. ROA.969-973; ROA.790-91; *see also* ROA.1014-15. And Rosa admitted the hotel would have failed inspection regardless due to problems outside Wilkinson's purview. ROA.976; *see also* ROA.867-69; ROA.991.

There was also, objectively, a pre-existing mold infestation at the Hampton Inn that caused many of its rooms to remain out of order. But here, too, Patel and Rosa testified that these out-of-order rooms were not Mr. Wilkinson's fault. ROA.478; ROA.898. Block likewise testified Wilkinson "wasn't terminated because of the mold." ROA.817; *see also* ROA.342 ("It had nothing to do with his being terminated."). Even Block's picayune albeit specific critiques were disputed. He suggested Mr. Wilkinson ignored his "rate management" duties. But Wilkinson testified he was never responsible for that work. ROA.1040; ROA.366.

What's left is a classic credibility dispute. Defendants say Mr. Wilkinson was a poor performer. Mr. Wilkinson says that's not so. On summary judgment, a defendant in a direct-evidence case cannot meet their burden to prove, as a matter of law, they would have terminated

the plaintiff regardless of their discriminatory motivation under such circumstances.

On brief, defendants do not dispute the holding of *Reeves* with respect to Rosa, Block, and Patel's self-interested testimony. *See Def's Brief* at 44-45 (defendants do not suggest *Reeves* is not controlling in this case). Instead, defendants argue the testimony of co-workers Ashley Vanderhoff and Kim Schexnaydre corroborate that "Wilkinson was not a good manager." For instance, defendants offer Vanderhoff's deposition testimony that Wilkinson was "manipulative, liked to play people against each other, did not get much work done curing the day, and did not take his job seriously."

Vanderhoff did testify that's how she felt about Mr. Wilkinson, at least as of her deposition in March 2022, more than two years after Mr. Wilkinson was fired. But Vanderhoff did not fire Wilkinson. She did not participate in the termination decision. Defendants do not argue that she complained to Rosa, Block, or Patel about Mr. Wilkinson before his termination, or that Rosa, Block, or Patel relied on Vanderhoff's opinion's before firing him. In an employment discrimination case, the only facts relevant to corroborating a defendant's purportedly legitimate

13

reason for firing the plaintiff are the facts of the matter at the time. *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004).

In short, there is nothing about Vanderhoff's testimony that corroborates Rosa, Block, or Patel believed Wilkinson was a poor performer *at the time* they terminated him, versus the conclusion that their self-interested testimony was really proffered to avoid liability in this case.

Moreover, Vanderhoff's description of Mr. Wilkinson's performance was disputed by two other co-workers, Head of Housekeeping Chasity Anthony and maintenance worker Demille Topps. Topps testified Wilkinson "did a great job with what he had to work with. I think he did a good job. He tried to keep his people working and – and when they tried to quit, he tried to talk them out of it." ROA.592. Anthony likewise testified Wilkinson "was a very good general manager" whom she had no complaints about. ROA.846. On summary judgment, and under the *Reeves* standard, defendants cannot "corroborate" that Rosa, Block, and Patel believed Mr. Wilkinson was a poor performer by offering opinion testimony from one of his subordinates while disregarding the conflicting opinion testimony of his

other subordinates.  *Reeves*, 530 U.S. at 151 (a district court must disregard all evidence in favor of the movant except evidence that is "uncontradicted and unimpeached").

On the issue of impeachment, the parties have always known that Vanderhoff was still employed by the defendants when she gave her deposition testimony in March 2022.  However, on February 7, 2023, defendants submitted a Rule 28j letter to this Court clarifying an inaccuracy in their appellee brief.  Defendants have now admitted Vanderhoff was promoted to Mr. Wilkinson's former general manager position of the Hampton Inn on July 31, 2022, just four months after she gave her deposition testimony in this case (and before the district court rendered its opinion dismissing plaintiff's case).  *See Def.'s Rule 28j Letter* at 1.  To the extent Vanderhoff was promoted just four months after she gave favorable testimony to the defendants and critical of Mr. Wilkinson's performance, that likewise raises the specter of biased testimony.[2]

---

[2] It is worth mentioning that plaintiff has consistently argued that evidence suggests Patel and Block may have titularly promoted Robert Dansbury, a white man, as Wilkinson's immediate replacement at the Hampton Inn specifically to try and avoid liability in this discrimination case, while Vanderhoff remained the de facto general manager.  *See Pln's Brief* at 27-28.

Finally, on brief, defendants also point to the declaration of another co-worker, Kim Schexnaydre, who says she was also critical of Mr. Wilkinson's job performance. *Def's Brief* at 44-45. First, the Court should disregard the declaration because it was submitted for the first time at the district court below as an exhibit to defendants' reply brief on summary judgment. ROA.1075-77. The general rule is that a "movant may not submit, and the Court will not consider, new evidence with a reply brief." *Greene v. Toyota Motor Corp.*, 3:11-CV-207-N, 2014 WL 12575962, at *1 (N.D. Tex. May 7, 2014). Indeed, the district court did not appear to mention Schexnaydre's declaration in its opinion, and there is no reason for this Court to consider it now.

Second, even if considered, Schexnaydre's declaration suffers from the same problems as Vanderhoff's testimony. Schexnaydre did not fire Mr. Wilkinson, did not participate in the termination decision, did not apparently complain about Mr. Wilkinson before his termination, and there is no evidence in the record that Rosa, Block, or Patel consulted with her about the matter. At most, Vanderhoff and Schexaydre offer critical *post hoc* opinions about Mr. Wilkinson's job performance

compared with the favorable opinions offered by Wilkinson's other co-workers, Anthony and Topps.

Under *Reeves*, and as recently re-affirmed by this Court in *Ryan's Pointe*, the district court should not have credited Rosa, Block, and Patel's *post hoc*, testimonial critiques against plaintiff on summary judgment. Even so, in the context of a direct-evidence case, and given the significant credibility dispute and lack of any contemporaneous, corroborating evidence of poor performance, the district court erred by finding "any jury would conclude that [Defendants] would have made the same decision absent the discrimination." ROA.1105.

## C.    Exceptional circumstances warrant considering the "motivating factor" issue under 42 U.S.C. § 2000e-2(m)

As the Government correctly argued in its *amicus* brief, even if defendants could prove they would have terminated Mr. Wilkinson despite Rosa's discriminatory motivation, the district court should have at least permitted plaintiff's disparate-treatment discrimination claims to proceed under the lessened "any motivating factor" standard of 42 U.S.C. § 2000e-2(m) and the Supreme Court's related analysis in *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 349 (2013):

17

So, in short, the 1991 Act substituted a new burden-shifting framework for the one endorsed by *Price Waterhouse*. Under that new regime, a plaintiff could obtain declaratory relief, attorney's fees and costs, and some forms of injunctive relief based solely on proof that race, color, religion, sex, or nationality was a motivating factor in the employment action; but the employer's proof that it would still have taken the same employment action would save it from monetary damages and a reinstatement order.

On brief, defendants ask this Court to disregard the clear application of § 2000e-2(m) and the holding of *Nassar* in this case. Defendants do not suggest that, under § 2000e-2(m), they could still prevail on summary judgment assuming Rosa's racist and sexist comments were direct evidence of discriminatory motive. Rather, defendants merely argue the procedural point that plaintiff waived the § 2000e-2(m) argument by not making it at the district court or in plaintiff's original appellate brief. *Def's Brief* at 71-72.

Defendants specifically argue that "an issue waived by Appellant cannot be raised by *amicus curiae*[.]" *Id.* at 72. In support of that proposition, defendants cite to *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285 (5th Cir. 1991), but there this Court qualified that "an issue waived by appellant cannot be raised by amicus curiae" "absent exceptional circumstances." *Id.* at 1293.

18

At the outset, plaintiff agrees with the Government that "the proper analysis of direct evidence on summary judgment is an issue already fairly within the scope of this appeal." *EEOC's Brief* at 27 n.5. The thrust of plaintiff's primary argument both at the district court and originally to this Court on appeal was that defendants were not entitled to summary judgment as a matter of law because plaintiff had brought forward direct evidence of Rosa's discriminatory motive. So, in reality, plaintiff argued the tougher case – that summary judgment must be denied under the heightened standard of 42 U.S.C. § 2000e-2(a) in the context of the *Etienne* burden-shifting framework. It seems odd to think plaintiff waived the subsumed "motivating factor" argument under the lesser standard of § 2000e-2(m), even if it was not explicitly addressed.

And, in fairness to plaintiff, it remains extraordinarily vexing that defendants on summary judgment ***never*** argued their case under the direct-evidence framework, and never defended their position against plaintiff's direct-evidence arguments. Defendants did not brief the issue in their motion for summary judgment or even on reply after plaintiff squarely argued the issue under *Etienne*.

19

As the district court below pointed out more than once, "Defendants do not brief Wilkinson's direct-evidence argument but instead argue that Wilkinson relies on circumstantial evidence." ROA.1100 at n.54. "Defendants do not address [the direct-evidence] burden of proof in their motion for summary judgment as they content that the evidence is circumstantial . . . [but] the Court determines that Defendants have satisfied their burden of showing that the same decision would have been made regardless of Wilkinson's protected characteristics." ROA.1102 at n.64.

It seems unfair that the district court should find in defendants' favor under *Etienne*'s burden-shifting framework when defendants never bothered arguing their position in the first place, yet defendants now cry foul when the Government has correctly pointed out that, in addition to liability under 42 U.S.C. § 2000e-2(a), defendants also owe liability for their discriminatory motives under the lessened burden of 42 U.S.C. § 2000e-2(m).

Regardless, exceptional circumstances warrant consideration of the argument. And, if considered, this Court must reverse the district

court's dismissal of plaintiff's disparate-treatment claims at least under § 2000e-2(m) as a matter of law.

"Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009), *quoting N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996), *overruled on other grounds by Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460 (5th Cir. 2020). A miscarriage of justice means, first, that the error to be corrected is "obvious" and not "merely debatable." *See Conley v. Bd. of Trs.*, 707 F.2d 175, 178 (5th Cir. 1983). Second, a miscarriage of justice is one that would work some injury to the party seeking consideration. *Veigel*, 564 F.3d at 701.

In *Veigel*, this Court found exceptional circumstances warranted consideration of the losing defendants' argument, made for the first time on appeal, that the prevailing plaintiffs were not entitled to attorney's fees as a matter of law under the Texas Declaratory Judgment Act. *Id.* at 701. This Court did reverse the district court's award of attorney's fees because the issue was "a pure question of law,"

the "district court's award of attorney's fees was patently erroneous in light of controlling precedent," and "failure to reach this issue would result in significant actual harm to the Veigels – liability for . . . unjustified attorney's fees." *Id.*

Those three elements – a pure question of law; a controlling precedent; and actual harm – are each present in this case. First, whether 42 U.S.C. § 2000e-2(m) permits summary judgment against the plaintiff after adducing direct evidence of discriminatory motive is a pure question of law. Second, even if the plain text of § 2000e-2(m) and the Supreme Court's holding in *Nassar* was somehow unclear, this Circuit's most recent jury instructions make very clear that "the law is now settled that § 2(m) claims carry a "motivating-factor" causation standard." Pattern Civ. Jury Inst. 5th Cir. 11 at 129 (2020). Third, failure to reach the issue, assuming this Court otherwise affirms the district court's dismissal of plaintiff's disparate-treatment claims under § 2000e-2(a), will cause actual harm to plaintiff – dismissal of his claims.

Accordingly, because exceptional circumstances exist, plaintiff respectfully suggests this Court considers whether the district court

erred when it dismissed plaintiff's disparate-treatment discrimination claims under Title VII entirely, including under § 2000e-2(m).

## D.   Defendants waived any argument concerning the sufficiency of plaintiff's protected complaints under Title VII's anti-retaliation provision

On appeal, defendants argue for the first time that plaintiff failed to show his complaints to management about Rosa's mistreatment were sufficiently clear to be protected under Title VII. *Def's Brief* at 39-41. As the district court noted in its opinion below, defendants never bothered to argue that point on summary judgment, instead only arguing that plaintiff was not actually fired because of his complaints. ROA.1119 ("Defendants do not challenge the element of protected activity").  Unlike the § 2000e-2(m) issue briefed above, defendants have not argued exceptional circumstances warrant considering this issue on appeal.  And, even if they had, whether Mr. Wilkinson's complaints were sufficiently descriptive to constitute "protected" complaints under Title VII is not a "pure" question of law, is obviously debatable as a question of fact, and risks no actual harm to defendants if this Court does not reach the issue (because, at the very least, defendants would remain free to argue the point at jury trial).

23

Otherwise, the parties continue to dispute the evidentiary issues argue earlier in this brief, specifically whether defendants' self-interested statements provide sufficient evidence of a non-discriminatory reason for terminating Mr. Wilkinson. Plaintiff reiterates the arguments already made in his original brief that, when combined with the temporal proximity between Mr. Wilkinson's complaints to Block and his termination, Rosa's threat made to Wilkinson after his complaint, and the evidence suggesting management's proffered reasons for termination are contradictory and false, the district court erred by determining plaintiff failed to raise a genuine issue of disputed fact regarding retaliatory pretext.

## E.    Plaintiff reiterates his arguments concerning his state law causes of action and hostile work environment claim

The district court assumed for the sake of argument that plaintiff satisfied his prima facie cases under the Louisiana Whistleblower Act, La. Rev. Stat. Ann. § 23:967, and the Louisiana Environmental Whistleblower Act, La. Rev. Stat. Ann. § 30:2027, but failed to produce sufficient evidence of pretext to survive summary judgment based on the same evidentiary arguments already briefed at length by both parties on appeal. ROA.1132-1134. Plaintiff reiterates his arguments

that defendants' proffered reasons for terminating him are self-interested, contradictory, and largely should not be considered on summary judgment under *Reeves*.

Regarding plaintiff's hostile work environment claim, the district court accepted that Rosa's frequent comments were racist, sexist, and ultimately constituted direct evidence of her discriminatory motive to terminate Mr. Wilkinson because of his status. That much was obvious to Mr. Wilkinson, whose wife testified that he frequently came home "upset and frustrated," ROA.601-02, ROI.607, because of Rosa's comments which were made "at least every other day, if not every day." ROA.600, ROA.607.

But the district court held, and defendants now argue, that working in such an environment is not severe or pervasive enough to state a claim for hostile work environment as a matter of law. Plaintiff continues to be startled by the conclusion. Rosa told Mr. Wilkinson he "shouldn't be here" because he was a man, and that she wanted to replace him and his staff with "Hispanics" because they were better workers. Rosa said these things regularly and in front of others. When Wilkinson reported these instances to Russell Block, he laughed in his

face. ROA.847. Eventually management did fire Mr. Wilkinson, and the district court already concluded that Rosa's derogatory comments were direct evidence of her discriminatory motive.

Title VII prohibits harassment when it is severe or pervasive enough "that it destroys a protected class member's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). A hostile work environment claim "must be considered in light of the totality of the circumstances." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). A work environment that destroyed Mr. Wilkinson's ability to succeed is exactly what the defendants created the Hampton Inn. Rosa's comments were severe – she essentially told Mr. Wilkinson he was less valuable to her because of his race, origin, and sex. The comments were also regularly made.

The implied thrust of both the district court opinion and the defendants' argument is that a manager who matter of factly tells a subordinate he is worth less than others because of his race, origin, and sex is not as "shocking" or severe as a manager who yells a racial or sexist slur at someone. Plaintiff is not so convinced. Racial and sexist

slurs are hateful and should not be tolerated in today's workplaces. But slurs are merely one way of conveying the idea that a person is worth less because of their race, origin, or sex, which is what Rosa made sure to convey to Mr. Wilkinson on a regular basis. Rosa's comments destroyed Mr. Wilkinson's ability to succeed at his job because that's exactly what happened, culminating in his termination. On these facts, considering the totality of the circumstances, a reasonable jury could conclude that Rosa's comments, along with Block's refusal to intervene to protect Wilkinson after he complained, were severe or pervasive harassment.

## IV.   Conclusion

For all these reasons, the judgement of the District Court dismissing Mr. Wilkinson's claims against all defendants in this matter should be reversed, and this matter should be remanded back to the District Court to proceed with litigation.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Shane M. Wilkinson*

## Certificate of Service

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I, Kevin S. Vogeltanz, certify that on February 8, 2023, I filed appellant's original brief via the Court's CM/ECF system. To the best of my knowledge, all parties in this case are represented by attorneys who are registered Filing Users in this case and who will receive notice through the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Shane M. Wilkinson*

## Certificate of Compliance

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(B) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,182 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text, and with 12-point font for footnotes.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Shane M. Wilkinson*